## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES, et al. | ) ) ) | |
| Plaintiffs, | ) | **Case:  1:07-cv-00677** |
| | ) | |
| v. | ) ) | |
| DIRK KEMPTHORNE, SECRETARY OF THE INTERIOR, et al. | ) ) ) | |
| | ) | |
| Federal Defendants, | ) ) | |
| and | ) ) | |
| THE U.S. SPORTSMEN'S ALLIANCE FOUNDATION, WISCONSIN BEAR HUNTERS ASSOCIATION, SCOTT MEYER, and ROBERT STAFSHOLT | ) ) ) ) ) | |
| Applicant Intervenor/Defendants. | ) | |

## <u>MOTION TO INTERVENE</u>

Pursuant to Fed.R.Civ.P. 24, Applicant Defendant Intervenors the U.S. Sportsmen's Alliance Foundation, Wisconsin Bear Hunting Association, Scott Meyer, and Rob Stafholt (collectively "Applicant Intervenors" or "Hunting Intervenors") move to intervene in the above-captioned case.  As shown in the accompanying Memorandum in Support, the Hunting Intervenors have a substantial interest in the status of the Western Great Lakes Distinct Population Segment of the gray wolf which was recently removed from the list of endangered or threatened species list by the U.S. Fish and Wildlife Service (the "Service").    The Federal Defendants,[1] as the parties responsible administering the Endangered Species Act, 16 U.S.C. § 1531, et seq., have no duty to

---

[1] The Federal Defendants are the Secretary of the U.S. Department of the Interior, now Dirk Kempthorne, the U.S. Department of the Interior, and the U.S. Fish and Wildlife Service.

litigate to protect the Hunting Intervenors' specific interests. Therefore, the Federal Defendants do not adequately represent the interests of the Hunting Intervenors.

The Applicant Intervenors respectfully direct the Court to the accompanying Memorandum in Support of this Motion.

Prior to filing this Motion, undersigned counsel contacted counsel for Plaintiffs to request consent to intervention, but have not yet learned whether the motion is opposed or unopposed, and will provide an update when Plaintiffs' position is determined.

DATED:        April 20, 2007

Respectfully Submitted,

U.S. Sportsmen's Alliance Foundation
Wisconsin Bear Hunters Association
Scott Meyer
Rob Stafsholt

*By their attorneys*

  /s/ William P. Horn
William P. Horn (D.C. Bar No. 375666)
James H. Lister (D.C. Bar No. 447878)
Birch, Horton, Bittner & Cherot
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile:  (202) 659-1027
Email: whorn@dc.bhb.com
Email:  jlister@dc.bhb.com

# CERTIFICATE OF SERVICE

I hereby certify that on this, the 20th day of April, 2007, the foregoing document together with supporting Memorandum, supporting declarations, proposed order, and Local Rule 7.1 Statements were mailed by first class mail to:

Rebecca G. Judd, Esq.
The Humane Society of the United States
2100 L Street, N.W.
Washington, D.C.  20037
Counsel for Plaintiffs

Brian B. O'Neill, Esq.
Sanne H. Knudsen, Esq.
Michael C. Soules, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Counsel for Plaintiffs

Dirk Kempthorne, Secretary of the Interior[*]
Department of the Interior
1849 C Street, N.W.
Washington, D.C.  20240

United States Department of Interior[*]
1849 C Street N.W.
Washington, D.C.  20240

United States Fish and Wildlife Service[*]
1849 C Street, N.W.
Washington, D.C.  20240

 /s/ James H. Lister
William P. Horn (D.C. Bar No. 375666)
James H. Lister (D.C. Bar No. 447878)
Birch, Horton, Bittner & Cherot
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036

---

[*] No attorney has entered an appearance for the Federal Defendants to date.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HUMANE SOCIETY OF THE            )
UNITED STATES, et al.            )
                                 )
              Plaintiffs,        )        Case No.: 1:07-cv-00677
                                 )
        v.                       )
                                 )
DIRK KEMPTHORNE, et al.          )
                                 )
              Defendants,        )
                                 )
and                              )
                                 )
THE U.S. SPORTSMEN'S ALLIANCE    )
FOUNDATION, WISCONSIN BEAR       )
HUNTERS ASSOCIATION, SCOTT       )
MEYER, and ROB STAFSHOLT         )
                                 )
      Applicant Intervenors/Defendants.  )

<u>**MEMORANDUM OF POINTS AND AUTORITIES IN**</u>
<u>**SUPPORT OF MOTION TO INTERVENE FILED BY**</u>
<u>**THE U.S. SPORTSMEN'S ALLIANCE FOUNDATION,**</u>
<u>**WISCONSIN BEAR HUNTERS ASSOCIATION,**</u>
<u>**SCOTT MEYER, and ROB STAFSHOLT**</u>

Pursuant to Fed.R.Civ.P. 24, the U.S. Sportsmen's Alliance Foundation ("USSAF"), the Wisconsin Bear Hunters Association ("WBHA"), Scott Meyer, and Robert Stafsholt (collectively "Applicant Intervenors" or "Hunting Intervenors") hereby submit this memorandum in support of their Motion to Intervene as defendants in the above-captioned case. Intervention is appropriate because: (1) the motion is timely; (2) the Applicant Intervenors have an interest in the subject matter of this case, specifically the continued ability to protect their hunting dogs from attacks by gray wolves and consequently their continued enjoyment of their dogs and their hunting;

(3) returning the Western Great Lakes Distinct Population Segment ("WGL DPS") of the gray wolf to the list of endangered or threatened species will have a significant adverse impact on the Applicant Intervenors; and (4) the Applicant Intervenors' interests are different from those of the Federal Defendants and are not adequately represented by the Federal Defendants.

## I.     Factual and Procedural Background

The Plaintiffs' filed their complaint on April 16, 2007, challenging a recent decision by the U.S. Fish and Wildlife Service (the "Service") to remove the Western Great Lakes Distinct Population Segment of gray wolves from the federal list of threatened and endangered species under the Endangered Species Act ("ESA" or the "Act").  72 Fed. Reg. 6052 (Feb. 8, 2007).

### 1.     Fish and Wildlife Decision

In March 2006, the U.S. Fish and Wildlife Service ("FWS" or the "Service") released a proposal to "establish the Western Great Lakes Distinct Population Segment ("WGL DPS") of the gray wolf ("*canis lupus*") and to delist the Great Lakes gray wolf from the list of endangered and threatened species under the ESA."  Western Great Lakes Population of Gray Wolves; Proposed Rule, 71 Fed. Reg. 15266 (Mar. 27, 2006) ("Proposed Rule").  In accordance with its notice and comment requirements, the Service reviewed comments submitted by various parties and analyzed the best available scientific data regarding its proposals.

On February 8, 2007, the Service released its Final Rule removing the WGL DPS of gray wolves from the list of endangered or threatened species.  Western Great Lakes Populations of Gray Wolves Final Rule, 72 Fed. Reg. 6052 (Feb. 8, 2007) ("Final Rule").

A species may be delisted if the best available scientific data confirms that the species is neither endangered nor threatened because of (1) extinction, (2) recovery, or (3) error in the original data used for classification of the species. 50 C.F.R. § 424.11(d). A recovered species is one that no longer fits the definition of endangered or threatened. Final Rule at 6069. In its Final Rule, the Service found that data indicated that threats to the WGL DPS had been reduced or eliminated and therefore the population of wolves inhabiting the Western Great Lakes region ("Great Lakes Gray Wolves") no longer fit the definitions of threatened or endangered under the Act. Id. at 6052.

2.    **This Lawsuit**

On January 16, 2007, the Humane Society of the United States, Help Our Wolves Live ("HOWL"), and the Animal Protection Institute ("API") (collectively "Plaintiffs") filed the present suit ("Complaint") against the Secretary of the Interior, Dirk Kempthorne; the Department of the Interior ("DOI"); and the Fish and Wildlife Service ("FWS" or the "Service").

