**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES *et al*. | ) ) ) |  |
| Plaintiffs | ) ) | 1:07-cv-00677(PLF) |
| v. | ) ) |  |
| DIRK KEMPTHORNE, Secretary of the Interior, *et al*. | ) ) ) |  |
| Defendant | ) ) |  |
| and | ) ) |  |
| SAFARI CLUB INTERNATIONAL 4800 West Gates Pass Road Tucson, Arizona 85745 | ) ) ) ) |  |
| and | ) ) |  |
| SAFARI CLUB INTERNATIONAL FOUNDATION 4800 West Gates Pass Road Tucson, Arizona  85745 | ) ) ) ) ) |  |
| and | ) ) |  |
| NATIONAL RIFLE ASSOCIATION 11250 Waples Mill Rd. Fairfax, VA 22030 | ) ) ) ) ) ) ) |  |
| Defendant-Intervenor Applicants | ) |  |

**MOTION OF SAFARI CLUB INTERNATIONAL,  SAFARI CLUB
INTERNATIONAL FOUNDATION AND NATIONAL RIFLE ASSOCIATION TO
INTERVENE AS DEFENDANTS AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

## MOTION

Safari Club International ("SCI"), Safari Club International Foundation ("SCIF") and the National Rifle Association ("NRA") (collectively "SCI *et al*."), by and through counsel, move pursuant to Federal Rule of Civil Procedure 24 to intervene as a defendant in this action.  In this lawsuit, Plaintiffs, the Humane Society of the United States *et al.,* are attempting to invalidate a Final Rule issued by the U.S. Fish and Wildlife Service ("FWS" or "Service") on February 8, 2007 that removed the gray wolves of the Western Great Lakes Distinct Population Segment ("WGL DPS") from the endangered species list.  SCI members and NRA members, while pursuing recreational activities, interact, sometimes negatively, with wolves in Michigan, Minnesota and Wisconsin.  If the Plaintiffs are successful in invalidating the delisting, the states will be deprived of their authority to manage their wolf populations consistent with established wildlife management principles.  If that occurs, Michigan, Minnesota and Wisconsin will lose their ability to control problem wolves and maintain healthy ungulate populations upon which the wolves prey.  As a consequence, SCI and NRA members' negative encounters with wolves will increase, their enjoyment of hunting will diminish, their success at finding and taking game will decrease, their safety and the safety of their hunting dogs will suffer and their efforts at conserving their wildlife populations (including both game and gray wolves) will be harmed.  In short, Plaintiffs' success in this litigation would severely impair SCI and NRA members' interests as well as the interests of SCI *et al*. SCI *et al*. therefore seek to intervene as Defendants to protect these interests.

2

Pursuant to L.Cv.R. 7.1(m), counsel for SCI *et al*. has contacted counsel for both Plaintiffs and Defendants with respect to their position on this Motion.  Plaintiffs' counsel has informed Counsel for SCI *et al*. that Plaintiffs are unable to take a position at this time but reserve the right to object after having an opportunity to review the documents supporting the motion.    Defendants' counsel has informed Counsel for SCI *et al*. that Defendants take no position on the motion to intervene.

### POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE

### <u>INTRODUCTION</u>

The gray wolf population of the Western Great Lakes is healthy, increasing its range and is actively encroaching upon areas traditionally used by the residents of Michigan, Minnesota, and Wisconsin.  This wolf population long ago exceeded recovery goals and reached the point where designation as an "endangered species" was neither necessary nor appropriate under the standards of the Endangered Species Act ("ESA"). 16 U.S.C. § 1531 *et seq*.  Wolves are now frequenting areas in Michigan, Minnesota and Wisconsin that are regularly hunted by members of SCI and the NRA and other members of the hunting community.  Gray wolves are becoming less and less fearful of humans and are actively competing with human hunters for prey, particularly ungulate species.  In the woods while hunting, hunters often discover that they have transformed from predator to prey when they find themselves being stalked by wolves.  Hunters who have successfully pursued game animals discover the carcasses of their take being devoured by wolves in the field.  Problem wolves are particularly troublesome, because they prey on

livestock, but also because they savagely attack pets, including prized and beloved hunting dogs.

As the size and range of the wolf population grow, so does the frustration of those who live and hunt in areas where wolves frequent and whose livestock, pets, and hunting prey are attacked and diminished by this recovered predator species. A delicate balance exists between the humans and wolves that share these areas in the Western Great Lakes that relies on a human tolerance for wolves. That tolerance is dependent on the knowledge that, through delisting, state fish and game agencies have finally acquired and will use their ability to manage their states' wolf population to prevent overpopulation, detrimental impact to the states' game populations, damaging predation on livestock and pets, and safety hazards to humans.

Plaintiffs seek declaratory and injunctive relief to challenge the FWS's designation and delisting of the wolves of the WGL DPS. Plaintiffs want the Court to "second guess" the FWS about the recovery status of this population of wolves. Plaintiffs view the ESA as a tool for listing species and not one for delisting recovered species. They would prefer to see gray wolves remain on the endangered species list in perpetuity. The relief that Plaintiffs seek in this litigation would harm sound wildlife management practices as well as SCI *et al*. and SCI and NRA members, by interfering with SCI and NRA members' ability to enjoy safe and productive recreational opportunities in Michigan, Minnesota and Wisconsin. To defend against this threat, SCI

*et al.* seek to intervene in this action as defendants in support of Defendants Dirk

Kempthorne *et al.* ("Defendants").[1]

## STATEMENT OF FACTS

In 1974, the FWS listed gray wolves as "endangered" throughout most of the

conterminous U.S.  As a result of recovery efforts by the FWS and the states of

Wisconsin, Michigan and Minnesota, the wolf populations of the western Great Lakes

area increased dramatically in size and range.  On March 27, 2006, the FWS issued a

proposed rule to establish the WGL DPS of gray wolves and to remove that Distinct

Population Segment from the endangered species list.  71 Fed. Reg. 15266 (March 27

2006).  The proposed WGL DPS included all of Minnesota, Wisconsin, and Michigan;

the eastern half of North Dakota and South Dakota; the northern half of Iowa; the

northern portions of Illinois; and the northwestern portion of Ohio.  *Id.*  On February 8,

2007, after soliciting, receiving and reviewing 360 public comments on the Proposed

Rule (including the comments submitted by Safari Club International and Safari Club

International Foundation) and subjecting the proposed rule to Peer Review, the FWS

issued a Final Rule, delisting the wolves of the WGL DPS.  72 Fed. Reg. 6052 and 6063

(February 8, 2007) ("Final Rule").  The Final Rule went into effect on March 12, 2007.

By removing the wolves of the WGL DPS from the endangered species list, the FWS

restored to the individual states within the DPS management authority over gray wolves

within their respective states.

---

[1] SCI submits a Proposed Answer to Plaintiffs' Complaint for Declaratory and Injunctive Relief as Exhibit "A" to this Motion.

Plaintiffs, Humane Society of the United States ("HSUS"), Help Our Wolves Live ("HOWL") and the Animal Protection Institute  ("API"), (collectively, "HSUS *et al*.,") filed suit to challenge the Final Rule, and have asked this Court to declare that the FWS has violated the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A), and the ESA.   Plaintiffs also seek an injunction to prevent the implementation of the Final Rule and ask this Court to remand the rule to the FWS.    HSUS *et al.*'s request for relief, if granted, will inhibit, if not prevent, necessary wolf population management, will result in increasing harm to the ungulate populations upon which the wolves prey, and will precipitate dangerous and harmful interactions between wolves and members of the hunting community.  In addition, as the human population within the DPS becomes more and more frustrated with their state wildlife management authorities' inability to deal with problem wolves and with overpopulations of wolves, the incentive to support wolf conservation will diminish, ultimately resulting in harm to the WGL DPS wolf population.

### Proposed Intervenors Safari Club International and Safari Club International Foundation

SCI and the individual members of SCI, have strong interests in enhancing the survival of wolves in a manner that promotes proper wildlife management of this predator species.  SCI members hunt in the states included in the WGL DPS, frequently encounter wolves, and enjoy and appreciate the FWS and Michigan, Minnesota and Wisconsin's success with gray wolf recovery.  SCI members' encounters with wolves demonstrate the need for wolf population management and proper control of problem wolves.  As evidenced by the attached Declarations of SCI members, SCI members have

witnessed wolves on their properties, in close proximity to themselves, their families, friends and pets.  SCI members have also competed with wolves during hunting expeditions and some have lost prey to aggressive wolves.  SCI members have lost family pets and have witnessed the carnage of a wolf attack on these highly valued animals.   SCI members have strong, long-term interests in wolf recovery and management as well as in the outcome of this lawsuit, and have an interest in Michigan, Minnesota and Wisconsin's continued ability to retain management authority over their own wolf populations as well as their ability to continue to control problem wolves.[2]  SCI seeks to protect Michigan, Minnesota and Wisconsin's legal authority to manage their states' growing wolf populations; to allow for wolf population control, including by wolf harvest seasons when such management efforts become necessary and appropriate; to target problem wolves; and to enhance the long-term survival of a species that must share Michigan, Minnesota and Wisconsin with their human residents.

SCI is a nonprofit corporation incorporated in the State of Arizona, operating under § 501(c)(4) of the Internal Revenue Code, with principal offices and place of business in Tucson, Arizona.  SCI's Governmental Affairs Office is located in Washington, D.C.  Its membership includes approximately 53,000 individuals from the United States and many of the countries around the world.  Its missions are the conservation of wildlife, protection of the hunter, and education of the public concerning hunting and its use as a conservation tool.

---

[2] Attached to this Motion and Memorandum are supporting declarations of SCI members, Clinton Olaf Deraas of Duluth Minnesota (Exhibit "B"); Scott Talbot of Elk River, Minnesota (Exhibit "C"); John D. Smythe of Park Rapids, Minnesota (Exhibit "D"); Lawrence Guy Godwin of Menominee, Michigan (Exhibit "E"); Patti L. Delano of Cold Spring, Minnesota (Exhibit "F"); and Stephen C. Delano of Cold Spring, Minnesota (Exhibit "G").

SCI carries out its conservation mission through its sister organization, Safari Club International Foundation.  SCIF is a non-profit corporation, incorporated in the State of Nevada, operating under § 501(c)(3) of the Internal Revenue Code, with principal offices and place of business in Tucson, Arizona.    Its missions are conservation of wildlife, education of the public concerning hunting and its use as a conservation tool, and humanitarian services.  The conservation mission of SCIF is: (a) to support the conservation of the various species and populations of game animals and other wildlife and the habitats on which they depend, and (b) to demonstrate the importance of hunting as a conservation and management tool in the development, funding and operation of wildlife conservation programs.[3]  SCIF's Conservation Office is located in Washington, D.C.

The conservation mission of SCIF is carried out by the SCIF professional staff in the SCIF Department of Wildlife Conservation under the guidance of the SCIF Conservation Committee.  These activities include scientific research, enhancement of science-based wildlife management capacity range states, and the compilation and dissemination of data.  A significant percentage of SCI and SCIF's annual revenues, including a portion of the dues and fees paid by each member, goes to support SCIF's conservation efforts around the world.  For the year 2007, for example, SCI has allocated $1.3 million of its annual budget for conservation projects and expenses.   In addition, each individual chapter of SCI provides its own funding for conservation efforts locally and across the globe.

---

[3] The supporting Declaration of Safari Club International Vice President and Legal Task Force Chairman Kevin Anderson is attached as Exhibit "H."

On staff in SCIF's Washington, D.C. Conservation Department Office is a professional wildlife biologist working with state wildlife management agencies and professional conservation organizations.  He designs, coordinates, supervises and monitors SCIF's conservation efforts in the United States and around the world.  In addition, SCIF contracts with independent authorities in a variety of biological and related areas to provide SCIF with cutting-edge data and analysis in the fields of conservation and wildlife management.  SCI and SCIF's conservation efforts focus on the concept of "sustainable use" of wildlife.  "Sustainable use" recognizes that the utilization of wildlife often produces benefits that provide incentives for conservation.  SCIF's biologists have established that conservation does not require non-use of wildlife.  More importantly, these experts have shown that non-use can actually be counter-productive to conservation efforts.  Well-managed hunting has been a valuable tool in conservation and protection of many game species and associated habitats and biodiversity.  The concept of sustainable use has been endorsed and adopted as a key principal of conservation by the International Union for the Conservation of Nature and Natural Resources**,** the oldest and largest conservation organization in the world, at its 2nd World Conservation Congress.  Sustainable use is also one of the three primary principles of the Convention on Biological Diversity, commonly referred to as the Biodiversity Treaty, one of two major treaties opened for signature at the United Nations Conference on Environment and Development in 1992.

