**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  Civil No. 1:07-cv-677-PLF ) |
| DIRK KEMPTHORNE, Secretary of the Department of the Interior, the UNITED STATES DEPARTMENT OF THE INTERIOR, and the UNITED STATES FISH and WILDLIFE SERVICE. | ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| U.S. SPORTSMEN'S ALLIANCE FOUNDATION, WISCONSIN BEAR HUNTING ASSOCIATION, et al., | ) ) ) ) |
| Intervenor-Defendants, | ) ) |
| SAFARI CLUB INTERNATIONAL and the NATIONAL RIFLE ASSOCIATION, et al., | ) ) ) ) |
| Intervenor-Defendants. | ) ) |

**DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Defendants, Dirk Kempthorne, Secretary of the United States Department of the Interior, the United States Department of the Interior, and the United States Fish and Wildlife Service ("FWS") file this Answer to the above-captioned Complaint as follows:

**Introduction**

1. The allegations contained in Paragraph 1 constitute Plaintiffs' characterization of their case to which no further response is required. To the extent that a response is deemed required, Defendants deny the allegations contained in Paragraph 1.

2. Defendants admit the allegations contained in the first, second, and third

sentences of Paragraph 2 and aver that the gray wolf's recovery is also due to the FWS' highly successful recovery and management programs and education efforts that increased public understanding of wolf biology and behavior. Defendants deny the allegations contained in the fourth sentence in Paragraph 2 and aver that the gray wolf population in the Western Great Lakes region has achieved the established recovery goals and its long-term survival is no longer threatened. The allegations contained in the fifth sentence of Paragraph 2 are a conclusions of law to which no response it required. To the extent that a response is deemed required, Defendants deny the allegations contained in the fifth sentence of Paragraph 2.

      3.      Defendants deny the allegations contained in Paragraph 3.

      4.      The allegations contained in Paragraph 4 are conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants deny the allegations contained in Paragraph 4.

      5.      The allegations contained in Paragraph 5 are conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants deny the allegations contained in Paragraph 5.

      6.      The allegations contained in the first and second sentences of Paragraph 6 characterize the *Final Rule to Reclassify and Remove the Gray Wolf from the List of Endangered and Threatened Wildlife in Portions of the Conterminous United States*, 68 Fed. Reg. 15804, (April 1, 2003) ("Reclassification Rule") and court decisions regarding that rule, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied. The remaining allegations contained in Paragraph 6 are denied.

      7.      In response to the allegations contained in Paragraph 7, Defendants admit that on February 8, 2007, the FWS issued a *Final Rule Designating the Western Great Lakes Populations of Gray Wolves as a Distinct Population Segment; Removing the Western Great*

*Lakes Distinct Population Segment of the Gray Wolf From the List of Endangered and Threatened Wildlife*, 72 Fed. Reg. 6052 (Feb. 8, 2007) ("Final Rule") and *Proposed Rule Designating the Northern Rocky Mountain Population of Gray Wolf as a Distinct Population Segment and Removing This Distinct Population Segment From the Federal List of Endangered and Threatened Wildlife*, 72 Fed. Reg. 6106 (Feb. 8, 2007) ("NRM Proposed Rule"). Defendants deny the remaining allegations contained in Paragraph 7 and further aver that Plaintiffs' speculation regarding the implementation of the proposed rule for the Northern Rocky Mountain population of wolves is irrelevant to the instant case.

8. The allegations contained in Paragraph 8 constitute Plaintiffs' characterization of their case to which no further response is required. To the extent that a response is deemed required, Defendants deny the allegations contained in Paragraph 8 and aver that Plaintiffs are not entitled to any relief whatsoever because the Final Rule complies with all applicable laws.

### Jurisdiction and Venue

9. The allegations contained in Paragraph 9 are conclusions of law to which no response is required.

10. The allegations contained in Paragraph 10 are conclusions of law to which no response is required. In further response to Paragraph 10, Defendants aver that venue may be more appropriate in another district.

### Parties

11. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 concerning Plaintiff the Humane Society of the United States, and on that basis deny them.

12. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 concerning Plaintiff Animal Protection Institute, and on that basis deny them.

13.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 concerning Plaintiff Help Our Wolves Live, and on that basis deny them.

14.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 concerning Plaintiff Friends of Animals and Their Environment, and on that basis deny them.

