# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The Humane Society of the United States; Help Our Wolves Live ("HOWL"); Animal Protection Institute; and Friends of Animals and Their Environment,<br><br>                     Plaintiffs,<br><br>          v.<br><br>Dirk Kempthorne, Secretary of the Interior; United States Department of the Interior; and United States Fish and Wildlife Service,<br><br>                     Defendants,<br><br>U.S. Sportsmen's Alliance Foundation; Wisconsin Bear Hunters Association; *et al.*,<br><br>                     Intervenor-Defendants,<br><br>Safari Club International; National Rifle Association; *et al.*,<br><br>                     Intervenor-Defendants. | **Civil No. 1:07-cv-00677-PLF** |

## REPLY MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD

As discussed in Plaintiffs' opening memorandum, Proposed Exhibit E contains information that is directly relevant to the Final Rule's assumptions about the state wolf management plans. *See* 72 Fed. Reg. 6052, 6068 (Feb. 8, 2007) (assuming that the state "plans will be funded and implemented largely as written"). The Defendants oppose admission of this document, arguing that the exceptions identified in *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989), apply only to procedural deficiencies and that the exception for "evidence arising after the agency action" is simply dicta. Federal Defendants' Opp. at 4-7; Intervenors' Opp. at 8-12.

These objections are without merit, and the administrative record should be supplemented with Plaintiffs' Proposed Exhibit E.

## BACKGROUND

On April 10, 2007, Plaintiffs' counsel submitted a request to the Minnesota Department of Natural Resources ("DNR") pursuant to the Minnesota Data Practices Act. *See* Minn. Stat. § 13.03, subd. 3. A copy of that request is attached as Exhibit F.[1] In the request, Plaintiffs' counsel sought four categories of information:

> (1) DNR records regarding the creation of new positions for a wolf specialist, wolf research biologist, and/or three conservation officers. *See* Minnesota Wolf Management Plan (Feb. 2001), at 4 (the "MN Plan").
>
> (2) DNR records regarding the hiring of individuals for the five staff positions listed above. MN Plan at 4.
>
> (3) DNR records indicating the funds budgeted and/or spent for the wolf management plan during fiscal years 2002-2007. *Cf.* MN Plan, Appendix II (recommending budget appropriations for the wolf management program).
>
> (4) All DNR records regarding the DNR and/or the Governor's budget recommendations or requests for the wolf management program in fiscal years 2008, 2009, or any year thereafter. *Cf.* MN Plan, Appendix II.

Plaintiffs' counsel framed these requests broadly to ensure that the Minnesota DNR would identify all "funds budgeted and/or spent" in furtherance of Minnesota's wolf management plan. Exhibit F at 1. To that end, counsel referenced the budget set forth in Appendix II of the Minnesota plan. *See* Administrative Record Document ("AR Doc.") 215 at 5292-93. In addition, contrary to Intervenors' suggestion, Plaintiffs' counsel specifically

---

[1] Plaintiffs are not seeking to supplement the administrative record with Exhibit F; Plaintiffs' counsel has attached this exhibit merely to clarify the scope of the Data Practices Act request. To avoid any possible confusion with the exhibits attached to Plaintiffs' Motion for Summary Judgment, this document has been designated as Exhibit F.

requested budgetary information relating to the "wolf management activities of . . . USDA Wildlife Services[] or any other governmental entity." *Id.* at 1-2; *cf.* Intervenors' Opp. at 4 n.2 (stating that "this request was read to exclude federal funds provided to the DNR for wolf management"). Plaintiffs' counsel thus sought to gain complete information on funding for Minnesota's wolf management plan.

In response to this request, the Minnesota DNR produced no records mentioning wolf management activities by USDA Wildlife Services and other governmental agencies. The DNR did, however, provide a spreadsheet which it represented as summarizing the "funds budgeted and spent for wolf management" in Minnesota. Proposed Exhibit E at E-02, -16.