The Complaint alleges that the Service's Final Rule delisting the Great Lakes gray wolves violates the ESA and the Administrative Procedure Act ("APA"). Complaint ¶ 4. Specifically, the Plaintiffs allege that the gray wolf remains endangered throughout a significant portion of its range, delisting is impermissible and a violation of the ESA, and that the Final Rule was arbitrary and capricious. Complaint ¶¶ 29-30.

## II.    **The Hunting Intervenors**

The Hunting Intervenors are individual hunters in the Great Lakes region and organizations that represent hunters in the Great Lakes region as well as throughout the country. Further, the Hunting Intervenors are individuals, or represent individuals, that

use hunting dogs to assist them while hunting in the WGL region.  They maintain that removing the WGL DPS of the gray wolf from the list of endangered or threatened species has provided them with a significant benefit by enabling them to better protect their hunting dogs.  As explained below, the recovered, expanding gray wolf population represents a significant threat to hunting dogs and frequently attack and kill hunting dogs.  Indeed, the Hunting Intervenors are, or represent, individuals that have lost dogs to gray wolves.  Placing the Western Great Lakes gray wolf back on the list of endangered or threatened species will substantially diminish their ability to protect their dogs from the wolves.

Further, wildlife management is best achieved at a grassroots level and resident wildlife populations can be more effectively monitored and managed by state agencies – an outcome created by the delisting.  In addition, the Service's Final Rule was a professional, scientific decision finding that threats to the Western Great Lakes population of gray wolves have been eliminated or significantly reduced.  Further, the ruling was an informed decision that management of wolf populations in the Western Great Lakes, and their interactions with humans, are best left to state management plans.  The Hunting Intervenors support this decision, which the Plaintiffs now seek to overturn.

### 1.    The U.S. Sportsmen's Alliance Foundation

Headquartered in Columbus Ohio, the U.S. Sportsmen's Alliance Foundation ("USSAF") is a national organization dedicated to protecting the heritage of American's sportsmen and sportswomen to hunt, trap, and fish.  See attached Declaration of Rob Sexton on Behalf of USSAF ¶ 3 ("Sexton Decl.").  The USSAF represents approximately 1.5 million members through 1,300 affiliated conservation organizations.  Multiple

individuals live and hunt in the Great Lakes region, many of whom use dogs to assist them.  Id. ¶¶ 3-4.

The USSAF achieves its mission through, among other things, public education, issue research, and participation in legal proceedings that affect hunting, trapping, fishing and wildlife management.  Id. ¶ 4.  USSAF's parallel entity, the U.S. Sportsmen's Alliance ("USSA") participates in legislative and political activities related to the same issues.  The USSAF has a national perspective on wildlife management issues, supports the primacy of state management of resident wildlife, supports scientific and professional wildlife management, is experienced in defending litigation filed by animal rights activists across the Nation, and often works with state-specific hunters' associations such as the Wisconsin Bear Hunters Association ("WBHA").

In addition to the national perspective on wildlife issues, USSAF represents individual hunters in the Great Lakes region that hunt with dogs.  Id. ¶ 5.  These dogs are often bred specifically for hunting and require significant amounts of training.  Id.  See also attached Declaration of Bill Klugow ¶ 5 ("Klugow Decl.").  The recovered, expanding gray wolf population in the WGL region represents a significant threat to USSAF members' dogs and have frequently attacked dogs on and off members' property. The safety of these dogs, and consequently the continued enjoyment of recreational hunting by these members, depends upon USSAF members' ability to protect their dogs. The aftermath of wolf attacks on hunting dogs is gruesome and emotionally distressing on the individual owner.  Wolf depredations substantially diminish hunters' enjoyment of hunting.

The Plaintiff's suit poses a significant threat to the Applicant Intervenors' interests by attempting to place the Great Lakes gray wolves back on the list of endangered or threatened species, and therefore limiting the ability of USSAF's hunter members to protect their dogs.

### 2.    The Wisconsin Bear Hunters Association

The Wisconsin Bear Hunters Association ("WBHA") is an organization dedicated to promoting responsible hunting for bears specifically and wildlife in general.  See Klugow Decl. ¶ 2.  The WBHA has approximately 2,800 members within Wisconsin, many of whom are members of larger national hunting organizations like the USSAF.  Id. The organization is dedicated to working with state and local groups to supporting research into conservation management, the health of bear populations, and habitat management.  Wisconsin is geographically within the Western Great Lakes DPS.

Many WBHA members use dogs to assist them in hunting bears.  As stated above, these dogs generally require significant amounts of training and thus members have a vested interest in protecting their dogs.  Id. ¶ 5.  The recovered, expanding gray wolf population in the WGL region pose a significant threat to WBHA members' hunting dogs.  In fact, WBHA members have reported at least 27 attacks in recent years by gray wolves on their dogs.  Id.  Collectively the dogs were worth over $150,000.  Id.  The safety of these dogs, and consequently the continued enjoyment of recreational hunting by these members, depends upon WBHA members' ability to protect their dogs. However these WBHA members have lost both the personal value of their relationship with their dogs and the value of the dogs as personal property.

### 3.    Scott Meyer

Scott Meyer lives and hunts in the Great Lakes region.  Mr. Meyer is a member of the U.S. Sportsmen's Alliance as well as the Wisconsin Bear Hunters Association.  See Declaration of Scott Meyer ¶ 1 ("Meyer Decl.").  Mr. Meyer has been hunting for approximately 27 years and he keeps and trains hunting dogs.  On December 17, 2001 wolves attacked and killed one of Mr. Meyer's dogs.  Id. ¶ 3.  The attack was emotionally distressing for Mr. Meyer due to the close bonds he has with his dogs.  It is Mr. Meyer's belief that removing the WGL DPS of the gray wolf from the list of endangered or threatened species has substantially increased his ability to protect his dogs.  If the Plaintiffs succeed and the WGL DPS gray wolves are returned to the list of endangered or threatened species, Mr. Meyer's ability to protect his hunting dogs, and consequently his ability to enjoy dogs and his hunting, will be substantially diminished.

### 4.    Rob Stafsholt

Rob Stafsholt lives and hunts in the Great Lakes region.  Mr. Stafsholt is a member of the U.S. Sportsmen's Alliance as well as the Wisconsin Bear Hunters Association.  See Declaration of Rob Stafsholt at ¶ 1 ("Stafsholt Decl.").  Mr. Stafsholt has been hunting for approximately 19 years and he keeps and trains hunting dogs.  Id.  On August 20, 2004, wolves attacked and killed two of Mr. Stafsholt's dogs.  Id. ¶ 3.  The attack was emotionally distressing for Mr. Stafsholt due to the close bonds he has with his dogs.  It is Mr. Stafholt's belief that removing the WGL DPS of the gray wolf from the list of endangered or threatened species has substantially increased his ability to protect his dogs.  If the Plaintiff succeeds and the Great Lakes gray wolf is returned to the

list of endangered or threatened species, Mr. Stafholt's ability to protect his hunting dogs,

and consequently his ability to enjoy hunting, will be substantially diminished.

### III.     Discussion

### 1.     Intervention as of Right Under Fed.R.Civ.P. 24(a)

The Applicant Intervenors are entitled to intervene as a matter of right.   The

Federal Rules provide that:

> Upon timely application anyone shall be permitted to intervene in an
> action: . . . (2) when the applicant claims an interest relating to the
> property or transaction which is the subject of the action and the applicant
> is so situated that the disposition of the action may, as a practical matter,
> impair or impede the applicant's ability to protect that interest, unless the
> applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a).  This language creates four prerequisites to intervention as of right:

(1) the application must be timely; (2) there must be an "adequate interest"; (3) there

must be a "possible impairment of that interest"; and (4) there must be a "lack of

adequate representation of that interest by existing parties." Dimond v. Dist. of Columbia,

792 F.2d 179, 193 (D.C. Cir. 1986); see also Nuesse v. Camp, 385 F.2d 694, 699 (D.C.

Cir. 1967).  As shown below, Applicant Intervenors meet all criteria for intervention as of

right under Rule 24(a) and, therefore, intervention should be granted.