SCI and SCIF have, for a long time, aggressively supported the FWS's attempts to recognize the recovery of the gray wolves of the WGL DPS as well as the Service's efforts to restore to the states management authority over the wolves within their states.

SCI and SCIF have already twice been granted intervenor status in cases involving gray wolf classification, conservation and management. For example, in 2003, SCI and SCIF successfully intervened as of right in a suit, filed in the U.S. District Court for the District of Oregon, in which animal rights and environmental groups challenged the FWS's attempt to reclassify wolves from "endangered" to "threatened" status. *Defenders of Wildlife v. Norton,* 3:2003-cv-01348-JO.[4] SCI and SCIF also successfully intervened as of right in the case of *HSUS v. Kempthorne*, brought in the U.S. District Court for the District of Columbia to challenge the permit authority given by the FWS to the state of Wisconsin that allowed state wildlife management officials to use lethal controls to enhance the survival of the state's (then) "endangered" wolf population. *HSUS v. Kempthorne*, 1:06-cv-01279(CKK). That matter is currently on appeal to the Court of Appeals for the District of Columbia Circuit.

### Proposed Intervenor National Rifle Association of America (NRA)

NRA and the individual members of NRA, have a strong interest in enhancing the survival of wolves in a manner that promotes proper wildlife management of this predator species. NRA members hunt in the states included in the WGL DPS, frequently encounter wolves, and enjoy and appreciate the FWS and Michigan, Minnesota and Wisconsin's success with gray wolf recovery. NRA members' encounters with wolves demonstrate the need for wolf population management and proper control of problem wolves. As evidenced by the attached Declarations of NRA members, NRA members have witnessed wolves on their properties, in close proximity to their families and pets.

---

[4] SCI and SCIF also successfully participated as an amicus in a case brought in Vermont federal district court to challenge the reclassification of gray wolves. *National Wildlife Federation v. Norton*, 1:03-cv-00340(JGM).

NRA members have also competed with wolves during hunting expeditions and some have lost prey to aggressive wolves.  NRA members have lost family pets and have witnessed the carnage of wolf attacks on these highly valued animals.  NRA members have strong, long-term interests in wolf recovery and management as well as in the outcome of this lawsuit, and have an interest in Michigan, Minnesota and Wisconsin's continued ability to retain management authority over their own wolf populations as well as their ability to continue to control problem wolves.  NRA seeks to protect Michigan, Minnesota and Wisconsin's legal authority to manage their states' growing wolf populations, to allow for wolf population control, including by wolf harvest seasons when such management efforts become necessary and appropriate, to target problem wolves, and to enhance the long-term survival of a species that must share Michigan, Minnesota and Wisconsin with their human residents.[5]

NRA is a nonprofit corporation incorporated in the State of New York in 1871, operating under § 501(c)(4) of the Internal Revenue Code, with principal offices and place of business in Fairfax, Virginia.  NRA's Federal Affairs Office is located in Washington, D.C.  Its membership includes approximately 4,000,000 individuals from the United States and many of the countries around the world.  Among its purposes and objectives are, "[t]o promote hunter safety, and to promote and defend hunting as a shooting sport and as a viable and necessary method of fostering the propagation, growth

---

[5] The supportive declarations of NRA members Clinton Olaf Deraas of Duluth Minnesota (Exhibit "B") and Lawrence Guy Godwin of Menominee, Michigan (Exhibit "E") are attached.

and conservation, and wise use of our renewable wildlife resources." (NRA Bylaws Article II Section 5.) [6]

The NRA has a Director of Conservation, Wildlife and Natural Resources working from its headquarters in Fairfax, Virginia whose primarily responsibility is to promote the interests of the hunting community in wildlife management, healthy habitat, and sustainable populations to ensure that these wildlife populations continue to be available to be enjoyed by NRA members and to protect and sustain hunters legacy as the primary supporters of wildlife conservation throughout the United States.

## RELEVANT LAW

The ESA was enacted in 1973 for the purpose of conserving threatened and endangered species and their ecosystems.  16 U.S.C. § 1531(b).  Through the ESA, Congress gave the Secretary of the Interior the authority to achieve the ESA's conservation goals through the listing and reclassification and delisting of plant and animal species.  16 U.S.C. § 1533.  The Secretary has delegated these responsibilities to the U.S. Fish and Wildlife Service ("FWS").  The ESA was never designed exclusively to be a tool to permanently list and protect species.  It was equally designed to recognize species recovery and to facilitate the removal of recovered species from the endangered and threatened species lists.  16 U.S.C. § 1533(a)(2)(C); (b)(3)(A); (b)(3)(B)(iii)(II); (c)(2)(B)(i).

According to the ESA, an "endangered species" is "any species which is in danger of extinction through all or a significant portion of its range."  16 U.S.C. § 1532(6).  The ESA authorizes the FWS to remove a species from the "endangered species" list when

---

[6] The supportive Declaration of Chris W. Cox, Executive Director for the National Rifle Association of America's Institute for Legislative Action is attached as Exhibit "I".

that species has recovered to the point that it is no longer in danger of extinction throughout all of a significant portion of its range. 16 U.S.C. §§ 1532 (20), 1533(b)(1)(A), 1533(c)(2); 50 C.F.R. § 424.11(d). The statute defines species as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(20). Neither the phrase "significant portion of its range" or "distinct population segment" is defined in the law. Congress left it to the FWS to define and apply both of these concepts.

The Act directs the FWS to consider five factors when making listing, reclassification and delisting decisions:

> (A) the present or threatened destruction, modification, or curtailment of its habitat or range;
> (B) overutilization for commercial, recreational, scientific, or educational purposes;
> (C) disease or predation;
> (D) the inadequacy of existing regulatory mechanisms; or
> (E) other natural or manmade factors affecting its continued existence

16 U.S.C. § 1533(a)(1). The FWS has reviewed the best scientific and commercial data available and has determined that, based on an evaluation of these factors, the gray wolf of the WGL DPS no longer requires classification as either an "endangered" or "threatened" species.

## STATUS OF THE LITIGATION

Plaintiffs filed their Complaint on April 16, 2007. Defendants have not yet filed an Answer or any other form of response to Plaintiffs' Complaint. One additional application for intervention was filed by the Bear Hunters' Group on April 20, 2007. None of the parties to this action have yet responded to that Motion to Intervene.

To SCI *et al.*'s knowledge, there have been no other substantive pleadings or motions filed between the date of the filing of Plaintiffs' Complaint and the filing of this Motion to Intervene.

## ARGUMENT

### A.    SCI *et al.*  is Entitled to Intervene As of Right Under Federal Rule 24(a)(2).

SCI *et al.*, whose interests (including the interests of SCI and NRA members) will be injured by the relief that Plaintiffs seek and, as parties who are not adequately represented by the existing parties in this case, are entitled to intervene as of right in this litigation.  Federal Rule of Civil Procedure 24(a)(2), which governs intervention as of right, states in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The D.C. Circuit has determined that intervention as of right depends upon the applicants' ability to satisfy five prerequisites:  (1) the timeliness of the motion; (2) a showing of "adequate interest";  (3) a possible impairment of that interest;  (4) a lack of adequate representation by the existing parties to the action; and 5) standing to sue.  *Fund for Animals v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  SCI *et al.* satisfies each of these five prerequisites.

### 1.    This Motion is Timely

SCI *et al.* has promptly moved to intervene in this litigation. This litigation is less than two weeks old and is still in the earliest stages of development.  Defendants have not

14

yet responded to Plaintiffs' Complaint. SCI *et al.* has acted promptly to assert the

interests of individuals and organizations that will be significantly impacted by the

outcome of this litigation. No prejudice will come to any party from the granting of this

motion at this stage of the litigation. *See NAACP v. New York*, 413 U.S. 345, 366, 93

S.Ct. 2591 (1973). Consequently, this Motion to Intervene meets the timeliness

prerequisite.

### 2.    SCI *et al.*'s Substantial Legal Interest

SCI *et al.* has substantial legal interests in the subject matter of this suit. These

interests include the ability to enjoy recreational activities in Michigan, Minnesota and

Wisconsin; access to ungulate population that are at risk to predation by increasing

populations of gray wolves; safety for hunters, their families, friends and pets; and proper

wolf management and control by state wildlife agencies to maintain the human/wolf

balance necessary for continued wolf conservation.

SCI, SCIF and the NRA are all organizations that promote the principle and

practice of sustainable use conservation. A component of SCI *et al.*'s support for

sustainable use conservation of wolves is the ability of states to manage their own wolf

populations, including for the future possibility of wolf seasons, when and if the states

deem such activities appropriate and/or necessary for wolf management and

conservation. In many circumstances, a species' survival depends upon the managing

authority's ability to control that species' population, habitat use, predation and other

behaviors. Moreover, that species' survival depends upon the nature of its interaction

with humans and humans' ability to tolerate and peacefully co-exist with that wildlife. In

the circumstances at issue in this case, wolf numbers in Michigan, Minnesota and

Wisconsin have grown and wolves have significantly increased their range. Wolves are freely encroaching in areas of human development and use, and many have become relatively fearless to the point where they are stalking humans, competing with human hunters for prey, and are violently attacking game species, livestock and pets, even while humans are within plain view. State management of wolves is absolutely essential to maintain the important balance between wolf conservation and human tolerance of wolves.

The Declarations of SCI and NRA members Clinton Olaf Deraas, Scott Talbot, John D. Smythe, Lawrence Guy Godwin, Patti L. Delano and Stephen C. Delano, attached to this motion as Exhibits "B," "C," "D," "E," "F," and "G" respectively demonstrate the dangerous and disturbing encounters SCI and NRA members have had with wolves in the states of the WGL DPS as well as the losses that SCI and NRA members have suffered from wolves' predatory behavior.

For intervention as of right, a party must assert an interest in the subject matter of the suit. *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981). The interest need not be a direct one in the property or transaction at issue, provided that it is an interest that would be impaired by the outcome of the litigation. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135-36 (1967). The D.C. Circuit has defined the interest test as one of efficiency rather than one of exclusivity. In the case of *Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967), the Circuit court explained that '[t]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." 385 F.2d at 700.

SCI *et al*. possesses the requisite interest in issues in this litigation. As

16

conservationists, SCI *et al*. and SCI and NRA members seek a solution that will enable Michigan, Minnesota and Wisconsin to continue to conserve their wolf populations while they manage and control wolf predation on game, livestock and pets, and while they prevent unsafe interactions between wolves and humans.  SCI and NRA members are also among those Michigan, Minnesota, and Wisconsin residents who seek to enjoy outdoor activities free from the dangerous and damaging predatory behavior of wolves. Consequently, SCI *et al.* should be permitted to intervene to protect these interests.

### 3.    Plaintiffs' Proposed Relief Will Impair These Legal Interests

If Plaintiffs succeed in this litigation, the states of Michigan, Minnesota and Wisconsin will lose their management authority over wolves and will consequently lose their ability to control problem wolves, to limit, where necessary, wolf predation on game species, to authorize the take of wolves where necessary and generally to reduce the number of wolf predation incidents.  As a consequence, SCI and NRA members will experience increasing numbers of unwanted, unsafe and unpleasant wolf encounters, their future planned hunting opportunities in areas inhabited by wolves will diminish in success and enjoyment, their safety and the safety of their families, friends and pets will suffer.  In turn, interest in wolf conservation will diminish as the residents of these states lose confidence in their statement wildlife agencies' ability to manage and control wolf interactions and problems.  Consequently, interest in wolf conservation will decrease and wolves as well as humans will suffer the cost.

If Plaintiffs prevail and wolves are returned to the endangered species list, SCI *et al.*'s interests in sustainable use wolf conservation and SCI and NRA members' interests in safe, productive and enjoyable outdoor recreational opportunities will be jeopardized if

not lost.  SCI *et al.* should have the right to defend against this litigation threat.