15.     In response to the allegations contained first sentence in Paragraph 15, Defendants admit that the Secretary of the Interior is charged with administering the Endangered Species Act ("ESA") with respect to certain species and that the Secretary of the Interior has delegated his authority to the United States Fish and Wildlife Service.  The allegations contained in the second sentence of Paragraph 15 are conclusions of law to which no response is required.  The allegations contained in the third sentence to Paragraph 15 constitute Plaintiffs' characterization of their case to which no response is required.

## Legal Framework

16.     The allegations contained in Paragraph 16 contain Plaintiffs' characterization of the ESA, which speaks for itself and provides the best evidence of its contents.  Any allegations contrary to its plain language and meaning are denied.

17.     The allegations contained in Paragraph 17 contain Plaintiffs' characterization of the ESA, which speaks for itself and provides the best evidence of its contents.  Any allegations contrary to its plain language and meaning are denied.

18.     The allegations contained in Paragraph 18 contain Plaintiffs' characterization of the ESA, which speaks for itself and provides the best evidence of its contents.  Any allegations contrary to its plain language and meaning are denied.

19.     The allegations contained in Paragraph 19 contain Plaintiffs' characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the

best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

20. The allegations contained in Paragraph 20 contain Plaintiffs' characterization of the ESA and its implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

21. The allegations contained in Paragraph 21 contain Plaintiffs' characterization of the ESA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

22. The allegations contained in Paragraph 22 contain Plaintiffs' characterization of the ESA and its implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

23. The allegations contained in Paragraph 23 contain Plaintiffs' characterization of the ESA and its implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

24. The allegations contained in Paragraph 24 contain Plaintiffs' characterization of the ESA and its implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

25. The allegations contained in Paragraph 25 contain Plaintiffs' characterization of the ESA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

26. The allegations contained in Paragraph 26 contain Plaintiffs' characterization of

the ESA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

27. The allegations contained in Paragraph 27 contain Plaintiffs' characterization of the ESA and its implementing regulations, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

28. The allegations contained in Paragraph 28 contain Plaintiffs' characterization of the ESA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

29. The allegations contained in Paragraph 29 contain Plaintiffs' characterization of the ESA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

30. The allegations contained in Paragraph 30 contain Plaintiffs' characterization of a Federal Register notice, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

31. The allegations contained in Paragraph 31 contain Plaintiffs' characterization of the *Policy Regarding the Recognition of Distinct Population Segments Under the ESA*, 61 Fed. Reg. 4722 (Feb. 7, 1996) ("DPS Policy"), which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

32. The allegations contained in Paragraph 32 contain Plaintiffs' characterization of the DPS Policy, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

33. The allegations contained in Paragraph 33 contain Plaintiffs' characterization of the DPS Policy, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

34. The allegations contained in Paragraph 34 contain Plaintiffs' characterization of the DPS Policy, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

35. The allegations contained in Paragraph 35 contain Plaintiffs' characterization of the DPS Policy, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

36. The allegations contained in Paragraph 36 contain Plaintiffs' characterization of the DPS Policy, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

37. The allegations contained in Paragraph 37 contain Plaintiffs' characterization of the Administrative Procedure Act ("APA"), which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

38. The allegations contained in Paragraph 38 contain Plaintiffs' characterization of the APA, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

**Factual Background**

39. In response to the allegation contained in Paragraph 39, Defendants admit that "Gray wolves are the largest wild members of the Canidae, or dog family, with adults ranging from 18 to 80 kilograms (kg) (40 to 175 pounds (lb)) depending upon sex and subspecies (Mech 1974). The average weight of male wolves in Wisconsin is 35 kg (77 lb) and ranges from 26 to 46 kg (57 to 102 lb), while females average 28 kg (62 lb) and range from 21 to 34 kg (46 to 75 lb) (Wisconsin Department of Natural Resources (WI DNR) 1999). Midwest wolf packs tend to occupy territories on the lower end of this size range." 71 Fed. Reg. at 15266. With regard to the allegations in Paragraph 39 concerning the gray wolf's range, Defendants admit that "Packs typically occupy, and defend from other packs and individual wolves, a territory of 50 to 550

square kilometers (km) (20 to 214 square miles (mi))." Id. at 15267. Any allegations contained in Paragraph 39 that are contrary to the foregoing or not otherwise admitted are denied.