The opposition briefs suggest that Plaintiffs are seeking to add numerous extra-record documents to the record, and that Plaintiffs' summary judgment brief includes lengthy arguments based on those documents. *See, e.g.*, Intervenors' Opp. at 12 (claiming prejudice from "the presence of the references and argument based on the extra-record documents"). Far from it. Plaintiffs cite to Proposed Exhibit E *once* in their entire 43-page summary judgment brief, and only for the single proposition "that for the foreseeable future only $144,000 annually has been budgeted for wolf management activities." Memo. of Law in Support of Plaintiffs' Mot. for Summary Judgment at 38 (hereafter "Summary Judgment Br."). Moreover, because Plaintiffs have only discussed the budgetary information in Proposed Exhibit E (much of it *historical* budgetary information), and because budgets do not change on a month-to-month basis, there is no risk that the admission of this document will provide an inaccurate "snapshot" of Minnesota's

3

wolf management efforts.[2]  *Cf.* Intervenors' Opp. at 3; Federal Defendants' Opp. at 7.

## ARGUMENT

As the Court of Appeals explained in *Esch*, there are several exceptions to the general rule that judicial review of agency action is limited to the administrative record. *Humane Soc'y of the United States v. Dep't of Commerce*, 432 F. Supp. 2d 4, 14 (D.D.C. 2006) ("*HSUS*") (citing *Esch*, 876 F.2d at 991).  In this case, there are two reasons why the administrative record should be supplemented by Proposed Exhibit E.  First, the proffered document falls squarely within this Circuit's rule allowing supplementation in cases where "evidence arising after the agency action shows whether the decision was correct or not." *HSUS*, 432 F. Supp. 2d at 14 (quoting *Esch*, 876 F.2d at 991).  Second, the proffered document can be admitted because the U.S. Fish and Wildlife Service ("FWS") "failed to consider factors which are relevant to its final decision." *HSUS*, 432 F. Supp. 2d at 14 (quoting *Esch*, 876 F.2d at 991).

Finally, although Plaintiffs oppose Federal Defendants' request to reopen the administrative record, Plaintiffs agree with Intervenors that the Declaration of Daniel Stark ("Stark Declaration") contains relevant budgetary information that was omitted from the Minnesota DNR's response to Plaintiffs' Data Practices Act request.  Accordingly, Plaintiffs do not oppose supplementation of the record with the relevant, factual portions of the Stark Declaration.

---

[2] Proposed Exhibit E contains budgetary information on Minnesota's wolf management program for fiscal years 2002 through 2009.  Proposed Exhibit E at E-16.  Plaintiffs are aware that the Minnesota DNR hired a wolf specialist in late summer, and neither their summary judgment brief nor statement of facts claims that this position is currently unfilled.

4

I.   **THE ADMINISTRATIVE RECORD SHOULD BE SUPPLEMENTED WITH PROPOSED EXHIBIT E.**

   A.   **The Proffered Document Shows Whether The Final Rule's Assumptions Were Correct Or Not.**

In *Esch*, the Court of Appeals identified eight exceptions to the general rule confining judicial review to the administrative record. 876 F.2d at 991; *see also Am. Rivers v. U.S. Army Corps of Eng'rs*, 271 F. Supp. 2d 230, 247 (D.D.C. 2003) (noting "that the *Esch* decision described the instances in which supplementation of the administrative record is allowed"). One of those exceptions is "in cases where evidence arising after the agency action shows whether the decision was correct or not." 876 F.2d at 991. This exception has been long recognized in this Circuit.

The Court of Appeals first applied this rule in *Amoco Oil Company v. EPA*, which involved a challenge to EPA's fuel additive regulations. 501 F.2d 722 (D.C. Cir. 1974). EPA moved to supplement the record with several documents, including congressional testimony that was given after the regulations had been issued. *Id.* at 729 n.10. The court admitted this document, noting that although this testimony "was not a factor in the Agency's original decision-making[,] . . . the testimony bears directly upon the plausibility of certain predictions made by the Administrator in promulgating the Regulations." *Id.* Though warning that "[a] reviewing court must tread cautiously in considering events occurring subsequent to promulgation of a rule," the court allowed this evidence "indicat[ing] the truth or falsity of agency predictions." *Id.* Since then, the exception has been applied repeatedly by courts within this Circuit. *See, e.g.*, *HSUS*, 432 F. Supp. 2d at 15 (allowing supplementation of the record with

documents that "have a direct bearing on the correctness of the agency's decision");[3] *Nat'l Trust for Historic Preservation v. Blanck*, 938 F. Supp. 908, 916 n.10 (D.D.C. 1996) (permitting supplementation of the record based on, *inter alia*, the exception for evidence arising after the agency action); *Sea Watch Int'l v. Mosbacher*, 762 F. Supp. 370, 381 (D.D.C. 1991) (considering a post-decisional report because "information subsequent to an agency decision may be considered if it 'bears directly upon the plausibility of certain predictions made . . . in promulgating the [r]egulations'") (quoting *Amoco Oil*, 501 F.2d at 729 n.10); *LeBoeuf, Lamb, Green & MacRae LLP v. Abraham*, 215 F. Supp. 2d 73, 82 (D.D.C. 2002) (applying the exception for evidence arising after the agency action), *rev'd on other grounds*, 347 F.3d 315 (D.C. Cir. 2003).[4]