### a.     This Joint Motion is Timely

This joint motion is certainly timely at such an early stage of the case.   The

complaint was filed approximately one week ago on April 16, 2007.

### b.     The Applicant Intervenors Have (a) Substantial Interests in the Subject Matter of this Action that (b) May be Impaired or Impeded by an Adverse Ruling

"The 'interest' test is primarily a practical guide to disposing of lawsuits by

involving as many apparently concerned persons as is compatible with efficiency and due

process." <u>Nuesse</u>, 385 F.2d at 700.  When parties represent private interests properly safeguarded by formal participation in litigation, the United States Supreme Court has broadly interpreted the range of interests sufficient to justify intervention.  <u>See</u> <u>Cascade Natural Gas Corp. v. El Paso Natural Gas Co.</u>, 386 U.S. 129, 135-36 (1967) (holding that the interest claimed by applicant intervenor does need not be a direct interest in the property or transaction at issue, provided that it is an interest that would be impaired by the outcome).  An economic interest dependent upon the outcome of litigation squarely meets the Rule 24(a)(2) test.  <u>See</u> <u>Dimond</u>, 792 F.2d at 192.  A recreational interest is also sufficient.  <u>See</u> <u>Animal Protection Institute v. Merriam</u>, No. 06-3776, --- F.R.D. ---, 2006 WL 4081064 at 4 (D. Minn., Dec. 22, 2006).  Here, the Hunting Intervenors are, or represent, hunters whose economic and personal interests in these dogs are jeopardized by wolf depredation that will be far more difficult to prevent if the agency decision challenged in this lawsuit is overturned.  The same depredation limits their recreational interests in being able to enjoy hunting with dogs.

Applicant Intervenors have substantial interests in the instant lawsuit.  When the Service removed the Great Lakes gray wolf from the list of endangered and threatened species, it returned the wolf to traditional state management.  State management of wildlife allows for a more grass roots approach to conservation by persons far closer to home than a federal agency in Washington, D.C.  State management allows more practical control of wildlife populations to better address the conflicts inherent when wildlife and human activities overlap.

While the gray wolf was on the endangered species list, individuals were limited in their ability to protect their livestock and domestic animals.  <u>See</u> 50 C.F.R. § 17.11(n).

The regulations promulgated under the ESA only allowed for the taking of a gray wolf after a wolf had already wounded or killed livestock or dogs. 50 C.F.R. 17.11(n)(3)(iii)(A). Further, while the regulations allowed an individual to kill a wolf in defense of the individual's life, or that of another person, you could not kill a wolf to protect livestock or dogs. See 50 C.F.R. § 17.11(n)(3)(vi). So, if the delisting decision is overturned, a hunter who is himself or herself far enough from the wolf to not be in personal danger, will no longer be able to stop a wolf from eating his or her hunting dogs.

Under state management plans, which govern management of the WGL DPS of gray wolves post-delisting, the options to protect domestic animals such as hunting dogs are substantially broadened. As noted in the Final Rule, the benefit of state management planning is an understanding that individuals should be able to take action to protect their domestic animals (and livestock as well) on their private land. See Final Rule at 6087, 6091, 6094. For example, in Minnesota, individuals will be able to shoot and kill a gray wolf that "poses an immediate threat" to their livestock or dogs on the owners' land. Id. at 6087. The Service also noted that in Wisconsin post-delisting, a substantive change that will result in state management is that private landowners will be able to obtain permits from their local state government to kill depredating wolves. Id. at 6091.

Additionally, because of delisting, hunters may petition their local state governments to further modify rules making to better protect their dogs. They need no longer make their case to the far off Department of the Interior bureaucracy in Washington, D.C.

If the Plaintiffs prevail and the Final Rule is overturned, the Applicant Intervenors' benefits described above from state management plans will be substantially

diminished.  As noted, hunting dogs within the Great Lakes regions are frequently attacked by gray wolves.  For the individuals that witness such attacks, or the aftermath, gray wolf depredations are an emotionally distressing experience.  <u>See</u> Meyer Decl.¶ 3; Stafsholt Decl. ¶ 3.  Hunters spend considerable amounts of time and energy training their hunting dogs and develop a close bond with them.  <u>Id.</u>  Without the ability to protect their dogs, hunters are less likely to enjoy recreational hunting.  Placing the WGL DPS gray wolves back on the list of endangered and threatened species will substantially diminish the ability of hunters to protect their dogs, and therefore severely limit their enjoyment of hunting, their enjoyment of their personal relationship with their dogs, and jeopardize the economic value of the highly-trained dogs themselves.  <u>Id.</u> (dogs valued at $2,000 - $2,500 each).

> **c.    Existing Parties Do Not Adequately Represent the Interests of Applicant Intervenors.**

The Court should grant Applicant Intervenors' request for intervention because the Federal Defendants do not adequately represent the Applicant Intervenors' interests.  <u>See</u> <u>Trbovich v. United Mine Workers</u>, 404 U.S. 528, 538 n.10 (1972) (holding that an applicant need only show "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal").  When a regulating agency:

> has no financial stake in the outcome of the challenge . . . [a private party's] application for intervention thus falls squarely within the relatively large class of cases in this circuit recognizing the inadequacy of governmental representation of the interests of private parties in certain circumstances.

<u>Dimond</u>, 792 F.2d at 192.  Private parties can often "provide a very helpful supplement to the defense by the [federal] authority [because] 'there is a likelihood that the [private

parties] will make a more vigorous presentation of the economic side of the argument than would the [federal authority].'" Costle, 561 F.2d at 912 quoting N.Y. Pub. I.R.G. v. Regents, 516 F.2d 350, 352 (2d Cir. 1975).

Although the Federal Defendants are likely to defend based on procedural compliance with relevant statutes, the federal agencies named in this lawsuit will continue in its regulatory function regardless of the outcome of this lawsuit. Applicant Intervenors are not similarly assured of their futures. Federal Defendants are charged with balancing all interests, including Plaintiffs' views and others directly adverse to Applicant Intervenors.[2] For example, the Federal Defendants are charged by the ESA with the duty to "conserve endangered species and threatened species" generally, they have no obligation to specific interests. 16 U.S.C. § 1531(c)(1) Further, where injunctive relief is requested, the managing federal agency "is not charged with a duty to represent these asserted interests in defending against the issuance of an injunction." Forest Conservation Council v. U.S. Forest Serv., 66 F.3d 1489, 1499 (9th Cir. 1995). "Inadequate representation is most likely to be found when the applicants assert a personal interest that does not belong to the general public." Id. at 1499 quoting 3B Moore's Federal Practice, ¶ 24.07[4] at 24-78 (2d ed. 1995). Applicant Intervenors must obtain full party status to adequately defend their particularized interests. See Animal Protection Institute v. Merriam, No. 06-3776, --- F.R.D. ---, 2006 WL 4081064 at 5 (D. Minn., Dec. 22, 2006).

---

[2] In the following cases, the courts allowed intervention based on, among other things, possible inadequate representation by the governmental entity: Costle, 561 F.2d at 912 and n.41; In Re Sierra Club, 945 F.2d 776, 779-80 (4th Cir. 1991); Mille Lacs Band of Chippewa Indians v. State of Minnesota, 989 F.2d 994, 1000-01 (8th Cir. 1993); Meek v. Metro. Dade County, 985 F.2d 1471, 1478 (11th Cir. 1993); Nat'l Wildlife Fed'n v. Hodel, 661 F. Supp. 473, 476 (E.D. Ky. 1987).

The government's obligation to balance competing values raises a genuine possibility that, in the absence of intervention, the agency might dispose of all or portions of Applicant Intervenors' rights or interests in an attempt to negotiate a settlement encompassing the entire litigation. The agency is not obligated to represent Applicant Intervenors' far more narrow and parochial interests in a defense or settlement of this action. For example, accepting a settlement offer would ease the litigation burden on Federal Defendants, but it might well be contrary to Applicant Intervenors' interests.