### 4.    The Parties to this Action Offer Inadequate Representation

Although the federal government intends to defend against Plaintiffs' challenges, they are nonetheless unable to adequately protect SCI *et al.*'s interests and do not share those exact interests.[7]  The Federal government does not enjoy recreational activities in Michigan, Minnesota or Wisconsin or engage in any activities that brings it into direct conflict with the wolves.  The Federal government does not have its hunted prey and/or pets killed or taken by wolves in these states.  In short, the Federal government does not share the same interests as SCI *et al.* and the members of SCI and NRA.

Defendants, by necessity, come to this litigation with ambivalent if not conflicting motivations.  The FWS's purposes are divided because the agency bears an obligation to represent the interests of all those who enjoy and seek to conserve wolves, including individuals who do not support sustainable use conservation and those who do not believe that wolves should ever be removed from the "endangered" species list.

To satisfy the "inadequate representation" standard for intervention as of right, an intervenor-applicant need only show that the existing representation "may be" inadequate, and the showing required is "minimal."  *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).  Moreover, even where the potential intervenor's interest in the issuance or administration of a specific regulation may coincide with that of a defendant regulatory agency, that interest, by itself, does not necessarily mean that "adequacy of representation is ensured for purposes of rule 24(A)(2)." *Natural Resources Defense Council v. Castle*, 561 F.2d 904, 912 (D.C.

---

[7] Plaintiffs, of course, cannot and will not represent SCI *et al.*'s interests.

Cir. 1977). "[M]erely because parties share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified." *American Horse Protection v. Veneman*, 200 F.R.D. 153, 158 (D.D.C. 2001). Similarly, in *Fund for Animals v. Norton*, 322 F.3d 728, 737 (D.C. 2003), the Court of Appeals for the District of Columbia Circuit found that the FWS could not adequately represent the "more narrow and parochial" interests of the country of Mongolia in litigation challenging the FWS' listing and importation obligations with respect to foreign species of argali sheep, even though both entities involved in the litigation were involved in efforts to conserve the sheep species and were attempting to defend the legality of the same ESA regulation. "[E]ven 'a shared general agreement ... does not necessarily ensure agreement in all particular respects,' … and '[t]he tactical similarity of the present legal contentions of the [parties] does not assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf.'" *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967).

The FWS may be concerned about defending its decision to delist the wolves of the WGL DPS, but SCI *et al*. have a broader interest in both defending sustainable use methods generally as a means of enhancing the survival of "endangered" species and in enjoying recreational and personal activities with which the problem wolves interfere. Consequently, SCI *et al.*'s focus may be much narrower and yet much deeper than that of the FWS. The D.C. Court of Appeals has acknowledged the potential benefits offered by an intervenor whose depth of interest can enhance the defense provided by a more broadly concerned governmental entity. *See Natural Resources Defense Council v. Costle,* 561 F.2d 904, 912 (D.C. Cir. 1977) (intervenor "likely to serve as a vigorous and

helpful supplement to [agency's] defense.").

Where, as here, a federal agency is obligated to represent the interests of different groups with competing motivations, the agency cannot adequately represent the interests of all of these groups at the same time. *Trbovich*, 92 S.Ct. at 636. Consequently, while SCI *et al.* may share some common interests with defendants, the obligations of the FWS to a larger constituency make it impossible for defendants to provide representation that will protect the unique and sometimes contrary interests of SCI *et al.* and the members of SCI and NRA.

### Distinctiveness From Other Intervenor-Applicants

SCI *et al.* is aware that it is not the only intervenor-applicant group that seeks to intervene in this litigation on behalf of members of the hunting community. However, there are marked differences between SCI *et al.* and the intervenor-applicant group representing U.S. Sportsmen's Alliance and the Wisconsin Bear Hunters Association ("Bear Hunter Group").

At the outset, as discussed earlier in this motion, SCI and SCIF have, during the last four years, participated as Defendant-Intervenors in two different lawsuits concerning the listing status, conservation and management of the gray wolves of the WGL DPS. SCI and SCIF have, as a result, acquired a great deal of knowledge and experience about the status and management of wolves as well as the FWS's efforts to recover and return these wolves to state management.

Another distinction lies with the scope of SCI *et al.*'s representation of the hunting community. The Bear Hunter Group intervenor applicants appear to represent the interests of a legitimate, yet small faction of the hunters impacted by the delisting of

wolves and the outcome of this litigation.  As stated in their Motion to Intervene, the Bear Hunter Group represents bear hunters and more specifically those who hunt with dogs and who are concerned about wolf predation on hunting dogs.  In addition, the Bear Hunter Group has provided the court with the declarations of hunters exclusively from Wisconsin, only one of the states dramatically impacted by the delisting and potentially affected by the outcome of this litigation.

In contrast, SCI *et al*. represent a larger and broader community of hunters, including individuals who live and/or hunt throughout the Western Great Lakes area. The declarations provided by SCI *et al*. in support of this Motion to Intervene, also represent the positions and interests of hunters from Minnesota and Michigan.

In addition, while the Bear Hunter Group asserts the interests of hunters who seek to protect their hunting dogs, SCI *et al*. seek to participate on behalf of both hunters who utilize dogs and those who do not.  SCI *et al*.'s interests go beyond the protection of hunting dogs and extend to those who seek to retain and protect their own recreational opportunities, the conservation of the ungulate species upon which wolves prey, and the safety of themselves, families and friends.

### 5.  Standing to Intervene

SCI *et al. et al.* have satisfied any standing requirement.  After questioning the need for defendant-intervenors to show standing at all, the D.C. Circuit has held that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran,* 333 F.3d 228, 233 (D.C. Cir. 2003).  Thus, for the same reasons that SCI *et al*. is entitled to intervene as of right under Rule 24(a), SCI *et al.* also satisfies all of the criteria for standing necessary to intervene as a defendant in this

action. SCI *et al*. has an interest in the sustainable use conservation of wolves and in

Michigan, Minnesota and Wisconsin's authority, efforts and success at managing

recovered wolves on a long-term basis. These efforts protect game species health and

numbers; the safety of hunters, their families, friends and pets; and the success and

enjoyment of recreational opportunities in these states. The conservation and recreational

interests enjoyed by SCI *et al.* have long been accepted as a basis for Constitutional

standing. *National Wildlife Federal v. Hodel*, 829 F.2d 694, 704 (D.C. Cir. 1983); *Fund

for Animals v. Norton,* 295 F. Supp. 2d 1, 2 (D.D.C. 2003) (noting that the court had

earlier in the case allowed intervention of SCI and SCIF and other hunting organizations

in lawsuit concerning game animals); *Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113,

1119 (9th Cir. 2005) ("The 'injury in fact' requirement in environmental cases is satisfied

if an individual adequately shows that she has an aesthetic or recreational interest in a

particular place, or animal, or plant species and that that interest is impaired by a

defendant's conduct.") (citation omitted).

　　　　The threat to SCI *et al*.'s interests will be redressed (prevented) if Plaintiffs'

efforts fail. If Plaintiffs are unsuccessful in this litigation, the states of Michigan,

Minnesota and Wisconsin will retain their management authority over wolves, and will

be able to continue to practice sustainable use methods to manage this predator species in

a way that can maintain a balance between wolves and humans that will ultimately

benefit all.

　　　　Finally, standing for associations attempting to intervene on behalf of their

members exists when 1) the members would otherwise have standing to sue in their own

right; 2) the interests that the associations seek to protect are germane to the

organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of the individual members. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 341, 97 S. Ct. 2434, 53 L.Ed.2d 383 (1977). SCI *et al*. meets these requirements because 1) SCI and NRA members have definite plans to hunt and otherwise seek to enjoy Michigan, Minnesota and Wisconsin's outdoor opportunities in areas where wolves are present and threaten to interfere with these opportunities; 2) the right to hunt, enjoy outdoor recreational opportunities to practice sustainable use conservation of predator species is germane to SCI, SCIF and NRA's missions; and 3) the relief requested by Plaintiffs does not require the direct participation of SCI or NRA's individual members.

B.    **Alternatively, SCI Should be Permitted to Intervene Permissively Under Rule 24(b)(2)**

Should this Court choose not to grant SCI *et al*. leave to intervene as of right, SCI *et al*. alternatively seek permissive intervention under Fed. R. Civ. P. 24(b), which states:

> Upon timely application anyone may be permitted to intervene in an action; . . . (2) when an applicant's claim or defense in the main action have a question of law or fact in common . . .. In exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

This burden for permissive intervention is substantially less than the test for intervention as of right under Rule 24(a)(2).[8]

SCI *et al.* should be entitled to permissive intervention because the defenses that SCI *et al.* raises, such as the FWS's authority under the ESA to designate DPSs and delist recovered species, share an obvious factual and legal basis with Plaintiffs' claims. SCI's

---

[8] Permissive intervention is not a substitute for intervention as of right. If the party qualifies for intervention under Rule 24(a), the Court must grant that status. Fed. R. Civ. P. 24(a).

defense relies, in part, on the premise that the gray wolves of the WGL DPS long ago reached the point at which they failed to qualify as an "endangered" or "threatened" species and that Congress tasked the FWS with the responsibility to delist species at the point at which the species recovered from "endangered" status. Consequently, Plaintiffs' challenges to the FWS's decision to delist and SCI *et al.*'s contentions that gray wolves required delisting share questions of law and fact.

SCI *et al.*'s permissive intervention at this stage of the litigation will do nothing to prejudice or cause delay to any party. As this case is still in its very earliest stages of preparation —Defendants have not yet even filed their response to Plaintiffs' Complaint -- SCI *et al.*'s intervention will not cause delay, much less undue delay, to any party.

The severity of the consequences to wolf survival and to the ability of Michigan, Minnesota and Wisconsin's residents, including SCI and NRA members, to peacefully co-exist with the state's wolf population and to enjoy safe and productive recreational opportunities in the three states justifies the participation of SCI *et al.* in this action. If intervention as of right is not granted, permissive intervention should be allowed.

## CONCLUSION

SCI *et al.* satisfies the requirements for intervention as of right and permissively. This motion is timely and supports the substantial interests that SCI *et al.* and SCI and NRA members have in the gray wolf of the WGL DPS, in the authority of the FWS to delist a recovered species, and in the ability of SCI and NRA members to peacefully co-exist with wolves in Michigan, Minnesota and Wisconsin for the long-term. The Defendants in this action will defend their conduct, but do not share SCI *et al.*'s interest in recreational activities in Michigan, Minnesota and Wisconsin and Defendants must

defend this case in a way that will balance the competing interests of the diverse groups

who claim an interest in enhancing the survival of wolves.  Without SCI *et al.*'s

participation, the interests of non-governmental persons and entities who enjoy

recreational outdoor activities in Michigan, Minnesota and Wisconsin, with or without

the assistance of hunting dogs and who support wolves through necessary and valuable

sustainable use methods, will not adequately be protected.

WHEREFORE, SCI *et al*. respectfully request that this Court grant its Motion to

Intervene.

Respectfully Submitted,

Anna M. Seidman
(D.C. Bar No. 417091)
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
**aseidman@sci-dc.org**
Counsel for
Safari Club International
Safari Club International Foundation
and the National Rifle Association

/s/ Douglas S. Burdin_____
Douglas S. Burdin
(D.C. Bar No. 434107)
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
**dburdin@sci-dc.org**
Counsel for
Safari Club International
Safari Club International Foundation
and the National Rifle Association

25

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| HUMANE SOCIETY OF THE UNITED STATES | ) | |
| *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | 1:07-cv-00677(PLF) |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, | ) | |
| *et al.* | ) | |
| Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SAFARI CLUB INTERNATIONAL, *et al.* | ) | |
| | ) | |
| Defendant-Intervenor Applicants | ) | |

## <u>PROPOSED ORDER</u>

It is hereby ORDERED this _____ day of _____, that Safari Club International, Safari Club International Foundation and the National Rifle Association's Motion to Intervene is granted.  Safari Club International, Safari Club International Foundation and the National Rifle Association may intervene as of right and their Answer is deemed filed.