      40.      In response to the allegations in Paragraph 40 regarding the gray wolf's preferred prey, Defendants admit that "Wolves primarily are predators of medium and large mammals. Wild prey species in North America include white-tailed deer (Odocoileus virginianus) and mule deer (O. hemionus), moose (Alces alces), elk (Cervus elaphus), woodland caribou (Rangifer caribou) and barren ground caribou (R. arcticus), bison (Bison bison), muskox (Ovibos moschatus), bighorn sheep (Ovis canadensis) and Dall sheep (O. dalli), mountain goat (Oreamnos americanus), beaver (Castor canadensis), snowshoe hare (Lepus americanus), and muskrat (Ondatra zibethicus), with small mammals, birds, and large invertebrates sometimes being taken (Chavez and Gese 2005, Mech 1974, Stebler 1944, WI DNR 1999, Huntzinger et al. 2005). In the [Western Great Lakes DPS], during the last 25 years, wolves have also killed domestic animals including horses (Equus caballus), cattle (Bos taurus), sheep (Ovis aries), goats (Capra hircus), llamas (Lama glama), pigs (Sus scrofa), geese (Anser sp.), ducks (Anas sp.), turkeys (Meleagris gallopavo), chickens (Gallus sp.), guinea fowl (Numida meleagris), pheasants (Phasianus colchicus), dogs, cats (Felis catus), and captive white-tailed deer (Paul 2004, 2005; Wydeven 1998; Wydeven et al. 2001; Wydeven and Wiedenhoeft 1999, 2000, 2001, 2005)." Id. at 15266-67. Any allegations contained in Paragraph 40 that are contrary to the foregoing or not otherwise admitted are denied.

      41.      In response to the allegations contained in Paragraph 41, Defendants admit that wolves are habitat generalists whose historical range included a majority of North America, including the Great Lakes region. The remaining allegations contained in Paragraph 41 are denied.

      42.      In response to the allegation contained in the first and second sentences of Paragraph 42, Defendants admit that "Wolves are social animals, normally living in packs of 2 to

12 wolves." 71 Fed. Reg. at 15266-67. In response to the allegations contained in the third sentence in Paragraph 42, Defendants admit that "Michigan Upper Peninsula territories averaged 267 km in 2000-2001 (Drummer et al. 2002), Wisconsin territories 37 mi[les] in 2004-2005 (Wydeven and Wiedenhoeft 2005), and Minnesota territory size averaged 102 km in 2003-2004 (Erb and Benson 2004)." Id. With regard to the fourth and fifth sentences of Paragraph 42, Defendants admit that "Packs are primarily family groups consisting of a breeding pair, their pups from the current year, offspring from one or two previous years, and occasionally an unrelated wolf. . . . Normally, only the top-ranking ("alpha") male and female in each pack breed and produce pups." Id. Any allegations contained in Paragraph 42 that are contrary to the foregoing or not otherwise admitted are denied.

43.     In response to the allegations contained in Paragraph 43, Defendants admit that "[y]earling wolves frequently disperse from their natal packs, although some remain with their natal pack. Adult wolves and pups older than 5 months also may disperse but at much lower frequencies (Fuller 1989). Dispersers may range over large areas as lone animals after leaving their natal pack or they may locate suitable unoccupied habitat and a member of the opposite sex and begin their own pack. These dispersal movements allow a wolf population to quickly expand and colonize areas of suitable habitat that are nearby or even those that are isolated by a broad area of unsuitable habitat." 71 Fed. Reg. at 15267. Any allegations contained in Paragraph 43 that are contrary to the foregoing or not otherwise admitted are denied. Defendants further aver that dispersal is crucial to the *early stages* of wolf recovery and that, with regard to the Western Great Lakes DPS, there are few, if any, remaining areas of suitable habitat available for dispersal.

44.     In response to the allegations contained in the first, second, and third sentences of Paragraph 44, Defendants deny that the ESA emphasizes one type of species (e.g., "umbrella species") over another. The allegations contained in the fourth and fifth sentences of Paragraph

9

44 characterize the ESA and its legislative history, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

45.     The allegations contained in Paragraph 45 are vague and ambiguous and are therefore denied.

46.     Defendants deny the allegations contained in Paragraph 46 to the extent that Plaintiffs allege that the gray wolf should not be delisted because it "tends to restore the natural balance of ecosystems." The remaining allegations contained in Paragraph 46 are vague and ambiguous and are therefore denied.