The Defendants nevertheless argue that this exception does not apply because Plaintiffs have not alleged a procedural flaw in FWS's decisionmaking process. Federal Defendants' Opp. at 4-6; *see also id.* at 5 ("the plaintiffs are not challenging . . . whether the agency failed to consider relevant factors"); Intervenors' Opp. at 10. That argument is flawed for two reasons. First, as discussed in Part I.B below, Plaintiffs *have* argued that FWS failed to consider a

---

[3] Federal Defendants incorrectly assert that *HSUS* "did not apply . . . the 'evidence arising after the agency action' exception." Federal Defendants' Opp. at 5 n.2, 6. A careful reading of *HSUS* demonstrates that the Court did apply that exception in allowing supplementation of the record. *Compare HSUS*, 432 F. Supp. 2d at 14 (citing the exception for where "evidence arising after the agency action shows whether the decision was correct or not") *with id.* at 15 (permitting supplementation because the proffered documents "have a direct bearing on the correctness of the agency's decision").

[4] Federal Defendants cite *Southwest Center for Biological Diversity v. Norton* in their opposition brief, but the Court there actually considered the merits of the extra-record evidence. Civ. No. 98-934 (RMU/JMF), 2002 WL 1733618 at *8 (D.D.C. July 29, 2002) (concluding that "the addition of Lande's declaration is a nonstarter, for it cannot be said to taint FWS's final decision").

relevant factor in issuing the Final Rule. Second, although supplementation is granted more readily in cases where the procedural validity of agency action is in question, *Esch*, 876 F.2d at 991, the exception for post-decisional evidence is not limited to cases involving procedural challenges. As one of Federal Defendants' own authorities recognized, *Esch* "did not limit its holding to cases of procedural violations but expounded generally on eight factors that may warrant consideration of evidence not in the administrative record." *Peterson Farms I v. Espy*, No. 92-5243, 1994 WL 26331 at **3 (D.C. Cir. Jan. 25, 1994) (citing *Esch*, 876 F.2d at 991).[5] Indeed, this exception has been applied in numerous cases involving substantive, rather than procedural, challenges. *See HSUS*, 432 F. Supp. 2d at 15 (admitting documents pertinent to a substantive challenge to an agency's decision not to prepare an environmental impact statement); *Nat'l Trust*, 938 F. Supp. at 916 n.10 (permitting supplementation of the record for a substantive challenge under the National Historic Preservation Act); *Sea Watch*, 762 F. Supp. at 381 (permitting supplementation for a substantive challenge to agency regulations); *see also Carlton v. Babbitt*, 26 F. Supp. 2d 102, 108 (D.D.C. 1998) (permitting supplementation of the record with a declaration in a case involving agency findings promulgated under the Endangered Species Act).

Federal Defendants further object to supplementation because "Esch and HSUS never expressly *adopted* the 'evidence arising after the agency action' exception." Federal Defendants' Opp. at 6; *see also* Intervenors' Opp. at 9, 10 (characterizing this exception as "dicta"). But the Court in *HSUS* did, in fact, apply this exception. *HSUS*, 432 F. Supp. 2d at 15; *see supra* at 5

---

[5] The *Peterson* court's disagreement with *Esch*, and the basis for its conclusion that *Esch*'s "probative value . . . is limited," involved 7 U.S.C. § 1385, an agricultural statute not in contention here. 1994 WL 26331 at **3.

7

n.3. Moreover, even though the D.C. Circuit did not "expressly" adopt this exception in *Esch*, that is inconsequential because it had already so in *Amoco Oil*. 501 F.2d at 729 n.10. And even *if* this exception had never been formally adopted by the D.C. Circuit, that would not preclude this Court from applying the exception here. As noted above, courts within this Circuit have frequently applied this exception in similar cases. *See, e.g.*, *HSUS*, 432 F. Supp. 2d at 15; *Nat'l Trust*, 938 F. Supp. at 916; *Sea Watch*, 762 F. Supp. at 381.