Here, the Federal Defendants obligations extend to the public at large, including the view of the Plaintiffs. They do not represent the interests of hunters specifically. <u>See Mausolf v. Babbitt</u>, 85 F.3d 1295, 1303-04 (8th Cir. 1996). In addition to the types of general interest asserted by successful Intervenor-Appellants in <u>Mausolf</u>, Applicant Intervenors possess concrete economic and personal interests impacted by this litigation, namely the economic value of highly trained hunting dogs and the emotional bond with such companions.

### III.    <u>Intervenors Also Satisfy Rule 24(b) Permissive Intervention Criteria</u>.

In the alternative, Applicant Intervenors request permissive intervention under Rule 24(b), which states:

> Upon timely application anyone may be permitted to intervene in an action; . . . (2) when an applicant's claim or defense in the main action have a question of law or fact in common. . . . In exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b). This is a substantially lower burden than the test for intervention of right under Rule 24(a)(2). Here, permissive intervention is appropriate because Applicant Intervenors' arguments involve questions of law or fact common to the issues

to be resolved in this case; namely, was there an ESA violation in the decision to designate and delist the WGL DPS of the gray wolf? Furthermore, as previously stated, this motion is timely and intervention by Applicant Intervenors will not unduly delay this proceeding or unfairly prejudice the rights of the parties. Moreover, the severe potential impact upon Applicant Intervenors weighs strongly in favor of allowing their participation with full rights as a party. See generally Am. Train Dispatchers, 26 F.3d at 1162. Accordingly, permissive intervention should be granted here if intervention of right is not.

## IV.    Conclusion.

Plaintiffs' challenge to the Service's decision to delist the WGL DPS gray wolves severely threatens the substantial, yet narrow, interests of Applicant Intervenors in protecting their hunting dogs from being eaten by gray wolves – protection that is far easier to provide if the agency action under review is upheld than if it is overturned. The Federal Defendants do not directly or specifically represent Applicant Intervenors' interests that are threatened by Plaintiffs' requested relief. Federal Defendants cannot be expected to raise the same issues and concerns as Applicant Intervenors, yet it is the Applicant Intervenors and their hunting dogs that would conceivably suffer the impact of an adverse decision or settlement. Therefore, the Court should allow Applicant Intervenors to intervene to protect their substantial interests at stake in this litigation.

DATED:        April 20, 2007

Respectfully Submitted,

U.S. Sportsmen's Alliance Foundation
Wisconsin Bear Hunters Association
Scott Meyer
Rob Stafsholt

*By their attorneys*

 _/s/ William P. Horn_____
William P. Horn (D.C. Bar No. 375666)
James H. Lister (D.C. Bar No. 447878)
Birch, Horton, Bittner & Cherot
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile:  (202) 659-1027
Email: whorn@dc.bhb.com
Email:  jlister@dc.bhb.com

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 20th day of April, 2007, the foregoing document

was mailed by first class mail to:

Rebecca G. Judd, Esq.
The Humane Society of the United States
2100 L Street, N.W.
Washington, D.C.  20037
Counsel for Plaintiffs

Brian B. O'Neill, Esq.
Sanne H. Knudsen, Esq.
Michael C. Soules, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Counsel for Plaintiffs

Dirk Kempthorne, Secretary of the Interior[*]
Department of the Interior
1849 C Street, N.W.
Washington, D.C.  20240

United States Department of Interior[*]
1849 C Street N.W.
Washington, D.C.  20240

United States Fish and Wildlife Service[*]
1849 C Street, N.W.
Washington, D.C.  20240

                              /s/ James H. Lister
                              William P. Horn (D.C. Bar No. 375666)
                              James H. Lister (D.C. Bar No. 447878)
                              Birch, Horton, Bittner & Cherot
                              1155 Connecticut Avenue, N.W., Suite 1200
                              Washington, DC  20036

---

[*] No attorney has entered an appearance for the Federal Defendants to date.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 1:07-cv-00677 |
| DIRK KEMPTHORNE, et al. | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| THE U.S. SPORTSMEN'S ALLIANCE FOUNDATION, WISCONSIN BEAR HUNTERS ASSOCIATION, SCOTT MEYER, and ROB STAFSHOLT | ) ) ) ) ) | |
| Applicant Intervenors/Defendants. | ) | |

**[PROPOSED] ORDER**

Upon full consideration of Applicant Defendant Intervenors' Motion to Intervene, the entire record herein, and it appearing there is good cause therefor, on this _____ day of _____, 2007, it is hereby

ORDERED that Defendant-Intervenor Applicants' Motion to Intervene As Defendant-Intervenors is GRANTED, and the U.S. Sportsmen's Alliance Foundation, Wisconsin Bear Hunters Association, Scott Meyer, and Robert Stafsholt shall be Defendant Intervenors in this action.

So ordered.

_____
Honorable Paul L. Friedman
U.S. District Court, District of
      Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES, et al. | ) ) ) | |
| Plaintiffs, | ) ) | **Case: 1:07-cv-00677** |
| v. | ) ) ) | |
| DIRK KEMPTHORNE, SECRETARY OF THE INTERIOR, et al. | ) ) ) ) | |
| Federal Defendants, | ) ) | |
| and | ) ) | |
| THE U.S. SPORTSMEN'S ALLIANCE FOUNDATION, WISCONSIN BEAR HUNTERS ASSOCIATION, SCOTT MEYER, and ROBERT STAFSHOLT | ) ) ) ) ) | |
| Applicant Intervenor/Defendants. | ) | |

### DECLARATION OF ROB SEXTON ON BEHALF OF THE
### U.S. SPORTSMEN'S ALLIANCE FOUNDATION

I, Rob Sexton, being duly sworn according to law, upon my oath, depose and say:

1.     I am Vice-President for Government Affairs of the U.S. Sportsmen's Alliance Foundation ("USSAF") headquartered in Columbus, Ohio. I make this Declaration in support of the Motion to Intervene filed by the USSAF and other hunting associations and individual hunters.

2.     The USSAF is a national non-profit section 501(c)(3) organization dedicated to protecting the heritage of America's sportsmen and sportswomen to hunt, trap, and fish.

3.     The USSAF has approximately 1.5 million members in approximately 1,300 affiliated conservation organizations. Additionally, USSAF has members

throughout the Great Lakes Region, the range of the distinct population segment of gray wolves at issue in the above-captioned case.

4.      The USSAF achieves its mission through, among other things, public education, issue research, and participation in legal proceedings that affect hunting, trapping, fishing and wildlife management.   USSAF's parallel entity, the U.S. Sportsmen's Alliance ("USSA") participates in legislative and political activities related to the same issues.  The USSAF has a national perspective on wildlife management issues, is experienced in defending litigation filed by animal rights activists across the Nation, and often works with state-specific hunters' associations such as the Wisconsin Bear Hunters Association ("WBHA").

5.      In addition, the USSAF has members throughout the country, and specifically in the Great Lakes region, that hunts with the assistance of dogs and keep their hunting dogs on their property.  These dogs are often bred specifically for hunting and require significant amounts of training.  Consequently, USSAF members invest substantial amounts of money into breeding and training and therefore have a vested interest in protecting their dogs.

6.      Gray wolves represent a significant threat to USSAF members' dogs and have frequently attacked dogs on and off members' property.  The safety of these dogs, and consequently the continued enjoyment of recreational hunting by these members, depends upon USSAF members' ability to protect their dogs.  Watching their dogs be attacked by wolves is an emotionally distressing occurrence for hunters. When the gray wolf was removed from the endangered species list, the ability of these members to

protect their property and consequently their enjoyment of hunting was substantially increased.

7.    In its lawsuit, Plaintiff is challenging the U.S. Fish and Wildlife Service's decision to remove the gray wolf from the list of endangered or threatened species. If the decision is overturned, and the gray wolf is placed back on such list, the ability of USSAF members to protect their property and their recreational enjoyment of hunting will be substantially diminished.

8.    Further, the lawsuit has important implications affecting USSAF members more broadly, as Plaintiff's suit will remove gray wolves from a more traditional state authority over wildlife management and place them back under federal authority.