_____

U.S. District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| HUMANE SOCIETY OF THE UNITED STATES | ) | |
| *et al*. | ) | |
| | ) | |
| Plaintiffs | ) | 1:07-cv-00677(PLF) |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, | ) | |
| *et al*. | ) | |
| Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SAFARI CLUB INTERNATIONAL, *et al*. | ) | |
| | ) | |
| Defendant-Intervenor Applicants | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that the Motion of Safari Club International, Safari Club

International Foundation, and the National Rifle Association to Intervene and

Memorandum of Points and Authorities in Support Thereof, Proposed Order, Proposed

Answer on behalf of Safari Club International, Safari Club International Foundation and

the National Rifle Association and Rule 7.1 Certificate are being served, via first class

mail this 25th day of April 2007 to the following:

**Rebecca Gerber Judd**
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street, NW
Washington, DC 20037

(202) 676-2333
Email: rjudd@hsus.org

**Brian B. O'Neill**
**Michael C. Soules**
**Sanne H. Knudsen**
FAEGRE & BENSON, LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
Fax: (612) 766-1600
Email: boneill@faegre.com

**William P. Horn**
**James Lister**
BIRCH, HORTON, BITTNER AND CHEROT
1155 Connecticut Avenue, NW
Suite 1200
Washington, DC 20036
(202) 659-5800
Fax: (202) 659-1027
Email: whorn@dc.bhb.com

**Jimmy A. Rodriguez**
U.S. DEPARTMENT OF JUSTICE
P.O. Box 7369
Washington, DC 20044
(202) 305-0342
Fax: (202) 305-0275
Email: jimmy.rodriguez@usdoj.gov

Respectfully Submitted,

Anna M. Seidman
(D.C. Bar No. 417091)
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
**aseidman@sci-dc.org**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ) |  |
| ) |  |
| ) |  |
| ) |  |
| ) |  |
| HUMANE SOCIETY OF THE UNITED STATES ) |  |
| *et al*. ) |  |
| ) |  |
| Plaintiffs ) | 1:07-cv-00677(PLF) |
| ) |  |
| v. ) |  |
| ) |  |
| DIRK KEMPTHORNE, Secretary of the Interior, ) |  |
| *et al*. ) |  |
| Defendant ) |  |
| ) |  |
| and ) |  |
| ) |  |
| SAFARI CLUB INTERNATIONAL ) |  |
| 4800 West Gates Pass Road ) |  |
| Tucson, Arizona 85745 ) |  |
| ) |  |
| and ) |  |
| ) |  |
| SAFARI CLUB INTERNATIONAL ) |  |
| FOUNDATION ) |  |
| 4800 West Gates Pass Road ) |  |
| Tucson, Arizona  85745 ) |  |
| ) |  |
| and ) |  |
| ) |  |
| NATIONAL RIFLE ASSOCIATION ) |  |
| 11250 Waples Mill Rd. ) |  |
| Fairfax, VA 22030 ) |  |
| ) |  |
| ) |  |
| ) |  |
| ) |  |
| Defendant-Intervenor Applicants ) |  |

<u>**CERTIFICATE OF DISCLOSURE REQUIRED BY LCvR 7.1 OF SAFARI CLUB INTERNATIONAL, SAFARI CLUB INTERNATIONAL FOUNDATION AND THE NATIONAL RIFLE ASSOCIATION**</u>

I, the undersigned, counsel of record for Defendant-Intervenor Applicants, Safari Club International, Safari Club International Foundation and the National Rifle Association, certify that, to the best of my knowledge and belief, the above named Defendant-Intervenor Applicants have no parent companies, subsidiaries, or affiliates with any outstanding securities in the hands of the public.

This representation is being made in order that the judges of this court may determine the need for recusal.

Dated:  April 24, 2007

_____
Anna M. Seidman
(D.C. Bar No. 417091)
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
**aseidman@sci-dc.org**
Counsel for
Safari Club International and
Safari Club International Foundation


/s/_____
Douglas S. Burdin
(D.C. Bar No. 434107)
501 2nd Street N.E.
Washington, D. C.  20002

Telephone: (202)-543-8733
Facsimile: (202)-543-1205
**dburdin@sci-dc.org**
Counsel for
Safari Club International and
Safari Club International Foundation

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| HUMANE SOCIETY OF THE UNITED STATES | ) | |
| et al. | ) | |
| | ) | |
| Plaintiffs | ) | 1:06-cv-01279(CKK) |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, | ) | |
| et al. | ) | |
| Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SAFARI CLUB INTERNATIONAL, et al. | ) | |
| | ) | |
| Defendant-Intervenor Applicants | ) | |

**<u>PROPOSED ORDER</u>**

It is hereby ORDERED this _____ day of _____, that Safari Club International and Safari Club International Foundation's  Motion to Intervene is granted. Safari Club International and Safari Club International Foundation may intervene as of right and their Answer and Opposition to Plaintiffs' Motion for Preliminary Injunction are deemed filed.

_____
U.S. District Court Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| HUMANE SOCIETY OF THE UNITED STATES | ) | |
| et al. | ) | |
| | ) | |
| Plaintiffs | ) | 1:06-cv-01279(CKK) |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, | ) | |
| et al. | ) | |
| Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SAFARI CLUB INTERNATIONAL, et al. | ) | |
| | ) | |
| Defendant-Intervenor Applicants | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that the Motion of Safari Club International and Safari Club International Foundation to Intervene and Memorandum of Points and Authorities in Support Thereof, Proposed Order, Proposed Answer on behalf of Safari Club International, Safari Club International Foundation, Proposed Opposition to Plaintiffs' Motion for a Preliminary Injunction, Motion for Leave to Participate in the Determination of Plaintiffs' Motion for a Preliminary Injunction and Rule 7.1 Certificate are being served, via hand delivery to Chambers and via e-mail and hand delivery this 1st day of August 2006 to the following:

Patricia Lane,
plane@hsus.org
Jonathan R. Lovvorn
jlovvorn@hsus.org
The Humane Society of the United States
2100 L Street NW
Washington, D.C. 20037

Jimmy Rodriquez
**[ADDRESS AND E-MAIL]**

and by e-mail and regular mail to

Brian B. O'Neill
boneill@faegre.com
Richard A. Duncan
rduncan@faegre.com
Elizabeth H. Schmiesing
Eschmeising@faegre.com
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901

Anna M. Seidman
(D.C. Bar No. 417091)
501 2nd Street N.E.
Washington, D.C. 20002
Tel:  202-543-8733
Fax:  202-543-1205
aseidman@sci-dc.org
Counsel for
Safari Club International
Safari Club International Foundation

2

**Humane Society of the United States v. Kempthorne *et al.***

**1:07-cv-00677**

**Motion to Intervene and Memorandum in Support Thereof of Safari Club International, Safari Club International Foundation, and National Rifle Association**

# Exhibit "A"

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE HUMANE SOCIETY OF THE            )
     UNITED STATES, *et al*               )
                                  )
               Plaintiffs,          )
     v.                                   )
                                    )    No.  1:07-cv-00677(PLF)
                                  )
DIRK KEMPTHORNE,                      )
     Secretary of the Interior, *et al.*   )
                                  )
             Defendants            )
                                  )
and                                   )
                                  )
SAFARI CLUB INTERNATIONAL             )
4800 West Gates Pass Road             )
Tucson, Arizona 85745                 )
                                  )
and                                   )
                                  )
SAFARI CLUB INTERNATIONAL             )
FOUNDATION                            )
4800 West Gates Pass Road             )
Tucson, Arizona  85745                )
                                  )
and                                   )
                                  )
NATIONAL RIFLE ASSOCIATION            )
11250 Waples Mill Rd.                 )
Fairfax, VA 22030                     )
                         )
                                  )
                                  )
     Defendant-Intervenor Applicants )

**SCI,  SCIF AND NRA'S PROPOSED ANSWER TO PLAINTIFFS' COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

     Safari Club International ("SCI") Safari Club International Foundation ("SCIF") and the National Rifle Association ("NRA"), by and through counsel, answer, upon information and belief, the individually numbered paragraphs in Plaintiffs' Complaint for Declaratory and Injunctive Relief ("Complaint") as follows:

2

SCI, SCIF and NRA answer each paragraph of the Complaint without waiving but expressly reserving, all rights that they may have to seek relief by appropriate motions.

## <u>INTRODUCTION</u>

1.      To the extent that Paragraph 1 sets forth conclusions of law, no response is required.  To the extent a response is required, the statutory provisions referenced in Paragraph 1 speak for themselves and are the best evidence of their content.  To the extent that Paragraph 1 sets forth factual allegations, SCI, SCIF and NRA admit that the Humane Society of the United States ("HSUS"), Help Out Wolves Live ("HOWL") and Animal Protection Institute ("API") have filed suit to challenge gray wolf delisting in the Western Great Lakes.

2.      To the extent that Paragraph 2 sets forth conclusions of law, no response is required.  To the extent that a response is required, the statutory provisions referenced in Paragraph 2 speak for themselves and are the best evidence of their content.  To the extent that Paragraph 2 sets forth factual allegations, SCI, SCIF and NRA admit that the U.S. Fish and Wildlife Service ("FWS") placed the gray wolf on the endangered species list and that, due to the efforts of the FWS and the states included in the Western Great Lakes Distinct Population Segment as well as several other states in the United States, gray wolves in those states have recovered.  To the extent that any further response is required, SCI, SCIF and NRA lack sufficient knowledge or information to form a belief as to the truth or accuracy of the statements included in Paragraph 2, and SCI, SCIF and NRA consequently deny any further statements.

3.      To the extent that Paragraph 3 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory, regulatory and policy provisions referred to in Paragraph 3 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 3 sets forth additional factual allegations, these allegations are denied.

4.      To the extent that Paragraph 4 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory provisions and Federal Register notices referred to in Paragraph 4 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 4 sets forth additional factual allegations, these allegations are denied.

5.      To the extent that Paragraph 5 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory provisions referred to in Paragraph 5 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 5 sets forth additional factual allegations, these allegations are denied.

6.      To the extent that Paragraph 6 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory provisions, regulations and Federal Register notices and U.S. District Court for the Districts of Oregon and Vermont opinions referred to in Paragraph 6 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 6 sets forth additional factual allegations, these allegations are denied.

7.      To the extent that Paragraph 7 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the regulatory provisions and Federal Register notices referred to in Paragraph 7 speak for themselves and are the best evidence of their own content.  SCI, SCIF and NRA admit that on February 8, 2007, the FWS issued a rule to remove the gray wolves of the Western Great Lakes Distinct Population Segment ("DPS") from the endangered species list and on that same date proposed a rule to delist gray wolves of the Northern Rocky Mountains.  To the extent that Paragraph 7 sets forth additional factual allegations, these allegations are denied.

8.      To the extent that Paragraph 8 sets forth conclusions of law, no further response is required.  To the extent that a response is required the regulatory provisions and Federal Register notices referred to in Paragraph 8 speak for themselves and are the best evidence of their own content.  SCI, SCIF and NRA admit that HSUS, HOWL and API filed this litigation on April 16, 2007.  SCI, SCIF and NRA lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 8 of Plaintiffs' Complaint.  To the extent that any response is required, the allegations are denied.

## JURISDICTION AND VENUE

9.      To the extent that Paragraph 9 sets forth conclusions of law, no further response is required. To the extent that a response is required, the regulatory provisions referred to in Paragraph 9 speak for themselves and are the best evidence of their own content. To the extent that any response is required, the allegations are denied.

10.     To the extent that Paragraph 10 sets forth conclusions of law, no further response is required. To the extent that a response is required, the regulatory provisions referred to in Paragraph 10 speak for themselves and are the best evidence of their own content. To the extent that any response is required, the allegations are denied.

## PARTIES

11.     SCI, SCIF and NRA lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 11 of Plaintiffs' Complaint.  To the extent that any response is required, the allegations are denied.

12.     SCI, SCIF and NRA lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 12 of Plaintiffs' Complaint.  To the extent that any response is required, the allegations are denied.

13.     SCI, SCIF and NRA lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 13 of Plaintiffs' Complaint.  To the extent that any response is required, the allegations are denied.

14.     SCI, SCIF and NRA admit that the Defendants that Plaintiffs have sued are Secretary of the Interior Dirk Kempthorne of the United States Department of the Interior, and the United States Fish and Wildlife Service.  To the extent that Paragraph 14 sets forth conclusions of law, no further response is required.  To the extent that any further response is required, the allegations of Paragraph 14 are denied.

## LEGAL FRAMEWORK

### *The Endangered Species Act*

15.     To the extent that Paragraph 15 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory provisions referred to in Paragraph 15 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 15 sets forth additional factual allegations, these allegations are denied.