47.     The allegations contained in Paragraph 47 are vague and ambiguous and are therefore denied.

48.     In response to Paragraph 48, Defendants admit that the presence of wolves may benefit other species such as large ungulates and scavengers. To the extent that Plaintiffs allege that the gray wolf should not be delisted because its presence benefits other species, any such allegation is denied. Any remaining allegations contained in Paragraph 48 are denied.

49.     Defendants deny the allegations contained in Paragraph 49 to the extent that Plaintiffs allege that the gray wolf should not be delisted because it provides "other benefits to humans." Defendants admit the remaining allegations contained in Paragraph 49.

50.     Defendants are without knowledge or information sufficient to form a belief as to the contained in Paragraph 50 and on that basis deny them.

51.     Defendants admit the allegations contained in the first sentence of Paragraph 51. Defendants deny the allegations contained in the second sentence of Paragraph 51 and aver that the Mexican wolf is in fact a gray wolf. In response to the allegations contained in the third sentence of Paragraph 51, Defendants admit that gray wolf numbers began to drop as agricultural and industrial development spread over the North American continent. The allegations

contained in the fourth sentence of Paragraph 51 regarding "widespread persecution" are vague and ambiguous and are therefore denied.

52.     Defendants admit the allegations contained first sentence of Paragraph 52.  The allegations contained in second and third sentences in Paragraph 52 concerning an "aggressive" wolf control program and utilizing the phrase "almost entirely eradicated" are vague and ambiguous and are therefore denied.

53.     The allegations contained in the first and fourth sentences of Paragraph 53 concerning an unspecified "trend", "numerous gray wolves", and wolves that were "frequently killed" are vague and ambiguous and are therefore denied.  Defendants admit the allegations contained in the second and third sentences of Paragraph 53.

54.     Defendants admit the allegations contained in Paragraph 54.

55.     In response to the allegations contained in Paragraph 55, Defendants admit that the gray wolf was listed under the Endangered Species Preservation Act of 1966 and was subsequently listed under the ESA.  Defendants deny the allegations contained in the third sentence of Paragraph 55 and aver that various subspecies of wolves were listed in May of 1974 and May and June of 1976.   Any remaining allegations contained in Paragraph 55 are denied.

56.     In response to the allegations contained in Paragraph 56, Defendants admit that the FWS listed the gray wolf as an endangered species throughout the conterminous United States and Mexico, except in Minnesota, where wolves were listed as threatened.   Any remaining allegations contained in Paragraph 56 are denied.

57.     Defendants admit the allegations contained in Paragraph 57.

58.     Defendants admit the allegations contained in the first sentence of Paragraph 58. In response to the allegations contained in the second sentence of Paragraph 58, Defendants admit that the Minnesota gray wolf population increased from approximately 1235 in 1978-79, to approximately 1500 or 1750 (separately calculated estimates) in 1988-89, to 2445 in

1997-98 and further aver that the gray wolf population in Minnesota was estimated have increased to approximately 3020 in 2003-04.  In response to the allegations contained in the third sentences of Paragraph 58, Defendants admit that the wolf population has recovered and increased its range as a result of its protected status.  Any remaining allegations contained in Paragraph 58 are denied.

59.    Defendants admit the allegations contained in the first and second sentences of Paragraph 59.  Defendants deny the allegations contained in the third and fourth sentences in Paragraph 59 and aver that the wolf population has recovered in the Great Lakes DPS and that the FWS does not make wolf population estimates but instead reviews, and if appropriate, accepts the population estimates developed by the various states.

60.    In response to the allegations contained in the first sentence of Paragraph 60, Defendants admit that the FWS' recovery and reintroduction program for gray wolves in the Northern Rocky Mountain Region has been highly successful and the NRM wolves have met the established recovery goals.  The allegations contained in the second sentence of Paragraph 60 are denied.

61.    The allegations contained in first and fourth sentences of Paragraph 61 regarding a "small portion" and "limited progress" are vague and ambiguous and are therefore denied. The allegations contained in the second and third sentences of Paragraph 61 are denied.

62.    Defendants deny the allegations contained in the first and third sentences of Paragraph 62 and aver that the FWS has permitted wolves to be taken pursuant to Section 10 of the ESA where such actions benefit the species as a whole and thereby promote wolf recovery. The allegations contained in the second and fourth sentences of Paragraph 62 attempt to characterize court decisions, which speak for themselves and provide the best evidence of their contents.   Any allegations contrary to their plain language and meaning are denied.