Finally, Federal Defendants argue that allowing supplementation here would "open the door for numerous supplements to the record and would make it impossible for an agency to determine the bounds of its record." Federal Defendants' Opp. at 6. Intervenors go further still, arguing that this exception "would basically impose upon decision-making agencies the obligation to be prescient." Intervenors' Opp. at 11. Those fears are entirely unfounded. Plaintiffs' request to supplement the record with a single 17-page document poses no threat to the general rule that judicial review is based on the administrative record. Plaintiffs seek to provide important information from a state agency that relates directly to a central assumption of the Final Rule, namely, that the state wolf management plans "will be funded and implemented largely as written." 72 Fed. Reg. at 6068. Because Proposed Exhibit E bears directly on that assumption, and because this Court may consider information that "indicate[s] the truth or falsity of agency predictions," supplementation is appropriate here. *Amoco Oil*, 501 F.2d at 729 n.10.

### B. Alternatively, This Court Should Permit Supplementation Because FWS Failed To Consider A Factor Relevant To The Final Rule.

Although Proposed Exhibit E should be admitted under the "evidence arising after the agency action" exception, supplementation is also appropriate because the "agency failed to consider factors which are relevant to its final decision." *Esch*, 876 F.2d at 991.

The budgetary information that Plaintiffs seek to admit was not freshly created after the

Final Rule's publication. Indeed, much of this information concerns Minnesota's *past* funding for wolf management. *See* Proposed Exhibit E at E-16 ("Funds Allocated and Expended for Wolf Mangement [*sic*] Activity FY2002 - 2009"). Most, if not all, of this information was available prior to the Final Rule's release; FWS just had to ask for it.

In their summary judgment brief, Plaintiffs explained how FWS wrongly assumed that the state wolf management plans would be "funded and implemented largely as written." *See* Summary Judgment Br. at 37-39. Indeed, though Plaintiffs specifically warned about the lack of funding in their comments on the proposed rule, AR Doc. 228 at 7785-87, FWS failed to investigate whether these concerns were warranted. Instead, the agency simply assumed that adequate funding would be provided. 72 Fed. Reg. at 6068; *see also* Mem. in Support of Plaintiffs' Mot. to Supplement the Record at 2, 4 (discussing Plaintiffs' concerns and FWS's response).

By neglecting to investigate whether sufficient funds had been allocated for wolf management in Minnesota, FWS failed to consider the issue of state funding. The agency's failure to consider a factor crucial to the Final Rule justifies supplementation of the record here. *See Esch*, 876 F.2d at 991; *Southwest Ctr. for Biological Diversity v. Babbitt*, 131 F. Supp. 2d 1, 8 (D.D.C. 2001) (noting that "consideration of the intermediary evidentiary factors which lead to the ultimate conclusion are the very means by which the agency renders its decision, and, generally speaking, any of them can be a 'relevant factor' justifying supplementation of the administrative record if ignored"). Because Plaintiffs specifically raised the issue of inadequate state funding, and because FWS failed to consider the basis for its optimistic assumptions,

Proposed Exhibit E should be admitted into the record.[6]

If this Court denies Plaintiffs' motion to supplement, the Court should reject Intervenors' request that Plaintiffs' Motion for Summary Judgment be denied and that Plaintiffs be forced to refile. *See* Intervenors' Opp. at 12-13. Though failing to identify any rule of procedure that was broken, Intervenors nevertheless accuse Plaintiffs of impropriety for citing Proposed Exhibit E in their summary judgment brief.[7] Intervenors' claims of prejudice, and their suggestion that

---

[6] Federal Defendants also oppose supplementation because "Plaintiffs have unnecessarily delayed moving to supplement the record." Federal Defendants' Opp. at 8. Federal Defendants provide no D.C. authority in support of this argument, and the two out-of-Circuit cases they cite are inapposite. In *New River Valley Greens v. United States Department of Transportation*, the parties seeking supplementation filed their request *after* a court-mandated deadline had passed. No. 96-2545, 1997 WL 712887 at *3 (4th Cir. Nov. 17, 1997) ("The court defers to the right of a district court to set and enforce the discovery deadlines."). Plaintiffs, by contrast, have adhered to this Court's deadlines. In *Wildwest Institute v. Bull*, the court's ruling was based primarily on the substantive deficiencies of the proffered document. 468 F. Supp. 2d 1234, 1248 (D. Mont. 2006). That case is further distinguishable because the parties filed their motion more than two weeks after all summary judgment briefing had been completed. *Id.*