9.    So that we may participate in this case, which so vitally affects the interests of our hunting members and other members, I respectfully request that the Court grant the Motion to Intervene filed by USSAF, WBHA, and individual hunters.

Executed under penalty of perjury in Columbus, Ohio on ___4/19/07___.

Robert T. Sexton

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE<br>UNITED STATES, et al. | ) )<br>) | |
| Plaintiffs, | )<br>) | **Case:  1:07-cv-00677** |
| v. | )<br>)<br>) | |
| DIRK KEMPTHORNE,<br>SECRETARY OF THE INTERIOR, et al. | )<br>)<br>) | |
| Federal Defendants, | )<br>)<br>) | |
| and | )<br>) | |
| THE U.S. SPORTSMEN'S ALLIANCE<br>FOUNDATION, WISCONSIN BEAR<br>HUNTERS ASSOCIATION, SCOTT<br>MEYER, and ROBERT STAFSHOLT | )<br>)<br>)<br>)<br>)<br>) | |
| Applicant Intervenor/Defendants. | )<br>) | |

## DECLARATION OF ROB STAFSHOLT

I, Rob Stafsholt, hereby testify as follows:

1.      I am a member of the U.S. Sportsmen's Alliance as well as the Wisconsin Bear Hunters Association.

2.      I have hunted for approximately _____ years.  I train and use dogs to assist me when I hunt.  I keep these dogs in a kennel on my property.  Using dogs make it far easier to hunt.

3.      On August 20, 2004, wolves attacked and killed two of my dogs.  These dogs were specially bred and trained for hunting and were valued at approximately

$5,000. Further, I love and care for my dogs deeply and watching them be attacked by wolves is an emotionally distressing occurrence.

4.    Removing the gray wolf from the list of endangered or threatened species provides me with a better opportunity to protect my dogs on and off my property. If the Plaintiff is successful and the gray wolf is returned to the endangered species list, I will be severely limited in my ability to protect my dogs from vicious predators.

5.    The ability to protect my dogs is very important to me. Without an ability to protect my dogs, I cannot enjoy hunting to its full extent.

6.    I believe that placing the gray wolf back on the list of endangered or threatened species is unwarranted and completely unnecessary considering the current population level of the species.

7.    I submit this declaration in support of the Motion to Intervene filed by the U.S. Sportsmen's Alliance Foundation, the Wisconsin Bear Hunters Association, myself, and other individual hunters. I respectfully request that the Court grant the Motion to Intervene.

Executed under penalty of perjury in New Richmond, WI on April 19, 2007.

Rob Stafsholt

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE<br>UNITED STATES, et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | **Case:  1:07-cv-00677** |
| | ) | |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, | ) | |
| SECRETARY OF THE INTERIOR, et al. | ) | |
| | ) | |
| | ) | |
| Federal Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE U.S. SPORTSMEN'S ALLIANCE | ) | |
| FOUNDATION, WISCONSIN BEAR | ) | |
| HUNTERS ASSOCIATION, SCOTT | ) | |
| MEYER, and ROBERT STAFSHOLT | ) | |
| | ) | |
| Applicant Intervenor/Defendants. | ) | |

**DECLARATION OF BILL KLUGOW ON BEHALF OF THE**
**WISCONSIN BEAR HUNTERS ASSOCIATION**

I, Bill Klugow, upon my oath, depose and say:

1.    I am on the Board of Directors of the Wisconsin Bear Hunters Association ("WBHA") headquartered in Madison, Wisconsin.  I make this Declaration in support of the Motion to Intervene filed by the U.S. Sportsman's Alliance Foundation ("USSAF"), WBHA, and individual hunters.

2.    The WBHA is a non-profit section 501(c)(4) organization dedicated to promoting responsible hunting for bears specifically and wildlife in general.

3.    The WBHA has over 2,800 members within Wisconsin, many of whom are members of larger national hunting organizations like the USSAF.

4.    The WBHA works with state agencies and other organizations to support ongoing bear research, population studies, and habitat management. The WBHA is committed to working with state agencies to protect hunting rights.

5.    Many of WBHA members hunt with the assistance of dogs. These dogs are bred specifically for hunting and require significant amounts of training. Consequently, WBHA members invest substantial amounts of money into breeding and training and therefore have a vested interest in protecting their dogs.

6.    Gray wolves represent a significant threat to WBHA members' dogs and have frequently attacked dogs on and off members' property. In fact, WBHA members have reported at least 27 attacks in recent years by gray wolves on their dogs. These WBHA members have lost both the personal value of their relationship with their dogs and the value of the dogs as personal property. Collectively the dogs were worth at least $150,000. The safety of these dogs, and consequently the continued enjoyment of recreational hunting by these members, depends upon WBHA members' ability to protect their dogs.

7.    In its lawsuit, Plaintiff is challenging the U.S. Fish and Wildlife Service's decision to remove the gray wolf from the list of endangered or threatened species. If the decision is overturned, and the gray wolf is placed back on such list, the ability of WBHA members to protect their property and their enjoyment of recreational hunting and their relationships with their hunting dogs will be substantially diminished.

8.    Further, the lawsuit has important implications affecting WBHA members more broadly, as Plaintiff's suit will remove gray wolves from a more traditional state authority over wildlife management and place them once more under federal authority.

9.    So that we may participate in this case, which so vitally affects the interests of our hunting members and other members, I respectfully request that the Court grant the Motion to Intervene filed by USSAF, WBHA, and individual hunters who hunt with dogs.

Executed under penalty of perjury in Danbury, Wisconsin on April 19, 2007.

Bill Klugow

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HUMANE SOCIETY OF THE<br>UNITED STATES, et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DIRK KEMPTHORNE, )<br>SECRETARY OF THE INTERIOR, et al. )<br>)<br>)<br>Federal Defendants, )<br>)<br>and )<br>)<br>THE U.S. SPORTSMEN'S ALLIANCE )<br>FOUNDATION, WISCONSIN BEAR )<br>HUNTERS ASSOCIATION, SCOTT )<br>MEYER, and ROBERT STAFSHOLT )<br>)<br>Applicant Intervenor/Defendants. ) | **Case:  1:07-cv-00677** |

## DECLARATION OF SCOTT MEYER

I, Scott Meyer, hereby testify as follows:

1.    I am a member of the U.S. Sportsmen's Alliance Foundation as well as the Wisconsin Bear Hunters Association.

2.    I have hunted for approximately 25 years.  I train and use dogs to assist me when I hunt.  I keep these dogs in a kennel on my property.

3.    On December 17, 2001 wolves attacked and killed one of my dogs.  These dogs were specially bred and trained for hunting and were valued at approximately $2,000 each.  Further, I love and care for my dogs deeply and watching them be attacked by wolves is an emotionally distressing occurrence.

4.    Removing the gray wolf from the list of endangered or threatened species provides me with a better opportunity to protect my dogs on and off of my property. If the Plaintiff is successful and the gray wolf is returned to such list, I will be severely limited in my ability to protect my dogs from vicious predators.

5.    The ability to protect my dogs is very important to me. Without an ability to protect my dogs, I cannot enjoy hunting to its full extent.

6.    I believe that placing the gray wolf back on the list of endangered or threatened species is unwarranted and completely unnecessary considering the current population level of the species.

7.    I submit this declaration in support of the Motion to Intervene filed by the U.S. Sportsmen's Alliance Foundation, the Wisconsin Bear Hunters Association, myself, and other individual hunters. I respectfully request that the Court grant the Motion to Intervene.

Executed under penalty of perjury in Gleason Wisconsin on April 19, 2007.