16.     To the extent that Paragraph 16 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory provisions referred to in Paragraph 16 speak for themselves and are the best evidence of their own content.  To the extent that

Paragraph 16 sets forth additional factual allegations, these allegations are denied.

17.     To the extent that Paragraph 17 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory provisions referred to in Paragraph 17 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 17 sets forth additional factual allegations, these allegations are denied.

18.     To the extent that Paragraph 18 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory provisions and judicial opinions referred to in Paragraph 18 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 18 sets forth additional factual allegations, these allegations are denied.

19.     To the extent that Paragraph 19 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory and regulatory provisions referred to in Paragraph 19 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 19 sets forth additional factual allegations, these allegations are denied.

20.     To the extent that Paragraph 20 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory provisions referred to in Paragraph 20 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 20 sets forth additional factual allegations, these allegations are denied.

21.     To the extent that Paragraph 21 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory and regulatory provisions referred to in Paragraph 21 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 21 sets forth additional factual allegations, these allegations are denied.

22.     To the extent that Paragraph 22 sets forth conclusions of law, no further response is required.  To the extent that a response is required, the regulatory provisions referred to in Paragraph 22 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 22 sets forth additional factual allegations, these allegations are denied.

23.     To the extent that Paragraph 23 sets forth conclusions of law, no further response is required. To the extent that a response is required, the regulatory provisions and Federal Register notices referred to in Paragraph 23 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 23 sets forth additional factual allegations, these allegations are denied.

24.     To the extent that Paragraph 24 sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions referred to in Paragraph 24 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 24 sets forth additional factual allegations, these allegations are denied.

25.     To the extent that Paragraph 25 sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions referred to in Paragraph 25 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 25 sets forth additional factual allegations, these allegations are denied.

26.     To the extent that Paragraph 26 sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory and regulatory provisions referred to in Paragraph 26 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 26 sets forth additional factual allegations, these allegations are denied.

27.     To the extent that Paragraph 27 sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions referred to in Paragraph 27 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 27 sets forth additional factual allegations, these allegations are denied.

### *The Distinct Population Segment Policy*

28.     To the extent that Paragraph 28 sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions referred to in Paragraph 28 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 28 sets forth additional factual allegations, these allegations are denied.

29.     To the extent that Paragraph 29 sets forth conclusions of law, no further response is required. To the extent that a response is required, the

statutory and regulatory provisions and Federal Register notices referred to in Paragraph 29 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 29 sets forth additional factual allegations, these allegations are denied.

30.    To the extent that Paragraph 30 sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions and Federal Register notices referred to in Paragraph 30 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 30 sets forth additional factual allegations, these allegations are denied.

31.    To the extent that Paragraph 31 sets forth conclusions of law, no further response is required. To the extent that a response is required, the policy provisions referred to in Paragraph 31 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 31 sets forth additional factual allegations, these allegations are denied.

32.    To the extent that Paragraph 32 sets forth conclusions of law, no further response is required. To the extent that a response is required, the policy provisions referred to in Paragraph 32 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 32 sets forth additional factual allegations, these allegations are denied.

33.    To the extent that Paragraph 33 sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory and policy provisions referred to in Paragraph 33 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 33 sets forth additional factual allegations, these allegations are denied.

34.    To the extent that Paragraph 34 sets forth conclusions of law, no further response is required. To the extent that a response is required, the policy provisions referred to in Paragraph 34 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 34 sets forth additional factual allegations, these allegations are denied.

35.    To the extent that Paragraph 35 sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory and policy provisions referred to in Paragraph 35 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 35 sets forth additional factual allegations, these allegations are denied.

### *The Administrative Procedures Act*

36. To the extent that Paragraph 36 sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions referred to in Paragraph 36 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 36 sets forth additional factual allegations, these allegations are denied.

37. To the extent that Paragraph 37 sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions referred to in Paragraph 37 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 37 sets forth additional factual allegations, these allegations are denied.

## FACTUAL BACKGROUND

### *The Gray Wolf*

38. SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 38 of Plaintiffs' Complaint. To the extent that any additional response is required, the allegations of Paragraph 38 are denied.

39. SCI, SCIF and NRA admit that wolves prey primarily on wild ungulates (hoofed animals) such as deer, elk, moose, caribou and bison and that they also eat smaller prey such as snowshoe hare, beaver and rabbits, and that they, more than occasionally prey on livestock, as well as pets, including hunting dogs. SCI, SCIF and NRA, at this time, lack sufficient knowledge or information to determine the truth and/or accuracy of the remaining statements contained in Paragraph 39 of Plaintiffs' Complaint. To the extent that any additional response is required, the allegations of Paragraph 39 are denied.

40. SCI, SCIF and NRA admit that wolves are habitat generalists. SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 40 of Plaintiffs' Complaint. To the extent that any additional response is required, the allegations of Paragraph 40 are denied.

41.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 41 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 41 are denied.

42.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 42 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 42 are denied.

### The Significance of the Gray Wolf

43.     To the extent that Paragraph 43 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory provisions and Congressional reports referred to in Paragraph 43 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 43 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements.  To the extent that any additional response is required, the allegations of Paragraph 43 are denied.

44.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 44 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 44 are denied.

45.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 45 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 45 are denied.

46.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 46 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 46 are denied.

47.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 47 of Plaintiffs' Complaint.  To the extent that

any additional response is required, the allegations of Paragraph 47 are denied.

48.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 48 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 48 are denied.

49.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 49 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 49 are denied.

50.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 50 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 50 are denied.

51.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 51 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 51 are denied.

52.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 52 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 52 are denied.

53.     SCI, SCIF and NRA, at this time, lack sufficient knowledge and/or information to determine the truth and/or accuracy of the statements contained in Paragraph 53 of Plaintiffs' Complaint.  To the extent that any additional response is required, the allegations of Paragraph 53 are denied.

### The Wolf's Recovery Begins

54.     To the extent that Paragraph 54 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required.  To the extent that a response is required, the statutory provisions and Federal Register notices referred to in Paragraph 54 speak for themselves and are the

best evidence of their own content. To the extent that Paragraph 54 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 54 are denied.

55.     To the extent that Paragraph 55 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions and Federal Register notices referred to in Paragraph 55 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 55 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 55 are denied.

56.     To the extent that Paragraph 56 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that Paragraph 56 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 56 are denied.

57.     To the extent that Paragraph 57 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions referred to in Paragraph 57 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 57 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 57 are denied.

58.     SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of the factual averments contained in Paragraph 58 of Plaintiffs' Complaint. To the extent that any additional response is required, the allegations of Paragraph 58 are denied.

59.     SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of the factual averments contained in Paragraph 59 of Plaintiffs' Complaint. To the extent that any additional response is required, the allegations of Paragraph 59 are denied.

60.    SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of the factual averments contained in Paragraph 60 of Plaintiffs' Complaint. To the extent that any additional response is required, the allegations of Paragraph 60 are denied.

61.    To the extent that Paragraph 61of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory and regulatory provisions and judicial opinions referred to in Paragraph 61 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 61 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 61 are denied.

### The FWS's Delisting Efforts

62.    SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of the factual averments contained in Paragraph 62 of Plaintiffs' Complaint. To the extent that any additional response is required, the allegations of Paragraph 62 are denied.

63.    SCI, SCIF and NRA admit that the FWS published a proposed rule in 2000 pertaining to the reclassification of gray wolves. To the extent that Paragraph 63 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the regulatory provisions and Federal Register notices referred to in Paragraph 63 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 63 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 63 are denied.

64.    SCI, SCIF and NRA admit that, in 2003, the FWS issued a final rule to reclassify two Distinct Population Segments of gray wolves. To the extent that Paragraph 64 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the regulatory provisions and Federal Register notices referred to in Paragraph 64 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 64 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth

13

and/or accuracy of these statements.  To the extent that any additional response is required, the allegations of Paragraph 64 are denied.

65.  SCI, SCIF and NRA admit that the FWS issued an Advanced Notice of Proposed Rule Making on April 1, 2003.  To the extent that Paragraph 65 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the Federal Register notice referred to in Paragraph 65 speaks for itself and is the best evidence of its own content.  To the extent that Paragraph 65 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements.  To the extent that any additional response is required, the allegations of Paragraph 65 are denied.

66.  SCI, SCIF and NRA admit that several animal rights groups filed suit in federal district court in the district of Oregon to challenge the FWS's rule to reclassify wolves from "endangered" to "threatened" status and that a separate coalition of animal rights groups filed a similar suit in U.S. District Court for the District of Vermont.  To the extent that Paragraph 66 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the judicial opinions referred to in Paragraph 66 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 66 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements.  To the extent that any additional response is required, the allegations of Paragraph 66 are denied.

67.  To the extent that Paragraph 67 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the judicial opinions referred to in Paragraph 67 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 67 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements.  To the extent that any additional response is required, the allegations of Paragraph 67 are denied.

68.  To the extent that Paragraph 68 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the judicial opinions referred to in Paragraph 68 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 68 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements.  To

14

the extent that any additional response is required, the allegations of Paragraph 68 are denied.

69.    SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of the allegations contained within Paragraph 69 of Plaintiffs' Complaint. To the extent that any additional response is required, the allegations of Paragraph 69 are denied.

70.    SCI, SCIF and NRA believe that Paragraph 70 of Plaintiffs' Complaint refers to and paraphrases the contents of the FWS's final rule to delist the wolves of the Western Great Lakes DPS. And the proposed rule to delist the wolves of the Northern Rockies population. If so, the Federal Register notices to which Plaintiffs' refer speak for themselves and are the best evidence of their own content. If SCI, SCIF and NRA's belief is incorrect, then SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of the allegations contained within Paragraph 70 of Plaintiffs' Complaint. To the extent that any additional response is required, the allegations of Paragraph 70 are denied.

71.    To the extent that Paragraph 71 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the regulatory provisions and Federal Register notice referred to in Paragraph 71 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 71 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 71 are denied.

72.    To the extent that Paragraph 72 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the regulatory provisions and Federal Register notice referred to in Paragraph 72 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 72 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 72 are denied.

### *The Great Lakes Delisting Rule*

73.    To the extent that Paragraph 73 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a

response is required, the regulatory provisions and Federal Register notice referred to in Paragraph 73 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 73 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 73 are denied.

74.     To the extent that Paragraph 74 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory and regulatory provisions and Federal Register notice referred to in Paragraph 74 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 74 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 74 are denied.

75.     To the extent that Paragraph 75 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory, regulatory and policy provisions and Federal Register notice referred to in Paragraph 75 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 75 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 75 are denied.

76.     To the extent that Paragraph 76 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory, regulatory and policy provisions and Federal Register notice referred to in Paragraph 76 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 76 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 76 are denied.

77.     To the extent that Paragraph 77 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory, regulatory and policy provisions and Federal Register notice referred to in Paragraph 77 speak for themselves and are the best evidence of their own content. To the

extent that Paragraph 77 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 77 are denied.

78.     To the extent that Paragraph 78 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory, regulatory and policy provisions, Federal Register notice, and state wolf management plans referred to in Paragraph 78 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 78 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 78 are denied.

79.     To the extent that Paragraph 79 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory, regulatory and policy provisions, Federal Register notice and state management plans referred to in Paragraph 79 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 79 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 79 are denied.

80.     To the extent that Paragraph 80 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory, regulatory and policy provisions, Federal Register notice and state management plans referred to in Paragraph 80 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 80 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 80 are denied.

81.     SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of the allegations contained in Paragraph 81 of Plaintiffs' complaint. To the extent that any additional response is required, the allegations of Paragraph 81 are denied.

82.     To the extent that Paragraph 82 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory, regulatory and policy provisions, Federal Register notice and state management plans referred to in Paragraph 82 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 82 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 82 are denied.

83.     To the extent that Paragraph 83 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory, regulatory and policy provisions, Federal Register notice and state management plans referred to in Paragraph 83 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 83 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 83 are denied.

84.     To the extent that Paragraph 84 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory, regulatory and policy provisions, Federal Register notice and state management plans referred to in Paragraph 84 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 84 makes factual statements, especially, but not limited to the unidentified "local news source," SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 84 are denied.

85.     To the extent that Paragraph 85 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions and judicial opinions referred to in Paragraph 85 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 85 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 85 are denied.