63.    The allegations contained in Paragraph 63 are denied.

64.     The allegations contained in Paragraph 64 characterize the proposed Reclassification Rule, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

65.     The allegations contained in Paragraph 65 characterize the Reclassification Rule, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied.

66.     The allegations contained in Paragraph 66 characterize various Federal Register Notices, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

67.     The allegations contained in Paragraph 67 characterize court proceedings and court decisions involving the Reclassification Rule, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

68.     The allegations contained in Paragraph 68 characterize court proceedings and court decisions involving the Reclassification Rule, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

69.     The allegations contained in the first sentence of Paragraph 69 are denied. In response to the allegations contained in the second and third sentences of Paragraph 69, Defendants admit that the State of Wisconsin applied for, and the FWS subsequently issued, a permit under Section 10(a)(1)(A) of the ESA. The allegations contained in the fourth and sixth sentences of Paragraph 69 characterize court proceedings and court decisions, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied. In response to the allegations contained in the fifth sentence of Paragraph 69, Defendants admit that notice of the State of Wisconsin's permit

application was published in the Federal Register and that in April of 2006 the FWS issued a permit authorizing Wisconsin to take up to 43 depredating wolves under certain limited circumstances.  Any remaining allegations contained in Paragraph 69 are denied.

70.     Defendants deny the allegations contained in the first sentence of Paragraph 70 to the extent that it is alleged that the delisting action at issue in this case was driven by something other than the best available scientific information.  Defendants admit the allegations contained in the second sentence of Paragraph 70.

71.     The allegations contained in Paragraph 71 are denied.

72.     Defendants admit the allegations contained in the first sentence of Paragraph 72. The allegations contained in the second sentence of Paragraph 72 characterize the proposed rule, which speaks for itself and provides the best evidence of its contents.  Any allegations contrary to its plain language and meaning are denied.

73.     In response to the allegations contained in the first sentence of Paragraph 73, Defendants admit that comments were received in response to the proposed rule expressing both support and opposition to the proposed action.  Defendants deny the remaining allegations contained in Paragraph 73 and aver that, because the best available scientific information overwhelmingly supported the FWS' proposed action, comments to the contrary were unpersuasive.

74.     Defendants admit the allegations contained in the first sentence of Paragraph 74. The remaining allegations contained in Paragraph 74 characterize the Final Rule, which speaks for itself and provides the best evidence of its contents.  Any allegations contrary to its plain language and meaning are denied.

75.     Defendants deny the allegations contained in Paragraph 75.

76.     Defendants deny the allegations contained in Paragraph 76.

77.     Defendants deny the allegations contained in Paragraph 77.

78. Defendants deny the allegations contained in Paragraph 78.

79. The allegations contained in the first sentence of Paragraph 79 are conclusions of law to which no response is required. To the extent that a response is deemed required, the allegations contained in the first sentence of Paragraph 79 are denied. The remaining allegations contained in Paragraph 79 are denied.

80. Defendants deny the allegations contained in Paragraph 80.

81. Defendants deny the allegations contained in Paragraph 81.

82. In response to the allegations contained in Paragraph 82, Defendants admit that financial resources are required to manage wolves; that the FWS expended funds on wolf management prior to delisting; and that the States are responsible for wolf management after delisting. The remaining allegations contained in Paragraph 82 are denied.

83. The allegations contained in the first, third, and eighth sentences of Paragraph 83 characterize the Final Rule and the Minnesota Wolf Management Plan, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied. Defendants deny the allegations contained in second clause of the second sentence in Paragraph 83. In response to the allegations contained in the fourth sentence of Paragraph 83, Defendants admit that Minnesota DNR was accepting applications for the position of "Wolf Specialist" and that Minnesota DNR had designated three conservation officers as lead gray wolf enforcement officers. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 83 concerning Minnesota DNR's present personnel actions; whether anyone in the State of Minnesota has expressed concerns about funding; or Plaintiffs' "belief", and on that basis deny them.

84. Defendants admit that certain states within the Great Lakes DPS do not have wolf management plans. Defendants deny the remaining allegations contained in Paragraph 84.