In any event, Plaintiffs dispute Federal Defendants' claim of inexcusable delay. Given the size of the administrative record, it took a considerable amount of time to review the record and determine whether there was a factual basis for FWS's assertion that the state management plans would "be funded and implemented largely as written." 72 Fed. Reg. at 6068. And even if Plaintiffs' counsel had filed this motion a few weeks earlier, it is unlikely that briefing would have been completed and the issue decided prior to November 14, the due date for Plaintiffs' summary judgment brief. Finally, Federal Defendants were not prejudiced by any lack of timeliness; they sought and received an extension of time to file their opposition brief. *See* Docket Entry No. 30 (Nov. 23, 2007).

[7] Plaintiffs are aware of several cases from this Court where the movant attached extra-record documents to its motion for summary judgment and/or referenced those documents in its summary judgment brief. Those decisions give no indication that doing so was improper. *See Lake Pilots Ass'n v. U.S. Coast Guard*, 257 F. Supp. 2d 148, 163-65 (D.D.C. 2003) (considering whether to admit a declaration attached to the plaintiffs' motion for summary judgment); *LeBoeuf*, 215 F. Supp. 2d at 81-82 (considering a declaration attached to the defendants' reply brief); *Southwest Center*, 2002 WL 1733618 at *7 (considering a declaration attached to the plaintiffs' summary judgment brief); *Sea Watch*, 762 F. Supp. at 381 (permitting supplementation of the administrative record with documents attached to the plaintiffs' summary judgment brief). Indeed, in *HSUS* the Court permitted supplementation where the plaintiffs filed their motion to supplement more than a month *after* filing a summary judgment brief that

(continued on next page)

Plaintiffs' citation to Proposed Exhibit E has created a "morass," are wildly overblown. As previously noted, Plaintiffs mentioned Proposed Exhibit E only *once* in their 43-page summary judgment brief, and that reference was for the simple assertion that Minnesota's wolf management program is underfunded. In their opposition to this motion, Intervenors have already devoted substantial effort to contesting that assertion. *See* Intervenors' Opp. at 5-7 ("Although HSUS *et al.* suggest that the plan called for $695,000 annual funding for wolf management, the state is now devoting in [*sic*] more than that figure on its wolf efforts."); *see generally* Stark Declaration. Because the only *possible* prejudice would be the need to respond to Plaintiffs' funding assertion, and because Intervenors have already had ample opportunity to do so, there is no basis for requiring Plaintiffs to refile their summary judgment brief. If this Court denies Plaintiffs' motion to supplement, the Court should simply disregard the single reference to Proposed Exhibit E in the summary judgment brief and the single reference in Plaintiffs' statement of facts.[8]

## II. PLAINTIFFS DO NOT OPPOSE SUPPLEMENTATION OF THE RECORD WITH THE RELEVANT, FACTUAL PORTIONS OF THE STARK DECLARATION.

Plaintiffs' Data Practices Act request specifically sought information about funding of wolf management activities by USDA Wildlife Services or other governmental entities. *See* Exhibit F at 1-2. In response to this pointed request, the Minnesota DNR gave no indication that

---

(continued from previous page)

referenced the extra-record documents. *See HSUS*, 432 F. Supp. 2d at 15; *HSUS*, Civ. No. 05-1392 (ESH), Docket Entry No. 20 (Feb. 21, 2006) (motion to supplement).

[8] This remedy was followed in *Lake Pilots*, where the Court decided not to consider a declaration that the plaintiff had attached to its summary judgment brief. Rather than deny the motion for summary judgment or force the plaintiff to refile, the Court simply "confine[d] its review to the administrative record." 257 F. Supp. 2d at 165. Should this Court deny Plaintiffs' request, it could follow the same procedure here.

Minnesota's wolf management program was being federally funded. And though the DNR previously indicated that only $144,000 had been allocated for wolf management, the DNR now claims that approximately $354,000 in state funds are being spent. *Compare* Proposed Exhibit E at E-02 (stating that "[r]ecords indicating funds budgeted and spent for wolf management may exist in many DNR locations," and that the enclosed spreadsheet provides a summary of those records) *with* Stark Decl. ¶ 6 (claiming that the spreadsheet in Proposed Exhibit E "accounts for only a portion of the funds that the Minnesota DNR and its agents are expending on wolf management"). Plaintiffs are troubled by the Minnesota DNR's omissions and misrepresentations in its response to the Data Practices Act request. Nevertheless, Plaintiffs recognize that the Stark Declaration contains information relevant to the funding of Minnesota's wolf management plan. Thus, Plaintiffs do not oppose Intervenors' request to admit the factual information included within the Stark Declaration.