/s/ Scott Meyer
Scott Meyer

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE | ) | |
| UNITED STATES, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | **Case: 1:07-cv-00677** |
| | ) | |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, | ) | |
| SECRETARY OF THE INTERIOR, et al. | ) | |
| | ) | |
| | ) | |
| Federal Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE U.S. SPORTSMEN'S ALLIANCE | ) | |
| FOUNDATION, WISCONSIN BEAR | ) | |
| HUNTERS ASSOCIATION, SCOTT | ) | |
| MEYER, and ROBERT STAFSHOLT | ) | |
| | ) | |
| Applicant Intervenor/Defendants. | ) | |

## <u>CERTIFICATE RULE LCvR 7.1</u>

I, the undersigned counsel of record for the U.S. Sportsmen's Alliance Foundation, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of the U.S. Sportsmen's Alliance Foundation which have outstanding securities in the hands of the public:

**NONE**

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record for U.S. Sportsmen's
Alliance Foundation


_/s/ William P. Horn_____
William P. Horn (D.C. Bar No. 375666)
James H. Lister (D.C. Bar No. 447878)
Birch, Horton, Bittner & Cherot
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile:  (202) 659-1027
Email: whorn@dc.bhb.com
Email:  jlister@dc.bhb.com

## CERTIFICATE OF SERVICE

I hereby certify that on this, the _____ day of April, 2007, the foregoing

document was mailed by first class mail to:

Rebecca G. Judd, Esq.
The Humane Society of the United States
2100 L Street, N.W.
Washington, D.C.  20037
Counsel for Plaintiffs

Brian B. O'Neill, Esq.
Sanne H. Knudsen, Esq.
Michael C. Soules, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Counsel for Plaintiffs

Dirk Kempthorne, Secretary of the Interior[*]
Department of the Interior
1849 C Street, N.W.
Washington, D.C.  20240

United States Department of Interior[*]
1849 C Street N.W.
Washington, D.C.  20240

United States Fish and Wildlife Service[*]
1849 C Street, N.W.
Washington, D.C.  20240

_____
William P. Horn (D.C. Bar No. 375666)
James H. Lister (D.C. Bar No. 447878)
Birch, Horton, Bittner & Cherot
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036

---

[*] No attorney has entered an appearance for the Federal Defendants to date.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE | ) | |
| UNITED STATES, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | **Case:  1:07-cv-00677** |
| | ) | |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, | ) | |
| SECRETARY OF THE INTERIOR, et al. | ) | |
| | ) | |
| | ) | |
| Federal Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE U.S. SPORTSMEN'S ALLIANCE | ) | |
| FOUNDATION, WISCONSIN BEAR | ) | |
| HUNTERS ASSOCIATION, SCOTT | ) | |
| MEYER, and ROBERT STAFSHOLT | ) | |
| | ) | |
| Applicant Intervenor/Defendants. | ) | |

## CERTIFICATE RULE LCvR 7.1

I, the undersigned counsel of record for the Wisconsin Bear Hunters Association, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of the Wisconsin Bear Hunters Association which have outstanding securities in the hands of the public:

**NONE**

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record for Wisconsin
Bear Hunters Association


_/s/ William P. Horn_____
William P. Horn (D.C. Bar No. 375666)
James H. Lister (D.C. Bar No. 447878)
Birch, Horton, Bittner & Cherot
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile:  (202) 659-1027
Email: whorn@dc.bhb.com
Email:  jlister@dc.bhb.com

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 20th day of April, 2007, the foregoing document was mailed by first class mail to:

Rebecca G. Judd, Esq.
The Humane Society of the United States
2100 L Street, N.W.
Washington, D.C.  20037
Counsel for Plaintiffs

Brian B. O'Neill, Esq.
Sanne H. Knudsen, Esq.
Michael C. Soules, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Counsel for Plaintiffs

Dirk Kempthorne, Secretary of the Interior[*]
Department of the Interior
1849 C Street, N.W.
Washington, D.C.  20240

United States Department of Interior[*]
1849 C Street N.W.
Washington, D.C.  20240

United States Fish and Wildlife Service[*]
1849 C Street, N.W.
Washington, D.C.  20240

/s/ James H. Lister
William P. Horn (D.C. Bar No. 375666)
James H. Lister (D.C. Bar No. 447878)
Birch, Horton, Bittner & Cherot
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036

---

[*] No attorney has entered an appearance for the Federal Defendants to date.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE | ) | |
| UNITED STATES, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | **Case:  1:07-cv-00677** |
| | ) | |
| v. | ) | |
| | ) | **PROPOSED ANSWER OF APPLICANT** |
| DIRK KEMPTHORNE, | ) | **DEFENDANT INTERVENORS** |
| SECRETARY OF THE INTERIOR, et al. | ) | **U.S. SPORTSMEN'S ALLIANCE** |
| | ) | **FOUNDATION, WISCONSIN BEAR** |
| | ) | **HUNTERS ASSOCIATION,** |
| Federal Defendants, | ) | **SCOTT MEYER, AND ROB STAFHOLT** |
| | ) | |
| and | ) | |
| | ) | |
| THE U.S. SPORTSMEN'S ALLIANCE | ) | |
| FOUNDATION, WISCONSIN BEAR | ) | |
| HUNTERS ASSOCIATION, SCOTT | ) | |
| MEYER, and ROBERT STAFSHOLT | ) | |
| | ) | |
| Applicant Intervenor/Defendants. | ) | |

Applicant Intervenor Defendants U.S. Sportsmen's Alliance Foundation, Wisconsin Bear Hunters Association, Scott Meyer, and Rob Stafsholt (collectively "Applicant Intervenors") respectfully submit their proposed Answer to the Complaint for Declaratory and Injunctive Relief ("Complaint") filed by Plaintiffs in this matter.  For convenience, the Defendants named in the Complaint, Secretary of the Interior Dirk Kempthorne, the U.S. Department of Interior, and the U.S. Fish and Wildlife Service, are collectively referred to in this Answer as the "Federal Defendants."

1.     In response to the allegations in paragraph 1 of the Complaint, Applicant Intervenors admit that Plaintiffs seek declaratory and injunctive relief challenging a decision by the Federal Defendants to remove the Western Great Lakes Distinct Population Segment of the

Gray Wolf from the list of threatened or endangered species. Any other allegations of paragraph 1 are denied.

2.      In response to the allegations of paragraph 2 of the Complaint, Applicant Intervenors admit that the gray wolf has made a come back and that its population in the Great Lakes and Rocky Mountain Regions has increased, and admit that the Endangered Species Act ("ESA") was enacted in 1973. All other allegations of Paragraph 2 are denied.

3.      The allegations of paragraph 3 of the Complaint are denied.

4.      The allegations of paragraph 4 of the Complaint state legal conclusions to which no response is required and purport to summarize statutes and agency decisions which speak for themselves. Applicant Intervenors deny any portions of such summaries which are inaccurate or incomplete.

5.      The allegations of paragraph 5 of the Complaint are denied.

6.      Applicant Intervenors generally admit the allegations of the first sentence of paragraph 6 of the Complaint, and admit the allegations of the second sentence of paragraph 6 of the Complaint that the decision at 68 Fed. Reg. 15804 was overturned on judicial review. Applicant Intervenors are presently without sufficient information to determine the truth or falsity of the allegation in the third sentence of paragraph 6 of the Complaint that gray wolves are not found in the conterminous U.S. States except for in the Great Lakes and Northern Rocky Mountain regions, and therefore deny such allegation. Applicant Intervenors deny the other allegations of that sentence. All other allegations of paragraph 6 of the Complaint are denied.

7.      The allegations of the first two sentences of paragraph 7 of the Complaint are admitted. Applicant Intervenors are without sufficient information to determine the truth or

falsity of the allegations of the third sentence of the paragraph, and therefore deny such allegations.  The allegation of the fourth sentence of paragraph 7 of the Complaint is denied.

8.      In response to the allegations of paragraph 8 of the Complaint, Applicant Intervenors admit that Plaintiffs are seeking an injunction and an order vacating the Western Great Lakes DPS delisting rule, but deny that such delisting rule violates any law and deny that the Federal Defendants violated any law.

## JURISDICTION AND VENUE

9.      Applicant Intervenors admit the allegation of paragraph 9 of the Complaint that there is federal question jurisdiction under 28 U.S.C. § 1331.[1]

10.      In response to paragraph 10 of the Complaint, Applicant Intervenors admit that venue is not contrary to statute, but deny the allegations that the Federal Defendants violated any laws.