86.     To the extent that Paragraph 86 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that

Paragraph 86 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 86 are denied.

87.     To the extent that Paragraph 87 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that Paragraph 87 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 87 are denied.

### *The Eastern Timber Wolf Recovery Plan*

88.     To the extent that Paragraph 88 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the recovery plans referred to in Paragraph 88 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 88 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 88 are denied.

89.     To the extent that Paragraph 89 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions and recovery plans referred to in Paragraph 89 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 89 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 89 are denied.

90.     To the extent that Paragraph 90 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions and recovery plans referred to in Paragraph 90 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 90 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph  90 are denied.

91.    To the extent that Paragraph 91 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions and recovery plans referred to in Paragraph 91 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 91 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 91 are denied.

92.    SCI, SCIF and NRA admit that the FWS published a proposed rule on February 8, 2007 to delist wolves in the Northern Rocky Mountain population. To the extent that Paragraph 92 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the Federal Register notice referred to in Paragraph 92 speaks for itself and is the best evidence of its own content. To the extent that Paragraph 92 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 92 are denied.

93.    To the extent that Paragraph 93 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions referred to in Paragraph 93 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 93 makes factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 93 are denied.

94.    SCI, SCIF and NRA admit that the FWS issued Federal Register notices concerning the listing status of American crocodile and grizzly bears in the greater Yellowstone area. To the extent that Paragraph 94 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory and regulatory provisions and Federal Register notices referred to in Paragraph 94 speak for themselves and are the best evidence of their own content. To the extent that Paragraph 94 makes additional factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements. To the extent that any additional response is required, the allegations of Paragraph 94 are denied.

95.    SCI, SCIF and NRA admit that Plaintiffs sent a 60-day notice letter to the FWS advising of their intent to file suit.  To the extent that Paragraph 95 of Plaintiffs' Complaint sets forth conclusions of law, no further response is required. To the extent that a response is required, the statutory provisions referred to in Paragraph 95 speak for themselves and are the best evidence of their own content.  To the extent that Paragraph 95 makes additional factual statements, SCI, SCIF and NRA are, at this time, without sufficient knowledge or information to form a belief as to the truth and/or accuracy of these statements.  To the extent that any additional response is required, the allegations of Paragraph 95 are denied.

## <u>COUNT I</u>

96.    SCI incorporates, by reference, its forgoing responses to Paragraphs 1-95 of Plaintiffs' Complaint.

97.    Paragraph 97 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that Paragraph 97 refers to statutory provisions, these provisions speak for themselves and are the best evidence of their own content.  To the extent that any further response is required, the allegations of Paragraph 97 are denied.

98.    Paragraph 98 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that any further response is required, the allegations of Paragraph 98 are denied.

99.    Paragraph 99 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that any further response is required, the allegations of Paragraph 99 are denied.

100.    Paragraph 100 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that Paragraph 100 refers to statutory and regulatory provisions and Federal Register notices, these documents speak for themselves and are the best evidence of their own content.  To the extent that any further response is required, the allegations of Paragraph 100 are denied.

101.    Paragraph 101 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that Paragraph 101 refers to statutory provisions, these provisions speak for themselves and are the best evidence of their own content.  To the extent that any further response is required, the allegations of Paragraph 101 are denied.

102.    Paragraph 102 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that Paragraph 102 refers to statutory and policy provisions and Federal Register notices, these documents speak for themselves and are the best evidence of their own content.  To the extent that any further response is required, the allegations of Paragraph 102 are denied.

103.    Paragraph 103 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that Paragraph 103 refers to statutory, regulatory and policy provisions and Federal Register notices, these documents speak for themselves and are the best evidence of their own content.  To the extent that any further response is required, the allegations of Paragraph 103 are denied.

104.    Paragraph 104 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that Paragraph 104 refers to statutory, regulatory and policy provisions and Federal Register notices, these documents speak for themselves and are the best evidence of their own content.  To the extent that any further response is required, the allegations of Paragraph 104 are denied.

105.    Paragraph 105 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that Paragraph 105 refers to statutory, regulatory and policy provisions and Federal Register notices, these documents speak for themselves and are the best evidence of their own content.  To the extent that any further response is required, the allegations of Paragraph 105 are denied.

106.    Paragraph 106 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that Paragraph 106 refers to statutory and regulatory provisions, these provisions speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the allegations of Paragraph 106 are denied.

107.    Paragraph 107 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that Paragraph 107 refers to statutory and regulatory provisions and Federal Register notices, these documents speak for themselves and are the best evidence of their own content.  To the extent that any further response is required, the allegations of Paragraph 107 are denied.

108.    Paragraph 108 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required.  To the extent that Paragraph 108 refers to statutory and regulatory provisions, these provisions speak for themselves and are the best evidence of their own content.

To the extent that any further response is required, the allegations of Paragraph 108 are denied.

109.    Paragraph 109 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required. To the extent that Paragraph 109 refers to statutory and regulatory provisions and Federal Register notices, these documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the allegations of Paragraph 109 are denied.

110.    Paragraph 110 of Plaintiffs' Complaint constitutes a conclusion of law to which no further response is required. To the extent that Paragraph 110 refers to statutory and regulatory provisions and Federal Register notices, these documents speak for themselves and are the best evidence of their own content. To the extent that any further response is required, the allegations of Paragraph 110 are denied.

## RELIEF REQUESTED

The final paragraphs of Plaintiffs' Complaint consist of a prayer for relief to which no further response is required. To the extent that any response is required, SCI, SCIF and NRA deny the prayer for relief.


Any allegations not expressly admitted or responded to are hereby denied.

## AFFIRMATIVE DEFENSES

1.   This Court lacks subject matter jurisdiction over this matter.

2.   Plaintiffs have asserted claims that are not ripe and/or do not create a justiciable case or controversy.

3.   The allegations in the Complaint fail to state a claim upon which relief may be granted.

4.   Plaintiffs lack standing to assert the claims set forth in the Complaint.

5.   Venue is improper or more appropriate in another district.

6.   Defendant-Intervenors reserve the right to name additional affirmative defenses as they may be discovered after filing of this Answer and before trial.

WHEREFORE, SCI, SCIF and NRA respectfully request that this Court grant judgment in favor of Defendants and Defendant-Intervenors, that the Complaint be dismissed with prejudice, that Defendants and Defendant-Intervenors be awarded costs and attorneys fees incurred in defense of this action, and that the Court grant all other relief to Defendants and Defendant-Intervenors deemed just and proper.

Respectfully Submitted;

_____

Anna M. Seidman
(D.C. Bar No. 417091)
Safari Club International
501 2nd Street NE
Washington, D.C.  20002
(202) 543-8733
Fax:  (202) 543-1205
aseidman@sci-dc.org
Douglas S. Burdin
( D.C. Bar No. 434107)
501 2nd Street NE
Washington, D.C.  20002
(202) 543-8733
Fax:  (202) 543-1205
dburdin@sci-dc.org
Counsel for
Safari Club International,
Safari Club International Foundation
and the National Rifle Association

24

Humane Society of the United States v. Kempthorne et al.

1:07-cv-00677

Motion to Intervene and Memorandum in Support Thereof of Safari Club International, Safari Club International Foundation, and National Rifle Association

# Exhibit "B"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES, *et al.* | ) ) ) | Case No. 1:07-CV-00677(PLF) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, *et al.* | ) ) ) | DECLARATION OF Clinton Olaf Deraas |
| Defendants, | ) ) | |
| and | ) ) ) | |
| SAFARI CLUB INTERNATIONAL, and SAFARI CLUB INTERNATIONAL FOUNDATION *et al.* Defendant-Intervenor-Applicants | ) ) ) ) ) ) ) | |

1.  My name is Clinton Olaf Deraas and I am a resident of Duluth, Minnesota.

2.  I have been hunting for 34 years and have been a member of Safari Club International for the last year.

3.  I am also a member of the National Rifle Association (NRA).

4.  I have hunted in Minnesota and Montana and have hunted for deer, moose, elk bear, waterfowl, pheasant, grouse and small game.

5.  During the last few years, while hunting in Duluth and Two Harbors, Minnesota, I have had several close and disturbing encounters with wolves.

Page 1

6. In the fall of 2003, I was grouse hunting. When I returned to my truck that was parked in a clear cut, I saw a timber wolf standing 50 yards from my truck. Instead of running when he saw me, the wolf started to approach me. He finally stopped not far from where I was standing and then stood and watched me for a couple of minutes. He showed no sign of fear. Eventually, he simply walked away.

7. On the opening day of Minnesota's deer season in 2003, I was sitting in a deer stand and heard what I thought to be some deer approaching my stand. Instead, I realized that it was wolves and not deer approaching the stand. One of those wolves walked just ten yards from me as it made its way up a well established deer trail. The other wolves just passed out of sight. Again, I saw no sign that the wolves were afraid of being near a human.

8. During Minnesota's 2002 deer season, I was on a trail behind my house when I walked up on a wolf standing broadside in the trail. He was pursuing a deer at the time and showed no sign of fear of a human.

9. Several years ago, I was hunting from a deer stand when my bother approached from behind me. After we talked, my brother walked quietly away and when he was about 75 yards from me, I saw a very large timber wolf stick his head out of the brush between my brother's location and mine. My brother was totally unaware of the wolf's presence and the wolf just watched my brother as my brother continued to walk away. The wolf never even bothered to look in my direction. The wolf went back into the brush and as I continued to watch, the wolf reappeared from the brush at a location much closer to where my brother than before. Eventually, the wolf retreated back into the brush and did not appear again.

Page 2

10. It is apparent to me that wolves are not only increasing in numbers and range, but that wolves are losing their fear of humans.

11. The presence of these wolves in the areas where we hunt in Minnesota is interfering with my hunting experience, enjoyment and possibly my safety.

12. If the population of wolves in Minnesota is not controlled, I believe that wolves will pose an increasing danger to those of us who enjoy outdoor activities including hunting.

13. Despite my wolf encounters, it is my intention to continue to hunt and to return to the areas that I traditionally hunt during the next hunting season.

14. If wolves do not remain delisted and if the state of Minnesota does not retain the ability to control wolves and to establish and regulate wolf hunts to help manage wolf populations, my safety and my hunting opportunities could suffer significantly.

15. If the Plaintiffs who have filed this lawsuit to challenge the U.S. Fish and Wildlife Service's delisting of wolves are successful, it will severely and detrimentally impact my ability to hunt in Minnesota and to allow others to enjoy hunting on my land in Minnesota.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 24th day of __April__, 2007, at __Duluth__, Minnesota.

Clinton Olaf Deraas

Humane Society of the United States v. Kempthorne et al.

1:07-cv-00677

Motion to Intervene and Memorandum in Support Thereof of Safari  Club International,
Safari Club International Foundation, and National Rifle Association

# Exhibit "C"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUMANE SOCIETY OF THE UNITED          )
STATES, *et al.*                      )      Case No. 1:07-cv-00677
                    Plaintiffs,       )
                                      )
        vs.                           )
                                      )
DIRK KEMPTHORNE, Secretary of the Interior,  )
United States Department of the Interior, *et al.*  )      DECLARATION OF
                                      )      Scott Talbot
        Defendants,                   )
                                      )
        and                           )
                                      )
                                      )
SAFARI CLUB INTERNATIONAL,            )
        and                           )
SAFARI CLUB INTERNATIONAL             )
        FOUNDATION                    )
            *et al.*                  )
and                                   )
                                      )
NATIONAL RIFLE ASSOCIATION            )
        Defendant-Intervenor-Applicants  )

1.  My name is Scott Talbot and I am a resident of Elk River, Minnesota.

2.  I have been hunting for 48 years and have been a member of Safari Club International
    since 1989.

3.  I am a member of the Minnesota, North American Handgun Hunters and North Country
    Bow Hunter Chapters of Safari Club International and serve as a Board member for both
    the North Country Bow Hunters and Turn in Poachers of Minnesota.

4. I have hunted many species in many different places, including white-tailed deer, black bear, waterfowl, turkey and upland birds in Minnesota; wolf in Ontario, Canada, coues deer in Arizona; waterfowl in Saskatchewan, Canada; waterfowl in Manitoba, Canada; moose and bear in Alaska; white-tailed deer, mule deer, elk and antelope in Montana; mule deer and antelope in Wyoming; mule deer, white-tailed deer, antelope, uplands birds and waterfowl in North Dakota; upland birds in Iowa; white-tailed deer and exotic species in Texas; waterfowl, upland birds and white-tailed deer in Mexico; and red deer, fallow deer and mouflon sheep in Spain.