85.     Defendants deny the allegations contained in the first, third, fourth, and fifth sentences of Paragraph 85.  The allegations contained in the second sentence of Paragraph 85 regarding "enormous discretion" are vague and ambiguous and are therefore denied. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the sixth sentence of Paragraph 85 concerning the reporting of an unnamed "local new source", and on that basis deny them.

86.     The allegations contained in the first sentence of Paragraph 86 characterize the state wolf management plans, which speak for themselves and provide the best evidence of their contents.  Any allegations contrary to their plain language and meaning are denied.  The allegations contained in the second sentence of Paragraph 86 are conclusions of law to which no response is required.   The allegations contained in the third sentence of Paragraph 86 are denied.

87.     Defendants deny the allegations contained in the first, second, third, and sixth sentences of Paragraph 87.  Defendants admit the allegations contained in the fourth and fifth sentences of Paragraph 87.

88.     Defendants deny the allegations contained in Paragraph 88 except to admit that disease and illegal takes have both resulted in a small number of wolf mortalities in Wisconsin.

89.     Defendants deny the allegations contained in the first sentence of Paragraph 89. The allegations contained in the second sentence of Paragraph 89 characterize the Eastern Timber Wolf Recovery Plan ("recovery plan"), which speaks for itself and provides the best evidence of its contents.  Any allegations contrary to its plain language and meaning are denied.

90.     The allegations contained in the first, second, third, and fourth sentences of Paragraph 90 characterize the recovery plan, which speaks for itself and provides the best evidence of its contents.  Any allegations contrary to its plain language and meaning are denied. Defendants deny the allegations contained in the fifth sentence of Paragraph 90.

91.     Defendants deny the allegations contained in the first sentence of Paragraph 91.

The allegations contained in the second and third sentences of Paragraph 91 characterize a 1998 document, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied. The allegations contained in the fourth sentence of Paragraph 91 are conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants deny the allegations contained in the fourth sentence of Paragraph 91.

92. Defendants deny the allegations contained in Paragraph 92 and aver that in 1981 the Recovery Team made clear that rangewide establishment (including populations in the Adirondack Mountains, New Hampshire, or Maine) were not required before delisting could occur.

93. In response to the allegations contained in the first sentence of Paragraph 93, Defendants deny that the Final Rule and NRM Proposed Rule are a "tandem" effort and aver that they are two separate rulemakings. The allegations contained in the second sentence of Paragraph 93 characterizes the NRM Proposed Rule, which speaks for itself and provides the best evidence of its contents. Any allegations contrary to its plain language and meaning are denied. Defendants deny the allegations contained in the third sentence of Paragraph 93.

94. Defendants deny the allegations contained in the first sentence of Paragraph 94. Defendants admit the allegations contained in the second sentence of Paragraph 94 and aver that this fact is completely irrelevant to the issue before the Court in this case. The allegations in the third sentence of Paragraph 94 regarding "numerous petitions" are vague and ambiguous and are therefore denied.

95. Defendants deny the allegations contained in the first sentence of Paragraph 95. The allegations contained in the second and third sentence of Paragraph 95 characterize Federal Register notices, which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain language and meaning are denied.

96.     In response to the allegations contained in Paragraph 96, Defendants admit that Plaintiffs sent letters purporting to provide Defendants 60-day notice of Plaintiffs' intent to file the instant action. The remaining allegations contained in Paragraph 96 are denied.

## Claims for Relief

97.     Defendants incorporate by reference each and every response to the allegations contained in Paragraphs numbered 1 through 96 above.

98-111.   The allegations contained in Paragraphs 98 through 111 are conclusions of law to which no response is required. To the extent that a response is deemed required, the allegations in Paragraphs 98 through 111 are denied.

## Prayer for Relief and Conclusion

The remaining allegations in the Complaint constitute Plaintiffs' request for relief to which no further response is required. Defendants deny that Plaintiffs are entitled to any relief whatsoever. Any of Plaintiffs' allegations not admitted in the preceding Paragraphs are hereby denied.

WHEREFORE, Defendants respectfully request that this Court enter judgment for Defendant, with the parties to bear their own costs and attorney's fees.

DATED this 18th day of June, 2007          Respectfully Submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
JEAN E. WILLIAMS, Chief
Wildlife and Marine Resources Section

s/ Jimmy A. Rodriguez
JIMMY A. RODRIGUEZ, Trial Attorney
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
(202) 305-0342

Attorneys for Defendants