     In admitting this document, though, the Court should strike those portions of Stark Declaration that are argumentative and/or conclusory. An administrative record should only be supplemented with "evidence that is not argumentative," *LeBoeuf*, 215 F. Supp. 2d at 82 – arguments should be reserved for motions and briefs. *See Corel Corp. v. United States*, 165 F. Supp. 2d 12, 31-32 (D.D.C. 2001) (refusing supplementation of the record with declarations that were argumentative rather than explanatory). Accordingly, Plaintiffs respectfully request that this Court only admit those portions of the Stark Declaration that are neither argumentative nor conclusory. Plaintiffs specifically object to the following portions of the Stark Declaration: (1) Paragraph 4; (2) Paragraph 17, first sentence; (3) Paragraph 18, fifth sentence; (4) Paragraph 20, first sentence.

Although the factual portions of the Stark Declaration should be admitted, this Court should reject Federal Defendants' request to reopen the administrative record. *See* Federal Defendants' Opp. at 7 (requesting permission to new add material that "may include, but would not be limited to, additional information (and/or explanations) from the Minnesota Department of Natural Resources," etc.). Doing so could allow FWS to backfill the record with a mountain of *post hoc* rationalizations and arguments. Indeed, Federal Defendants seek to add "a declaration from the FWS explaining the proper interpretation of the post-decisional materials," *id.* – a document that would be little more than an argumentative brief. Federal Defendants cite no authority for their request to reopen the record, nor could they.

Outside the narrow exceptions identified in *Esch* and similar cases, judicial review of agency action is "confined to the full administrative record before the agency *at the time the decision was made*." *HSUS*, 432 F. Supp. 2d at 14 (citing *Envtl. Def. Fund v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981)) (emphasis added). Consistent with that rule, courts have rejected agency efforts to introduce *post hoc* rationalizations into administrative review cases. *See Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1987) (noting the danger that extra-record review could allow an agency to "take advantage of post hoc rationalizations"); *id.* at 803 ("[T]he post hoc rationalizations of counsel are no substitute for consideration or reasoning during rulemaking."); *AT&T Info. Sys., Inc. v. Gen. Servs. Admin.*, 810 F.2d 1233, 1236 (D.C. Cir. 1987) (recognizing that "we have repeatedly . . . bar[red] introduction of litigation affidavits to supplement the administrative record"); *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134, 137 (D.D.C. 2002) (noting that a court "may not entertain *post hoc* rationalizations where no rationale was set forth before"); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("courts may not accept

13

appellate counsel's post hoc rationalizations for agency action"). In this case, allowing FWS to supplement the record with extensive documentation and arguments would, as Federal Defendants concede, lead to the creation of "some new record made initially at the reviewing court." Federal Defendants' Opp. at 7 (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729 743-44 (1985)). Because Federal Defendants' request far exceeds the limited exceptions identified in *Esch* and its progeny, this Court should deny their request to reopen the administrative record.

**CONCLUSION**

For the foregoing reasons, and for the reasons set forth in Plaintiffs' opening brief, the administrative record should be supplemented by the Minnesota DNR's April 19, 2007 Data Practices Act response.

Dated: December 17, 2007                                  Respectfully submitted,

                                                           /s/  Michael C. Soules & Rebecca G. Judd
                                                          Rebecca G. Judd, D.C. Bar No. 486315
                                                          rjudd@hsus.org
                                                          Jonathan R. Lovvorn, D.C. Bar No. 461163
                                                          jlovvorn@hsus.org
                                                          The Humane Society of the United States
                                                          2100 L Street, NW
                                                          Washington, DC  20037
                                                          (202) 452-1100
                                                          (202) 778-6132 (facsimile)