## PARTIES

11-13.  Applicant Intervenors are without sufficient knowledge to determine the truth or falsity of the allegations of paragraphs 11-13 of the Complaint, and therefore deny them.

14.      Applicant Intervenors admit the allegations of the first sentence of paragraph 14 of the Complaint, state that the allegations of the second sentence allege a legal conclusion to which no response is required and construe a statute which speaks for itself, and admit the allegations of the third sentence that the Federal Defendants are sued in their official capacities.

---

[1] This admission should not be construed as an admission that Plaintiffs have satisfied the threshold pleading requirements of the Administrative Procedure Act, 5 U.S.C. § 551, et seq. These threshold APA requirements are sometimes referred to as being jurisdictional in nature.

## LEGAL FRAMEWORK

15-37. The allegations of paragraphs 15 through 37 of the Complaint state legal conclusions to which no response is required.   These allegations all summarize statutes, regulations, agency decisions and other legal documents which speak for themselves.   Any portion of the summaries that are inaccurate or incomplete are denied.   Any factual allegations in these paragraphs are denied.

## FACTUAL BACKGROUND

38.     Applicant Intervenors admit the allegations of the first and second sentences of paragraph 38 of the Complaint, but are without sufficient information to admit or deny the allegations of the third sentence, and so deny those allegations.

39.     Applicant Intervenors admit the allegations of the first and second sentences of paragraph 39 of the Complaint, but deny all other allegations of the paragraph.

40.     The allegations of paragraph 40 of the Complaint are denied.

41.     The allegations of the first and last sentences of paragraph 41 of the Complaint are admitted as being generally correct.   Applicant Intervenors are without sufficient information to determine the truth or falsity of the other allegations in paragraph 41, and therefore deny them.

42.     Applicant Intervenors are without sufficient information to determine the truth or falsity of the allegations of paragraph 42 of the Complaint, and therefore deny them.

43.     The allegations of paragraph 43 of the Complaint are denied.

44.     The allegation of paragraph 44 of the Complaint that large carnivores provide an "early warning" of ecological problems is denied as overbroad.

45-47. Applicant Intervenors are without sufficient information to determine the truth or falsity of the allegations of paragraphs 45, 46, and 47 of the Complaint, and therefore deny them.

48.     The allegations of the first sentence of paragraph 48 are denied as overbroad. Applicant Intervenors are without sufficient information to determine the truth or falsity of the remaining allegations in paragraph 48, and therefore deny them.

49.     Applicant Intervenors are without sufficient information to admit or deny the allegations of paragraph 49 of the Complaint, and therefore deny those allegations.

50.     In response to the historical allegations of paragraph 50 of the Complaint, Applicant Intervenors admit on information and belief that the gray wolf may have once ranged through various regions in the Northern part of what is now the United States, and that development and various wolf control programs reduced their numbers before their present recovery.  All other allegations of Paragraph 50 are denied.

51.     The historical allegations of the first two sentences of paragraph 51 of the Complaint are admitted as being generally correct; although the old federal control program referenced may not have been "aggressive" as portrayed by Plaintiffs.  The allegations in the third sentence of paragraph 51 are denied.

52-53.  Applicant Intervenors are presently without sufficient information to determine the truth or falsity of the allegations of paragraph 52 and 53 of the Complaint and therefore deny them.

54.     Applicant Intervenors deny the allegations of the first and second sentences of paragraph 54 of the Complaint, but admit that the FWS in August 1974 listed various subspecies of wolves, including the eastern timber wolf, as endangered or threatened under the ESA.

55.     Applicant Intervenors are without sufficient information to determine the truth or falsity of the allegations of the first sentence of paragraph 55 of the Complaint, and therefore deny them.  Applicant Intervenors admit the allegations in the second sentence.

56.    In response to the allegations of paragraph 56 of the Complaint, Applicant Intervenors admit that listing a species under the ESA triggers certain protections under the ESA, but deny that listing under the ESA is the only way to protect a species, deny that listing under the ESA ensures the survival of a species, and deny all other allegations of the paragraph.

57.    In response to the allegations of the first sentence of paragraph 57 of the Complaint, Applicant Intervenors admit that the Minnesota gray wolf population has increased substantially since the 1970s, but deny all remaining allegations and inferences in that sentence. Applicant Defendant Intervenors are presently without sufficient information to determine the truth or falsity of the allegations in the rest of paragraph 57, and therefore deny them. Further answering, Applicant Intervenors deny any alleged inference that maintaining the present healthy gray wolf population requires relisting the gray wolf in the Western Great Lakes DPS as threatened or endangered.

58.    The allegations of first sentence of paragraph 58 of the Complaint that there are wolves in Northern Wisconsin and the Upper Peninsula of Michigan are admitted, although wolves may be present in other parts of those states as well. Any remaining allegations in the first sentence are denied based on lack of information to determine truth or falsity. The allegations of the remainder of the paragraph are denied based on insufficient information to determine truth or falsity.

59.    The allegations of the first sentence of paragraph 59 of the Complaint are admitted as being generally correct. Applicant Intervenors are without sufficient information to determine the truth or falsity of the allegations of the second sentence of paragraph 59 of the Complaint, and therefore deny them.

60.     Applicant Intervenors are without sufficient information to determine the truth or falsity of the allegations of paragraph 60 of the Complaint, and therefore deny them.  Further answering, Applicant Intervenors note that Plaintiffs seek to exclude the vast number of gray wolves and the vast areas of gray wolf range located in Canada and Alaska from their comparison of historical range and present range.

61.     The allegations of the first sentence of paragraph 61 of the Complaint are denied. Applicant Intervenors are without sufficient information to determine the truth or falsity of the remaining allegations in the paragraph, and therefore deny them.  The judicial opinions cited by Plaintiffs speak for themselves, and Applicant Intervenors deny any portion of the summaries of those opinions that are inaccurate or incomplete.

62.     In response to paragraph 62 of the Complaint, Applicant Intervenors admit that the FWS by 2000 had commenced activities potentially leading to gray wolf delisting, but deny there was an "intensive campaign" to delist.

63.     The allegations of the first sentence of paragraph 63 of the Complaint are admitted.  Applicant Intervenors are without sufficient information to determine the truth or falsity of the allegations of the second sentence of paragraph 63, and therefore deny them.

64.     The allegations of paragraph 64 of the Complaint are admitted as being generally accurate, although not a complete summary of the 2003 Rule.

65.     The allegations of the first sentence of paragraph 65 of the Complaint are admitted, except that any allegation of pre-set intent is denied. The allegations of the second sentence of paragraph 65 of the Complaint, that the FWS proposed on July 21, 2004 to delist the gray wolf in the Eastern DPS, 69 Fed. Reg. 43664, are admitted.  However, the allegation that such action by the FWS was making "good on its threat" is denied.

66-67.  Paragraph 66 and 67 of the Complaint purports to summarize judicial opinions which speak for themselves.  Applicant Intervenors deny any portions of the summaries that are incomplete or inaccurate.

68.    The allegations of the first sentence of paragraph 68 are denied.  Applicant Intervenors are without sufficient information to determine the truth or falsity of the second through fifth sentence of the allegations in the paragraph, and therefore deny them.    The allegations of the sixth sentence summarize a judicial opinion which speaks for itself; Applicant Intervenors deny any portion of the summary that is inaccurate or incomplete.

69.    The allegations of the first sentence of paragraph 69 of the Complaint are denied.  The allegations of the second sentence purport to summarize a judicial opinion which speaks for itself.  Any portions of the summary that are inaccurate or incomplete are denied.

70.    The allegations of paragraph 70 of the Complaint are denied.

71.    The allegations of paragraph 71 of the Complaint are admitted, except that the characterization of boundaries as being "expansive" is denied, subject to further investigation.

72.    In response to the allegations of paragraph 72 of the Complaint, it is admitted on information and belief that various parties filed comments supporting or opposing the proposed rule, and that FWS ultimately determined to issue a rule delisting the Western Great Lakes DPS of the Gray Wolf.  All other allegations or characterizations are denied.