5. I hunt every year in Minnesota.

6. On more than one occasion during my hunting trips in Minnesota, I have encountered wolves that have competed with and/or interfered with my hunting activities, enjoyment and success.

7. I had three encounters with wolves in October of 2006 on my property in North East Becker County, Minnesota.

8. On a Saturday morning in Mid-October, I was guiding two archer hunters and left them in my vehicle while I proceeded to gather flash cards from trail cameras I had set overlooking a food plot. As I went down the trail to the food plot, I encountered a huge wolf coming towards me on the trail. I stopped in my tracks, but the wolf continued towards me until we were about 20 feet apart. The wolf bared his teeth, snarled and growled at me. I yelled at him to scare him away, but he became more aggressive, by assuming a dominant posture and continued growling. When I yelled even louder and made a move towards him, he stepped off the trail into the brush and disappeared.

Page 2

9. On the Friday of the following week, another archery on my property reported that he had been stalked by a wolf while he hunted from his ground blind on a food plot. He was able to video the wolf to document his encounter. On that same day, while walking my property with my hunting dog, I encountered another wolf that came within 20 yards of myself and my dog.

10. It is apparent to me that not only has the wolf population grown and expanded its range, but that the wolves are dramatically losing their fear of humans.

11. The presence of wolves in these areas is interfering with my hunting and guiding efforts, as well as the enjoyment and success and of those who hunt on the land that I own.

12. If the population of wolves in Minnesota is not controlled, wolves will pose an increasing danger to those of us who enjoy outdoor activities including hunting.

13. Despite my wolf encounters, it is my intention to return to the timberland that I own in North East Becker County in order to hunt and/or to guide on that property during the upcoming hunting seasons.

14. If wolves do not remain delisted and if the state of Minnesota does not retain the ability to control wolves and to establish and regulate wolf hunts to help manage wolf populations, my safety and hunting opportunities and those of the individuals that I guide may significantly diminish.

15. If the Plaintiffs who have filed this lawsuit to challenge the U.S. Fish and Wildlife Service's delisting of wolves are successful, it will severely and detrimentally impact my ability to hunt and guide in Minnesota and to enable others to enjoy hunting on my land in Minnesota.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 24 day of _APRIL_____, 2007, at _Big LAKE___, Minnesota.

_____
Scott Talbot

Humane Society of the United States v. Kempthorne et al.

1:07-cv-00677

Motion to Intervene and Memorandum in Support Thereof of Safari  Club International,
Safari Club International Foundation, and National Rifle Association

# Exhibit "D"

## UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES, *et al.* <br> Plaintiffs, | ) ) ) ) | Case No. 1:07-cv-00677(PF) |
| vs. | ) ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, *et al.* | ) ) ) | DECLARATION OF <br> John D. Smythe |
| Defendants, | ) ) | |
| and | ) ) | |
| SAFARI CLUB INTERNATIONAL, <br> and <br> SAFARI CLUB INTERNATIONAL <br> FOUNDATION <br> *et al.* <br> Defendant-Intervenor-Applicants | ) ) ) ) ) ) ) | |

1. My name is John D. Smythe and I am a resident of Park Rapids, Minnesota.

2. I have been hunting for 49 years and have been a member of Safari Club International for 11 years.

3. I am Life Member of SCI, a member of the SCI Hunter 100 Foundation and am also a member of the Minnesota and Ontario, Canada Chapters of SCI.

4. I have hunted and continue to hunt primarily in Minnesota but I have also hunted in Alaska, Colorado, Montana, North Dakota, South Dakota, British Columbia, Alberta, Northwest Territories, Nunavut, Manitoba, Ontario, Quebec, Tanzania and Namibia.

Page 1

20

5. I have hunted over 20 species of big game in North American as well as over 20 species of big game in Africa. I have also hunted over 20 species of small game and birds in North America and Africa.

6. I hunt with both a rifle and a bow.

7. Over the last decade, I have had many encounters with wolves, while I was out hunting in Minnesota. Most of these encounters occurred in Hubbard County and Becker County, Minnesota.

8. On more than one occasion, wolves have competed with and/or interfered with my hunting activities, enjoyment and success and they also threatened Max, a dog that I hunted and shared the outdoors with.

9. In the spring of 1998, I was scouting a bow hunting area with my dog in Northern Hubbard County, Schoolcraft Township in the early afternoon, when an adult male timber wolf, weighing about 110 to 120 pounds, tried to kill my dog. I intervened and the wolf backed off when the dog came to my side, but he held his ground about twenty yards away from us and watched us for five or six seconds. The wolf tracked us as we returned to our vehicle, a fact that became even more obvious when I noticed the wolf's tracks in the snow on the day following the incident.

10. In the fall of 2001, I lost prey to a wolf while hunting in Northern Hubbard County, Schoolcraft Township. In the late afternoon, I was tracking a deer I had shot, but retired for the day without retrieving the deer due to poor light. I returned to the area early the next morning and found a wolf weighing over 100 pounds standing next to the deer carcass that I had shot. When I got closer, I saw that the deer had already been partially consumed by wolves.

11. I own a farm in Becker County, Minnesota that is home to a large deer herd and I allow others to hunt on my farm. As recently as five years ago, those who hunted on my farm had no reason for concern about encountering wolves.

12. During the bow seasons that took place in October and November of 2005 and 2006, the hunters on our farm had five different encounters with timber wolves.

13. We are aware that at least a single male timber wolf remained on our farm during the winter of 2007. We repeatedly saw his tracks and know that he sustained himself by preying on our deer herd since his stools were full of deer hair.

14. There is no question in my mind that the wolf population in Minnesota has increased dramatically and that wolves are expanding their range into areas where I and others live and hunt.

15. The presence of wolves in these areas is interfering with my hunting efforts, enjoyment and success and of those who hunt on the land that I own.

16. If the population of wolves in Minnesota is not controlled, wolves will pose an increasing danger to those of us who enjoy outdoor activities including hunting.

17. Wolves are also having an impact on the wildlife that we in Minnesota hunt and otherwise enjoy. Both deer and moose have vacated areas that wolves have moved into. If this wildlife behavior pattern continues, there will be fewer and fewer game animals for us to hunt, in the areas in which we have enjoyed hunting in the past.

18. Despite my wolf encounters, it is my intention to return to Northern Hubbard County to hunt and to continue to allow hunting on my farm in Becker County during the upcoming hunting seasons.

19. If wolves do not remain delisted and if the state of Minnesota does not retain the ability to control wolves and to establish and regulate wolf hunts to help manage wolf populations, my safety and hunting opportunities and those of my friends may significantly diminish.

20. If the Plaintiffs who have filed this lawsuit to challenge the U.S. Fish and Wildlife Service's delisting of wolves are successful, it will severely and detrimentally impact my ability to hunt in Minnesota and to enable others to enjoy hunting on my farm in Minnesota.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 23rd day of _____April_____, 2007, at Park Rapids, Minnesota.

_____
John D. Smythe

Page 4

Humane Society of the United States v. Kempthorne et al.

1:07-cv-00677

Motion to Intervene and Memorandum in Support Thereof of Safari  Club International, Safari Club International Foundation, and National Rifle Association

# Exhibit "E"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES, *et al.*<br>Plaintiffs, | ) ) ) ) | Case No. 1:07-cv-00677 |
| vs. | ) ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, *et al.* | ) ) ) | DECLARATION OF Lawrence Guy Godwin |
| Defendants, | ) ) | |
| and | ) ) | |
| SAFARI CLUB INTERNATIONAL, and SAFARI CLUB INTERNATIONAL FOUNDATION *et al.*<br>Defendant-Intervenor-Applicants | ) ) ) ) ) ) | |

1. My name is Lawrence Guy Godwin and I am a resident of Menominee, Michigan.

2. I have been hunting for 38 years and have been a member of Safari Club International for the last three years.

3. I am a member of the Northwoods Chapter of Safari Club International and I serve on its Board of Directors and as its Secretary.

4. I am also a member of the National Rifle Association (NRA).

Page 1

5. I have hunted in Michigan, Texas, Montana, Iowa, Mexico and Argentina and have hunted for white-tailed deer, mule deer, elk, turkey, ducks, geese, grouse, woodcock, pheasant, boar, coyote, fox, bear and dove.

6. On December 31, 2005, while bow hunting five miles west of Republic Michigan, I shot a doe, but was unable to retrieve it that same day. I returned the next morning and tracked the deer and found an incredible kill scene left in the snow. I saw that wolves had devoured the doe and found blood and fur scattered over an area approximately 10 yards wide and 20 yards long. There were wolf tracks throughout the scene and the doe itself was gone.

7. I was accompanied at the time by a friend, Terry Huffman, who also witnessed the kill scene.

8. I intend to hunt in that vicinity again on or about September 15, 2007, when grouse season opens and then again on October 5, 2007.

9. I find that I am now competing with wolves when I hunt for game in Michigan.

10. The presence of these wolves in the areas where I hunt in Michigan is interfering with my hunting success, experience, enjoyment and possibly my safety.

11. If the population of wolves in Michigan is not controlled, I believe that wolves will pose an increasing danger to those of us who enjoy outdoor activities including hunting.

12. If wolves do not remain delisted and if the state of Michigan does not retain the ability to control wolves and to establish and regulate wolf hunts to help manage wolf populations, my safety, the safety of my dog and my hunting opportunities could suffer significantly.

13. If the Plaintiffs who have filed this lawsuit to challenge the U.S. Fish and Wildlife Service's delisting of wolves are successful, it will severely and detrimentally impact my ability to hunt in Michigan.

14. In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 23rd day of April, 2007, at Menominee, Michigan.

Lawrence Guy Godwin

Humane Society of the United States v. Kempthorne et al.

1:07-cv-00677

Motion to Intervene and Memorandum in Support Thereof of Safari  Club International, Safari Club International Foundation, and National Rifle Association

# Exhibit "F"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES, *et al.* | ) ) | Case No. 1:07-cv-0677 (PLF) |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, *et al.* | ) ) ) | DECLARATION OF Patti L. Delano |
| Defendants, | ) ) | |
| and | ) ) ) | |
| SAFARI CLUB INTERNATIONAL, and SAFARI CLUB INTERNATIONAL FOUNDATION *et al.* Defendant-Intervenor-Applicants | ) ) ) ) ) ) | |

1. My name is Patti L. Delano and I am a resident of Cold Spring, Minnesota.

2. I have been hunting for 45 years and have been a member of Safari Club International for 15 years.

3. I am a member the Minnesota Chapter of Safari Club International.

4. Together with my husband, I own about 700 acres of hunting property in the Leaf River Bottom area in northwestern Minnesota, where I hunt and where my husband and I allow friends and relatives to hunt.

Page 1

5. I have hunted all over the world, including in 15 of the United States, as well as Mexico, Zimbabwe, Republic of South Africa, Botswana and Mozambique.

6. The species that I have hunted include white-tailed deer, mule deer, elk, antelope, caribou, grizzly bear, reindeer, moose, black bear, wolverine, squirrels, rabbits, coyote, fox, pheasant, duck, doves, grouse, quail, African lion, cape buffalo, crocodile, hippo, rhino, elephant, leopard, greater kudu, lesser kudu, oryx, giraffe, eland, bush pig, warthog, baboon, monkey, impala, bushbuk, guinea fowl, francolin and many others.

7. During the last five years, during hunting season in Minnesota, I have repeatedly encountered wolves on my property. I have also encountered wolves during the early fall while building deer stands on our property.

8. While hunting and at other times, I have seen wolves on our property hunting deer.

9. The presence of wolves on our property and in the areas where we hunt is interfering with our hunting and the ability of our friends and relatives to hunt on our land in Minnesota.

10. If the population of wolves in Minnesota is not controlled, wolves will pose an increasing danger to those of us who enjoy outdoor activities including hunting.

11. A growing and uncontrolled wolf population will reduce game numbers by predation and by driving away the game species.

12. Despite my wolf encounters, it is my intention to continue to hunt my land and to return to the areas that I traditional hunt during the next hunting season.

13. If wolves do not remain delisted and if the state of Minnesota does not retain the ability to control wolves and to establish and regulate wolf hunts to help manage wolf populations, my safety and my hunting opportunities could suffer significantly.