                                                          Brian B. O'Neill, Minn. Bar No. 82521
                                                          boneill@faegre.com
                                                          Sanne H. Knudsen, Minn. Bar No. 0344552
                                                          sknudsen@faegre.com
                                                          Michael C. Soules, D.C. Bar No. 477911
                                                          msoules@faegre.com
                                                          FAEGRE & BENSON LLP
                                                          2200 Wells Fargo Center
                                                          90 South Seventh Street
                                                          Minneapolis, MN  55402-3901
                                                          (612) 766-7000
                                                          (612) 766-1600 (facsimile)

                                                          *Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| The Humane Society of the United States; Help Our Wolves Live ("HOWL"); Animal Protection Institute; and Friends of Animals and Their Environment,<br><br>     Plaintiffs,<br><br>  v.<br><br>Dirk Kempthorne, Secretary of the Interior; United States Department of the Interior; and United States Fish and Wildlife Service,<br><br>     Defendants,<br><br>U.S. Sportsmen's Alliance Foundation; Wisconsin Bear Hunters Association; *et al.*,<br><br>     Intervenor-Defendants,<br><br>Safari Club International; National Rifle Association; *et al.*,<br><br>     Intervenor-Defendants. | **Civil No. 1:07-cv-00677-PLF** |

## SECOND DECLARATION OF MICHAEL SOULES
## IN SUPPORT OF PLAINTIFFS' MOTION TO SUPPLEMENT

I, Michael C. Soules, declare the following:

1. I am an attorney at the law firm of Faegre & Benson LLP, and am admitted *pro hac vice* in the above-captioned matter. I submit this declaration in support of Plaintiffs' Motion To Supplement The Record.

2. Attached hereto as Exhibit F is a true and correct copy of a letter from Michael C. Soules to the Minnesota Department of Natural Resources, dated April 10, 2007.

2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

December 17, 2007

_____
Michael C. Soules

*The Humane Society of The United States, et. al. v. Kempthorne, et al.,*
Civil No. 1:07-cv-00677-PLF

Plaintiffs' Motion To
Supplement The Record

Second Declaration of Michael Soules

# EXHIBIT F

FILE COPY

**FAEGRE & BENSON LLP**

UNITED STATES | ENGLAND | GERMANY | CHINA

MICHAEL C. SOULES
msoules@faegre.com
612.766.8237

April 10, 2007

**VIA CERTIFIED MAIL**

Minnesota Department of Natural Resources
Data Practices Compliance Official
500 Lafayette Road
St. Paul, MN 55155-4046

Re: Minnesota Data Practices Act Request

Dear Sir/Madam:

This letter is a request under the Minnesota Data Practices Act, Minn. Stat. § 13.03 subd. 3.

On behalf of The Humane Society of the United States, I request that the Minnesota Department of Natural Resources ("DNR") provide me with documents relating to Minnesota's wolf management program. In particular, I am seeking the following information:

(1) DNR records regarding the creation of new positions for a wolf specialist, wolf research biologist, and/or three conservation officers. See Minnesota Wolf Management Plan (Feb. 2001), at 4 (the "MN Plan").

(2) DNR records regarding the hiring of individuals for the five staff positions listed above. MN Plan at 4.

(3) DNR records indicating the funds budgeted and/or spent for the wolf management plan during fiscal years 2002-2007. Cf. MN Plan, Appendix II (recommending budget appropriations for the wolf management program).

(4) All DNR records regarding the DNR and/or the Governor's budget recommendations or requests for the wolf management program in fiscal years 2008, 2009, or any year thereafter. Cf. MN Plan, Appendix II.

The timeframe for items 1 and 2 of my request is from March 1, 2006, to the present. To the extent the DNR has knowledge of or access to budgetary information for the wolf

2200 WELLS FARGO CENTER | 90 SOUTH SEVENTH STREET | MINNEAPOLIS MINNESOTA 55402-3901
TELEPHONE 612-766-7000 | FACSIMILE 612-766-1600 | WWW.FAEGRE.COM

management activities of the Minnesota Department of Agriculture, USDA Wildlife Services, or any other governmental entity, my request encompasses those records as well.

HSUS is willing to pay the necessary copying charges. If these charges are likely to exceed $100, however, please contact me before proceeding.

If you have any questions, please call me at (612) 766-8237. Thank you for your assistance.

Sincerely,

*Michael C. Soules*

Michael C. Soules
**Faegre & Benson LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
612-766-8237 (office)
612-766-1600 (fax)
msoules@faegre.com
*Admitted in Michigan and D.C.,
not yet admitted in Minnesota*

cc:   Rebecca Judd (via e-mail)
      Sanne Knudsen (via e-mail)