73.    The allegations of the first sentence of paragraph 73 of the Complaint are admitted.  The allegations of the second sentence are denied.

74-77.  The allegations of paragraphs 74, 75, 76, and 77 of the Complaint are denied.

78.    The allegations of the first sentence of paragraph 78 of the Complaint are denied.  In response to the second sentence of paragraph 78, it is admitted that the Minnesota and

Wisconsin management plans provide, in some circumstances, for more opportunity for appropriate lawful wolf control than was possible before the delisting of the Western Great Lakes DPS; however, all other allegations of the sentence are denied. The allegations of the final two sentences of paragraph 78 are denied.

79-80. The allegations of paragraph 79 and 80 of the Complaint are denied.

81. The allegations of the first two sentences of paragraph 81 of the Complaint are denied. Applicant Intervenors are without sufficient information to determine the truth or falsity of the allegations of the third and fourth sentences of paragraph 81, and therefore deny them.

82. The allegations of paragraph 82 of the Complaint are denied, except that, with respect to the two quotations of the delisting rule, Applicant Intervenors state that the delisting rule speaks for itself.

83. The allegations of paragraph 83 of the Complaint are denied.

84. The allegations of paragraph 84 of the Complaint are denied. Further answering, Applicant Intervenors state that the Minnesota and Wisconsin plan allow for more appropriate and lawful wolf control than was possible before adoption of the delisting rule.

85. The factual allegations of paragraph 85 of the Complaint are denied; except that it is admitted that state have more flexibility in managing wildlife within their boundaries after delisting of a species under the ESA than before delisting. Portions of paragraph 85 summarize judicial opinions which speak for themselves; any portions of those summaries that are inaccurate or incomplete are denied.

86. The allegations of paragraph 86 of the Complaint are denied. With respect to the fourth and fifth sentences of the paragraph, the denial is based on lack of sufficient information to determine truth or falsity.

87.     The allegations of paragraph 87 of the Complaint are denied.  With respect to the allegation regarding the portion of wolf deaths caused by mange, the denial is based on lack of sufficient information to determine truth or falsity.

88.     The allegations of the first sentence of paragraph 88 of the Complaint are denied. The allegations of the second sentence are denied based on lack of sufficient information to determine their truth or falsity.

89.     The allegations of paragraph 89 of the Complaint are denied.  With respect to the portion of paragraph 89 that purports to summarize the FWS's wolf recovery plan, Applicant Intervenors state that the wolf recovery plan speaks for itself, and deny any portions of the summary that are inaccurate or incomplete.

90.     The allegations of paragraph 90 of the Complaint are denied.  The final sentence of paragraph 90 summarizes a portion of the ESA which speaks for itself; the Applicant Intervenors deny any portion of the summary that is incomplete or inaccurate.

91.     The allegations of the first two sentences of paragraph 91 are denied.  The allegations of the final sentence are admitted on information and belief.

92.     In response to paragraph 92 of the Complaint, it is admitted that the FWS on February 8, 2007 issued a proposed rule regarding a Northern Rocky Mountain DPS, and that February 8, 2007 was the day the FWS issued its rule delisting the gray wolf in the Western Great Lakes DPS.  All other allegations of paragraph 92 are denied.  With respect to the allegations in the last sentence of the paragraph, the denial is based on lack of information to determine truth or falsity.

93.     The allegations of the first sentence of paragraph 93 of the Complaint are denied. The Applicant Intervenors are without sufficient information to determine the truth or falsity of

the allegations of the second sentence of paragraph 93, and therefore deny them. The allegations of the third sentence are admitted on information and belief, although the allegations are incomplete in that they discount FWS action during the last six years to list new species.

94.     The allegations of the first sentence of paragraph 94 of the Complaint are denied. The allegations in the second and third sentences that there was a down listing of the American crocodile from endangered to threatened status and a delisting of the grizzly bear in the Yellowstone region are admitted, but the allegation that grizzly bears are seriously threatened throughout their range is denied.

95.     In response to the allegations of paragraph 95 of the Complaint, Applicant Intervenors deny the allegation that the delisting of the Western Great Lakes DPS of the gray wolf was unlawful. Applicant Intervenors lack sufficient information to determine the truth or falsity of the allegation that Plaintiffs sent 60 day Notice letters under the ESA to Federal Defendants, and therefore deny such allegation.

## RESPONSE TO COUNTS SET FORTH IN COMPLAINT

96.     Paragraph 96 of the Complaint restates paragraphs 1 through 95 of the Complaint. Applicant Intervenors restate their responses above to these paragraphs.

97.     Paragraph 97 of the Complaint states a legal conclusion to which no response is required. The referenced ESA provision speaks for itself. Applicant Intervenors deny any portion of the summary of that provision that is incomplete or inaccurate.

98-99.  The allegations of paragraphs 98 and 99 of the Complaint are denied.

100.    Paragraph 100 of the Complaint states a legal conclusion to which no response is required. It purports to summarize statutes, regulations, and agency decisions which speaks for

themselves. Applicant Intervenors deny any portion of the summary which is incomplete or inaccurate.

101.    The allegations of paragraph 101 of the Complaint are denied.

102.    Paragraph 102 of the Complaint states a legal conclusion to which no response is required. It purports to summarize the FWS DPS Policy, which speaks for itself. Applicant Intervenors deny any portion of the summary that is incomplete or inaccurate.

103.    The allegations of paragraph 103 of the Complaint are denied, except that it is admitted that the FWS did designate the Western Great Lakes DPS and delist it.

104-105.    The allegations of paragraphs 104 and 105 of the Complaint are denied.

106.    Paragraph 106 of the Complaint states a legal conclusion to which no response is required and purports to summarize statutes and regulations which speak for themselves Applicant Intervenors deny any portion of the summaries that are incomplete or inaccurate.

107-110.    The allegations of paragraph 107, 108, 109 and 110 of the Complaint are denied.

111.    Applicant Intervenors deny that Plaintiffs are entitled to any of the relief requested in their Complaint.

112.    Applicant Intervenors deny any allegations in the Complaint not specifically admitted above.

## **AFFIRMATIVE DEFENSES**

1.    The Complaint fails to state a claim upon which relief may be granted.

2.    The Complaint fails to establish Plaintiffs' standing to sue.

WHEREFORE, Applicant Intervenors respectfully request that this lawsuit be dismissed with prejudice, and that the Court award them such other and further relief as just and reasonable.

DATED:  April 20, 2007

                              Respectfully submitted,

                              U.S. Sportsmen's Alliance Foundation
                              Wisconsin Bear Hunters Association
                              Scott Meyer and
                              Robert Stafsholt

                              *By their attorneys*

                              /s/ William P. Horn
                              William P. Horn (D.C. Bar No. 375666)
                              James H. Lister (D.C. Bar No. 447878)
                              Birch, Horton, Bittner & Cherot
                              1155 Connecticut Avenue, N.W., Suite 1200
                              Washington, DC  20036
                              Telephone: (202) 659-5800
                              Facsimile: (202) 659-1027
                              whorn@dc.bhb.com, jlister@dc.bhb.com

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this, the 20th day of April, 2007, the foregoing document was

mailed by first class mail to:

Rebecca G. Judd, Esq.
The Humane Society of the United States
2100 L Street, N.W.
Washington, D.C.  20037
Counsel for Plaintiffs

Brian B. O'Neill, Esq.
Sanne H. Knudsen, Esq.
Michael C. Soules, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Counsel for Plaintiffs

Dirk Kempthorne, Secretary of the Interior[*]
Department of the Interior
1849 C Street, N.W.
Washington, D.C.  20240

United States Department of Interior[*]
1849 C Street N.W.
Washington, D.C.  20240

United States Fish and Wildlife Service[*]
1849 C Street, N.W.
Washington, D.C.  20240

/s/ James H. Lister
William P. Horn (D.C. Bar No. 375666)
James H. Lister (D.C. Bar No. 447878)
Birch, Horton, Bittner & Cherot
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036

G:\101002\42\BAW1267.DOC

---

[*] No attorney has entered an appearance for the Federal Defendants to date.