14. If the Plaintiffs who have filed this lawsuit to challenge the U.S. Fish and Wildlife

Service's delisting of wolves are successful, it will severely and detrimentally impact my

ability to hunt in Minnesota and to allow others to enjoy hunting on my land in

Minnesota.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated this 23 day of ___April___, 2007, at ___Cold Spring___, Minnesota.

Patti L. Delano

*Patti L. Dela*

Page 3

Humane Society of the United States v. Kempthorne et al.

1:07-cv-00677

Motion to Intervene and Memorandum in Support Thereof of Safari  Club International,
Safari Club International Foundation, and National Rifle Association

# Exhibit "G"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES, *et al.* | ) ) ) | Case No. 1:07-cv-00677 (PLF) |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, *et al.* | ) ) ) | DECLARATION OF Stephen C. Delano |
| Defendants, | ) ) | |
| and | ) ) ) | |
| SAFARI CLUB INTERNATIONAL, and SAFARI CLUB INTERNATIONAL FOUNDATION *et al.* Defendant-Intervenor-Applicants | ) ) ) ) ) ) | |

1. My name is Stephen C. Delano and I am a resident of Cold Spring, Minnesota.

2. I have been hunting for 45 years and have been a member of Safari Club International for 15 years.

3. I am a member the Minnesota Chapter of Safari Club International.

4. Together with my wife, I own about 700 acres of hunting property in the Leaf River Bottom area in northwestern Minnesota, where I hunt and where I allow friends and relatives to hunt.

Page 1

5. I have hunted all over the world, including in 15 of the United States, as well as Nunavut, Canada, Mexico, Zimbabwe, Republic of South Africa, Botswana and Mozambique.

6. The species that I have hunted include white-tailed deer, mule deer, elk, antelope, caribou, grizzly bear, barren ground grizzly bear, muskox, polar bear, reindeer, moose, black bear, arctic wolf, arctic hare, wolverine, squirrels, rabbits, coyote, fox, goat, pheasant, duck, doves, grouse, quail, African lion, cape buffalo, crocodile, hippo, rhino, elephant, leopard, greater kudu, lesser kudu, oryx, giraffe, eland, bush pig, warthog, baboon, monkey, impala, bushbuk, guinea fowl, francolin and many others.

7. During the last five years, during hunting season in Minnesota, I have repeatedly encountered wolves on my property. I have also encountered wolves during the early fall while building deer stands on our property.

8. While hunting and at other times, I have seen wolves on our property chasing deer and have witnessed three wolves over a fresh fawn kill.

9. The presence of wolves on our property and in the areas where we hunt is interfering with our hunting and the ability of our friends and relatives to hunt on our land in Minnesota.

10. If the population of wolves in Minnesota is not controlled, wolves will pose an increasing danger to those of us who enjoy outdoor activities including hunting.

11. A growing and uncontrolled wolf population will reduce game numbers by predation and by driving away the game species.

12. Despite my wolf encounters, it is my intention to continue to hunt my land and to return to the areas that I traditional hunt during the next hunting season.

13. If wolves do not remain delisted and if the state of Minnesota does not retain the ability to control wolves and to establish and regulate wolf hunts to help manage wolf populations, my safety and my hunting opportunities could suffer significantly.

14. If the Plaintiffs who have filed this lawsuit to challenge the U.S. Fish and Wildlife Service's delisting of wolves are successful, it will severely and detrimentally impact my ability to hunt in Minnesota and to allow others to enjoy hunting on my land in Minnesota.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 23 day of April , 2007, at Cold Spring , Minnesota.

Stephen C. Delano

Humane Society of the United States v. Kempthorne et al.

1:07-cv-00677

Motion to Intervene and Memorandum in Support Thereof of Safari Club International,
Safari Club International Foundation, and National Rifle Association

# Exhibit "H"

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES *et al.* | ) ) ) ) ) ) ) | |
| Plaintiffs | ) | 1:07-cv-00677(PLF) |
| v. | ) ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, *et al.* | ) ) ) | |
| Defendants | ) ) | |
| and | ) ) | |
| SAFARI CLUB INTERNATIONAL 4800 West Gates Pass Road Tucson, Arizona 85745 | ) ) ) ) | |
| and | ) ) | |
| SAFARI CLUB INTERNATIONAL FOUNDATION 4800 West Gates Pass Road Tucson, Arizona 85745 | ) ) ) ) ) | |
| Defendant-Intervenor Applicants | ) | |

### DECLARATION OF KEVIN ANDERSON

1. I am the Chairman of the Legal Task Force of Safari Club International, a Vice-President and member of the Executive Committee, and a member of the Board of Safari Club International.

2. I am an attorney and a partner in the law firm of Anderson & Milholland and Wagner, P.C. of Harrisonville, Missouri.

3. Safari Club International is a 501(c)(4) tax-exempt social welfare organization created to promote, protect, and preserve the hunting heritage for the common good and general welfare of the public. Safari Club International Foundation is a 501(c)(3) charitable organization created to promote wildlife conservation through scientific, educational, and humanitarian programs for the common good and general welfare of the public.

4. Safari Club International promotes conservation of wildlife through sustainable use practices and supports hunting as a valuable, efficient and cost effective tool for managing wildlife populations.

5. SCI has a long track record in supporting scientific efforts to understand carnivore and predator population dynamics, carnivore/prey relationships, and threats to maintaining sustainable populations of various carnivore species including wolves.

6. SCIF is currently sponsoring some of the most successful research and conservation programs on jaguar in Mexico and on African lions in the Zambezi Valley of Zimbabwe. SCIF has also supported multiple black bear research projects in North America as well as brown bear conservation and research in Alaska and Russia. SCIF produced a technical review of the status of brown bears in Europe, and revised that paper in 2002. SCIF will continue to be a leader in the effort to document and to communicate the issues regarding the role of carnivores in the landscape and in the management of their populations.

7. SCI and SCIF have repeatedly represented the hunters and conservationists of this country, including but not limited to SCI members, in litigation involving the status of gray wolves and their recovery throughout the United States. In 2003, SCI and SCIF successfully intervened in litigation filed in U.S. District Court in the District of Oregon brought to challenge the reclassification of wolves from "endangered" to "threatened" status (*Defenders of Wildlife v. Norton*, 1:03-cv-1348) and participated as an amicus in similar litigation brought in U.S. District Court in Vermont. (*National Wildlife Federation v. Norton*, 1:03-cv-340). More recently, SCI successfully intervened in litigation brought in the federal district court of the District of Columbia by the Humane Society of the United States and others to challenge depredation permits issued by the U.S. Fish and Wildlife Service to the state of Wisconsin that allowed the state to use lethal means to enhance the survival of the wolves in that state. (*Humane Society of the United States v. Kempthorne*, 1:06-cv-01279(CKK))

8. Safari Club International has chapters throughout the United States including many in Wisconsin, Michigan, Minnesota and in the other states with wolves affected by the U.S. Fish and Wildlife Service's decision to delist the wolves of the Western Great Lakes Distinct Population Segment.

9.  Safari Club International members hunt in many of the states now populated by gray wolves.

10. Many Safari Club International members have encountered gray wolves during their hunts and have competed with wolves for prey and/or have lost their prey to gray wolves.

11. Many Safari Club International members have lost to wolf attacks beloved and valuable pets including many dogs that routinely accompanied those members during their hunting expeditions.

12. Many Safari Club International members, like other residents of Wisconsin, Minnesota, Michigan and other states affected by the U.S. Fish and Wildlife's delisting of the Western Great Lakes Distinct Population Segment, have experienced anger and frustration during times when their state wildlife management authorities were powerless to take necessary action to control their states' problem wolves.

13. SCI and its members support sustainable use conservation and are confident that because of the recovered status of gray wolves, the species no longer requires federal Endangered Species Act protection and that their state management authorities, and not the federal government, should now have the ability to manage this recovered species.

14. If Plaintiffs succeed in the above-captioned litigation, the state authorities in the states affected by the delisting of gray wolves will lose their authority to manage their wolf populations, including their ability to fully manage problem wolves and/or to keep their state wolf populations from causing irreparable harm to the states' game populations.

15. If Plaintiffs succeed in the above-captioned litigation, Safari Club International members who hunt and otherwise enjoy recreational opportunities in the Michigan, Minnesota and Wisconsin outdoors will lose that ability due to the threat to themselves, their pets and their prey from problem wolves.

16. If Plaintiffs succeed in the above-captioned litigation, Safari Club International and Safari Club International Foundation will be harmed in their work towards promoting sustainable use as a wildlife conservation and management tool and supporting the proper management of carnivore species.

17. Safari Club International and Safari Club International Foundation seek to participate as Defendant-Intervenors in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, as provided by 28 U.S.C. Section 1746.

Executed this 23rd day of July, 2007.

By: _____

Kevin Anderson

Humane Society of the United States v. Kempthorne *et al.*

1:07-cv-00677

Motion to Intervene and Memorandum in Support Thereof of Safari Club International,
Safari Club International Foundation, and National Rifle Association

# Exhibit "I"

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES *et al.* | ) ) ) ) ) ) ) |  |
| Plaintiffs | ) | 1:07-cv-00677(PLF) |
| v. | ) |  |
| DIRK KEMPTHORNE, Secretary of the Interior, *et al.* | ) ) |  |
| Defendants | ) ) |  |
| and | ) ) |  |
| SAFARI CLUB INTERNATIONAL 4800 West Gates Pass Road Tucson, Arizona 85745 | ) ) ) ) |  |
| and | ) ) |  |
| SAFARI CLUB INTERNATIONAL FOUNDATION 4800 West Gates Pass Road Tucson, Arizona 85745 | ) ) ) ) ) |  |
| and | ) ) |  |
| The National Rifle Association of America 11250 Waples Mill Rd. Fairfax, Virginia 22030 | ) ) ) ) |  |
| Defendant-Intervenor Applicants | ) |  |

## DECLARATION OF CHRIS W. COX

1.  I am the Executive Director of the National Rifle Association of America's Institute for Legislative Action.

2.  I am authorized to speak for and represent the National Rifle Association of America in litigation pursuant to Article X Section 1 of the bylaws of the National Rifle Association of America.

3.  The National Rifle Association of America is a 501(c)(4) tax-exempt social welfare organization created to promote, protect, and preserve the hunting heritage for the common good and general welfare of the public. Among its purposes and objectives are, "[t]o promote hunter safety, and to promote and defend hunting as a shooting sport and as a viable and necessary method of fostering the propagation, growth and conservation of our renewable wildlife resources" (NRA Bylaws Article II Section 5.)

4.  National Rifle Association of America members hunt in many of the states now populated by gray wolves.

5.  National Rifle Association of America members have encountered gray wolves during their hunts and have competed with wolves for prey and/or have lost their prey to gray wolves..

6.  National Rifle Association of America members, like other residents of Wisconsin, Minnesota, Michigan and other states affected by the U.S. Fish and Wildlife's delisting of the Western Great Lakes Distinct Population Segment, have experienced anger and frustration during times when their state wildlife management authorities were powerless to take necessary action to control their states' problem wolves.

7.  The National Rifle Association of America and its members support sustainable use conservation and are confident that because of the recovered status of gray wolves, the species no longer requires federal Endangered Species Act protection and that their state management authorities, and not the federal government, should now have the ability to manage this recovered species.

8.  If Plaintiffs succeed in the above-captioned litigation, the state authorities in the states affected by the delisting of gray wolves will lose their authority to manage their wolf populations, including their ability to fully manage problem wolves and/or to keep their state wolf populations from causing irreparable harm to the states' game populations.

9.  If Plaintiffs succeed in the above-captioned litigation, National Rifle Association of America members who hunt and otherwise enjoy recreational opportunities in

the Michigan, Minnesota and Wisconsin outdoors will lose that ability due to the threat to themselves, their pets and their prey from problem wolves.

10.  If Plaintiffs succeed in the above-captioned litigation, the National Rifle Association of America will be harmed in their work towards promoting sustainable use as a wildlife conservation and management tool and supporting the proper management of carnivore species.

11.  The National Rifle Association of America seeks to participate as Defendant-Intervenor in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, as provided by 28 U.S.C. Section 1746.

Executed this 23rd day of April, 2007.

By: _____

Chris W. Cox