THOMAS G. ECHIKSON, DC Bar No. 425575
techikson@sidley.com
Sidley Austin LLP
1501 K Street N.W.
Washington, DC  20005
Telephone:  (202) 736-8161
Facsimile:  (202) 736-8711

M. REED HOPPER, Cal. Bar No. 131291
mrh@pacificlegal.org
GRAHAM OWEN, Cal. Bar No. 251479
go@pacificlegal.org
*Of Counsel*
Pacific Legal Foundation
3900 Lennane Drive, Suite 200
Sacramento, California 95834
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747

Attorneys for Proposed Amici Curiae
Pacific Legal Foundation and Center for the Defense of Free Enterprise

## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al., | Case No. 1:07-cv-00677-PLF |
| Plaintiffs, | |
| v. | |
| DIRK KEMPTHORNE, Secretary of the Interior, et al., | |
| Defendants, | |
| U.S. SPORTSMEN'S ALLIANCE FOUNDATION, et al., | |
| Intervenor-Defendants. | |

## BRIEF OF PROPOSED AMICI CURIAE ON BEHALF OF PACIFIC LEGAL FOUNDATION AND CENTER FOR THE DEFENSE OF FREE ENTERPRISE IN SUPPORT OF DEFENDANTS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   THE SERVICE'S DECISION TO DELIST THE WGL GRAY
WOLF DPS SATISFIED THE ESA'S DELISTING REQUIREMENT
BECAUSE THE POPULATION IS NOT ENDANGERED . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   The Text of the ESA Requires the Service to Delist a DPS
If It Is Not Endangered Within Its Boundaries, Regardless
of the Status of the Population's Species Outside of the DPS . . . . . . . . . . . . . . . . . 2

    B.   *Defenders (Lizard)* and Its Progeny Do Not Preclude FWS from
Delisting a DPS If It Is Not Endangered Within Its Boundaries . . . . . . . . . . . . . . . 3

    C.   The Legislative History of the ESA Supports Delisting
a DPS If It Is Not Endangered Within Its Boundaries . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**Page**

## Cases

*Center for Biological Diversity v. Norton*, 411 F. Supp. 2d 1271 (D.N.M. 2005) . . . . . . . . . . 7-8

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) . . . . . . . . . . . . . . 3

*Defenders of Wildlife v. Norton*, 239 F. Supp. 2d 9 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . 5-6

*Defenders of Wildlife v. Norton*, 258 F.3d 1136 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . 3-4, 9-10

*Defenders of Wildlife v. Secretary, U.S. Dep't of the Interior*,
354 F. Supp. 2d 1156 (D. Or. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6-7

*National Wildlife Federation v. Norton*, 386 F. Supp. 2d 553 (D. Vt. 2005) . . . . . . . . . . . 2, 6-7

*Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . 3

*Southwest Center for Biological Diversity v. Norton*, No. 98-934,
2002 WL 1733618 (D.D.C. July 29, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tucson Herpetological Society v. Kempthorne*, No. 04-CV-00075-PHX-NVW,
2007 WL 2023477 (D. Ariz. July 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Statutes and Regulation

16 U.S.C. § 1532(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 8, 10

§ 1532(16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 1533(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

50 C.F.R. § 402.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Page**

**Miscellaneous**

*Final Rule Designating the Western Great Lakes Populations of Gray*
  *Wolves as a Distinct Population Segment; Removing the Western*
  *Great Lakes Distinct Population Segment of the Gray Wolf From*
  *the List of Endangered and Threatened Wildlife*,
  72 Fed. Reg. 6052 (Feb. 8, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The purpose of this brief is to assist the Court in determining the appropriate analysis under the Endangered Species Act (ESA or Act) to determine the propriety of the Final Rule delisting the western Great Lakes (WGL) gray wolf distinct population segment (DPS).  In doing so, Amici adopts the factual findings made by the United States Fish and Wildlife Service (Service or FWS) in the *Final Rule Designating the Western Great Lakes Populations of Gray Wolves as a Distinct Population Segment; Removing the Western Great Lakes Distinct Population Segment of the Gray Wolf From the List of Endangered and Threatened Wildlife* (Final Rule), 72 Fed. Reg. 6052 (Feb. 8, 2007), and agrees with the Service that it properly designated the WGL population of the gray wolf as a DPS.  Amicus will accordingly limit its participation to the issue of whether the WGL DPS is "in danger of extinction throughout . . . a significant portion of its range."  16 U.S.C. § 1532(6).

When statutory language is scrutinized, case law is examined, and the legislative history of the Act is considered, it becomes apparent that the Service is only required to evaluate the status of the WGL population within the range of the DPS, not the status of the entire gray wolf species.  FWS satisfied this requirement and, as a result, the delisting decision must be upheld.

**ARGUMENT**

**I**

**THE SERVICE'S DECISION TO DELIST THE WGL GRAY
WOLF DPS SATISFIED THE ESA'S DELISTING REQUIREMENT
BECAUSE THE POPULATION IS NOT ENDANGERED**

**A.  The Text of the ESA Requires the Service to Delist a DPS
    If It Is Not Endangered Within Its Boundaries, Regardless
    of the Status of the Population's Species Outside of the DPS**

This case turns on the ESA provision which states that a DPS is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range."[1]  16 U.S.C. § 1532(6). Correspondingly, a DPS is not endangered if it does not meet those requirements.[2]

Unfortunately, the ESA does not explicitly define the "range" over which the Service must evaluate a DPS to determine whether it is endangered; nor does it define what constitutes a

---

[1]  The requirements for delisting a DPS are the same as for delisting a species.  16 U.S.C. § 1532(16).

[2]  Section 1533(a)(1) outlines five factors that the Service must consider to determine whether a DPS is in danger, including:

    **(A)** the present or threatened destruction, modification, or curtailment of its habitat or range;

    **(B)** overutilization for commercial, recreational, scientific, or educational purposes;

    **(C)** disease or predation;

    **(D)** the inadequacy of existing regulatory mechanisms; or

    **(E)** other natural or manmade factors affecting its continued existence.

The same five factors are used to determine whether delisting a DPS is appropriate.  50 C.F.R. § 402.02; *see also Defenders of Wildlife v. Secretary, U.S. Dep't of the Interior*, 354 F. Supp. 2d 1156, 1160 (D. Or. 2005) (gray wolf); *National Wildlife Federation v. Norton*, 386 F. Supp. 2d 553, 558 (D. Vt. 2005) (gray wolf).

significant portion of that range.  *Defenders of Wildlife v. Norton*, 258 F.3d 1136, 1141 (9th Cir.

2001) (hereinafter *Defenders (lizard)*); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 848

(9th Cir. 2003) (pygmy owls).   A straightforward reading of the statute indicates that when

determining a DPS's status, FWS should only consider threats to the DPS.  This understanding flows

directly from the language of the text:  "The term 'endangered [DPS]' means any [DPS] which is

in danger of extinction throughout all or a significant portion of *its range*."  16 U.S.C. § 1532(6)

(emphasis added).  "Its range" necessarily refers back to what the term is characterizing, i.e., the

DPS, and a DPS cannot be bigger than the range of the actual population on which it is based.

        The Service did evaluate threats to the gray wolf over the entire WGL DPS, and came to the

conclusion that it was not in danger of extinction within the DPS.  In fact, the wolf has exceeded

expectations for recovery and has a stable population in the area.  The text of the ESA supports

FWS's decision to delist the population after evaluating its status within the DPS; therefore, FWS's

interpretation of the statute is reasonable, and *Chevron U.S.A., Inc. v. Natural Res. Def. Council,

Inc.*, suggests that it is appropriate to defer to the Service's interpretation in this case.  467 U.S. 837

(1984).

**B.  *Defenders (Lizard)* and Its Progeny Do Not Preclude FWS from
     Delisting a DPS If It Is Not Endangered Within Its Boundaries**

        While principles of statutory construction support the Service's actions in this case, Plaintiffs

rely on *Defenders (lizard)* for the proposition that the Service cannot delist a DPS if the species as

a whole is endangered.  This section will demonstrate that Plaintiffs' characterization of *Defenders

(lizard)* and its progeny is incorrect and the cases do not undercut the gray wolf WGL DPS delisting.

        In *Defenders (lizard)*, FWS declined to list the entire flat-tailed horned lizard species as

endangered even though it was extinct over 34% of its historic range.  The court held that

> where, as here, it is on the record apparent that the area in which the lizard [species as a whole] is expected to survive is much smaller than its historical range, the Secretary must at least explain her conclusion that the area in which the species can no longer live is not a "significant portion of its range."

258 F.3d at 1145.  In other words, if FWS does not wish to list an entire species, it must at least consider all of its historical habitat and explain why the areas in which it is already extinct or arguably endangered are not significant.  Nowhere in *Defenders (lizard)* did the court express or even imply that FWS could not do what it did in this case and list an entire species, while excluding certain flourishing populations from the listing.

A correct reading of *Defenders (lizard)* and its progeny shows that none of the cases require the Service to analyze the entire historic portion of a species range when it is merely delisting a recovered DPS; in other words, FWS need not evaluate the status of one entity (a species) when deciding to delist a distinct entity (a DPS).  Further, *Defenders (lizard)* was concerned that the flat-tailed horned lizard received no protections at all as a result of FWS's listing decision; in the present case, however, the Service has left the gray wolf species on the endangered list, eliminating any need for worry that the species is not listed.

Subsequent cases have relied on *Defenders (lizard)* to strike down FWS listing decisions that neglect to evaluate the status of a species or DPS over areas affected by the delisting.  In those cases, after neglecting to evaluate the status of a species or DPS over a particular area, the Service nevertheless decided the animal did not need protection in the unevaluated area.  The *Defenders (lizard)* progeny merely stand for the proposition that the Service may not make a listing decision for an area without evaluating the animal's status over that area; not, as Plaintiffs contend, that the Service must evaluate the status of a species over its entire historical range before making a listing decision for a distinct population segment of the species.

For example, in *Southwest Center for Biological Diversity v. Norton*, the Service decided not to list the Queen Charlotte goshawk without completely evaluating whether it was endangered in a portion of its range, and failed to evaluate whether that portion of its range was significant to the species. No. 98-934, 2002 WL 1733618 (D.D.C. July 29, 2002) (hereinafter *CBD v. Norton (goshawk)*). In deciding not to list the goshawk, FWS failed to conclude that protections were unnecessary on Vancouver Island, British Columbia, and did not decide whether the island was a significant portion of the species' range. *Id.* at 16. The court was unsatisfied that the service based its listing decision on an incomplete analysis, so it remanded the case back to FWS with directions to complete the analysis; i.e., to determine whether the goshawk was endangered on Vancouver Island and whether the island was a significant portion of the species' range. *Id.*

Similarly, *Defenders of Wildlife v. Norton*, 239 F. Supp. 2d 9, 19 (D.D.C. 2002) (hereinafter *Defenders (lynx)*) expressed displeasure that the Service did not consider whether the lynx DPS needed protections in areas of the DPS where it once roamed but in which it was then absent. FWS justified not protecting the lynx in its formerly-occupied habitat by tying the empty areas to a surviving lynx population. The Service stated that because the lynx was not endangered *near* the unoccupied areas, it was not endangered *in* those areas either. The court disagreed, stating that "FWS's exclusive focus on one region where the lynx is more prevalent . . . is contrary to the expansive protection intended by the ESA." *Defenders (lynx)*, 239 F. Supp. 2d at 19. The Service's position was analogous to its position in *Defenders (lizard)*.

> The Service's conclusion in the Ninth Circuit case . . . is similar to its conclusion here. In both cases, FWS presented a crabbed interpretation of the phrase "significant portion of its range," which would mean that a species that had once survived in a region, but no longer did, was not entitled to the protections of the ESA.

*Id.* at 20 n.7.  The court remanded the case to the Service to evaluate those portions of the lynx's historic range in which the lynx was extinct, but in which FWS had nevertheless asserted it was not endangered.  *Id.* at 21.

*Defenders (lizard)*, *CBD v. Norton (goshawk)*, and *Defenders (lynx)* make clear that the Service must make an informed decision.  If it declines to list a species or a DPS, it must justify that decision for all areas affected by it.  To do so for a species, FWS must evaluate the threats to the species throughout all areas of its historic range; to do so for a DPS, it must evaluate threats to the DPS throughout all areas of the DPS's range.

Two gray wolf cases preceding the present action do not undercut this interpretation. *Defenders of Wildlife v. Secretary, U.S. Dep't of the Interior*, 354 F. Supp. 2d 1156 (D. Or. 2005) (hereinafter *Defenders (wolf)*); *Nat'l Wildlife Federation v. Norton*, 386 F. Supp. 2d 553, 565 (D. Vt. 2005) (hereinafter *Nat'l Wildlife Federation (wolf)*).  *Defenders (wolf)* and *Nat'l Wildlife Federation (wolf)* involved DPS designations that were much larger than the range of the actual populations. The Service delisted the overly broad DPSs, without analyzing threats to the wolf's DPS in the unoccupied portions of the DPS.  Just like *Defenders (lynx)*, the Service relied on core populations to justify delisting the unoccupied regions.  *See Defenders (wolf)*, 354 F. Supp. 2d at 1168 (stating "[a]gain, the Secretary makes clear that the long-term viability of the Northern Rockies population renders all other areas in the Western DPS insignificant"); *Nat'l Wildlife Federation (wolf)*, 386 F. Supp. 2d at 565.  As a result of the overly broad DPS, the Service's position was nonsensical because it could not have analyzed threats to a wolf population outside of the population's range.  Restated, FWS made a listing decision without analyzing the threats to the DPS in its unoccupied range, and failed to say why those areas were insignificant.

Read together, the opinions in the prior two wolf cases allow the Service to delist only the areas in which the gray wolf populations are doing well.  *Nat'l Wildlife Federation (wolf)* stated that "[n]owhere in the ESA is the Secretary prevented from creating a 'non-DPS remnant' designation, especially when the remnant area was already listed as endangered," 386 F. Supp. 2d at 565, and *Defenders (wolf)* stated that "the court does not decide whether FWS could downlist the Western Great Lakes and Northern Rockies core populations at this time."  354 F. Supp. 2d at 1173.  The district courts were concerned not with the viability of the WGL DPS core populations, but with the overly broad DPS areas, the downlisting of which removed protections for the wolf in areas where it may have still needed them.

There are cases that disagree with the *Defenders (lizard)* decision and its progeny, but are consistent with the cases inasmuch as they require FWS to *consider* a species entire historical range when deciding whether or not to list the species.  *See, e.g.*, *Center for Biological Diversity v. Norton*, 411 F. Supp. 2d 1271, 1282 (D.N.M. 2005) (hereinafter *CBD v. Norton (Rio Grande cutthroat trout)*).  *CBD v. Norton (Rio Grande cutthroat trout)* expressly stated that it did "not agree with the Ninth Circuit's reasoning" in *Defenders (lizard)*, finding that "the word 'significant' here does not mean *geographically* significant . . . but rather implies a *biologically* significant portion of the range."  *Id.* at  1279.  The court stated that FWS must *consider* a species' historical range when determining whether a species is in danger of extinction throughout all or a significant portion of its range, but listing is not necessarily warranted merely because it is extinct in a large portion of its historical range.  *Id.* at 1282.  In response to one concern expressed by the Ninth Circuit in *Defenders (lizard)*, *CBD v. Norton (Rio Grande cutthroat trout)* stated that its analysis does not preclude "listing a species, including a subspecies or a distinct population segment, in only a portion of its current range."  *Id*. at 1280.  The court explained that a species, subspecies, or DPS could be doing

well in one part of its range, but nevertheless be in danger of extinction throughout a different, but significant, portion of the same range.

*CBD v. Norton (Rio Grande cutthroat trout)* used the aforementioned gray wolf cases to point out the deficiency of *only* considering a species' historical range when making a listing decision:

> It appears that the Vermont court would require the FWS to "stringently protect" areas of land where the gray wolf once roamed and, in effect, to restore the wolf to all of its historical range, which is not the purpose of the ESA. The relevant issue in a listings case is whether the species in question is in danger of extinction throughout all or a significant portion of its range. In making this determination, the FWS must take into account the species' historical range and reductions thereto. But even with a reduction in range, and reduction in absolute numbers of [an animal] or numbers of [the animal's] population, if the remaining core populations ensure the species' survival throughout its range or a significant portion thereof, then the species is not endangered.

*Id.* at 1282.

In the follow-up case to *Defenders (lizard)*, the District Court of Arizona adopted *CBD v. Norton's (Rio Grande cutthroat trout)* interpretation of species' range. *Tucson Herpetological Society v. Kempthorne*, No. 04-CV-00075-PHX-NVW, 2007 WL 2023477 (D. Ariz. July 12, 2007). The court held that FWS did not act in an arbitrary and capricious manner when it made the factual finding that the unoccupied portion of the lizard's historic range was not significant to the species even though the unoccupied range equaled 35% of the lizard's historic range. *Id.* at *8. The court even stated that "16 U.S.C. § 1532(6) allows the Secretary to forego listing altogether where the species is experiencing healthy population levels on the 'significant portions' of its range, but is in danger of extinction (or already extinct) in areas considered by the Secretary to be of no significance." *Id.* at *6.

The seven cases discussed all point to one conclusion in this case:  because the Service properly evaluated the threats to the gray wolf within the entire DPS, its decision to delist the population must be upheld.  Plaintiffs argue that the nationwide threats faced by the gray wolf preclude FWS from delisting the local population, but analyzing the cases reveals the impropriety of Plaintiff's position.  FWS did not designate a DPS larger than the range of the population on which it was based, like in the former gray wolf cases and the lynx case; it established the DPS range based on factual accounts of the population location, its dispersal range, and geographic impediments to dispersal.  The conclusion it reached was logically based on those facts, and was not an abuse of its discretion.  *See* Final Rule at 6052 (stating that the DPS "no longer meets the definitions of threatened or endangered," and that "[t]he threats [to the DPS] have been reduced or eliminated").  FWS did not repeat its mistakes of finding insignificant areas that it did not evaluate; in fact, the gray wolf is still listed and retains ESA protections in areas outside the WGL DPS.  As a result, the delisting decision should be upheld.

**C.  The Legislative History of the ESA Supports Delisting a DPS If It Is Not Endangered Within Its Boundaries**

Because courts find that the ESA's definition of "endangered" is ambiguous, they often refer to the legislative history of the Act to determine its meaning.  *Defenders (lizard)* has the most extensive discussion of the legislative history of the section here at issue.  258 F.3d at 1144-45.  Because it is particularly relevant to the present case, an extensive quote from that case follows, citing the example of the American alligator as a motivating factor for providing the Service flexibility to list an animal as endangered only in a portion of its range.

In 1973, the range of the alligator stretched from the Mississippi Delta in Louisiana to the Everglades of Florida.  Its distribution over that range, however, varied widely.  While habitat loss had pushed the species to the verge of extinction in Florida, conservation efforts had resulted in an overabundance of alligators in

Louisiana, such that harvesting was required to keep the alligators from overrunning the human population. In order to address problems such as this, the Act allows the Secretary to "list an animal as 'endangered' through all or a portion of its range." 62 Fed. Reg. 25,669 (July 25, 1973). Senator Tunney explained:

> An animal might be "endangered" in most States but overpopulated in some. In a State in which a species is overpopulated, the Secretary would have the discretion to list that animal as merely threatened or to remove it from the endangered species listing entirely while still providing protection in areas where it was threatened with extinction. In that portion of its range where it was not threatened with extinction, the States would have full authority to use their management skills to insure the proper conservation of the species.

*Id.* at 1144.

In sum, Congress intended to give the Service the flexibility to add or remove ESA protections for small populations of a species depending on the well-being of each population. The legislative history describes a scenario exactly in line with the Service's listing decision in the present case. Just like for the American alligator, Congress gave FWS the power to protect the gray wolf at the species level throughout its historic range, but left it the flexibility to delist wolf populations that are healthy enough to avoid extinction, such as the WGL gray wolf DPS.

## CONCLUSION

The ESA defines an endangered DPS as "any [DPS] which is in danger of extinction throughout all or a significant portion of *its range*." 16 U.S.C. § 1532(6) (emphasis added). Basic principles of statutory construction demonstrate that the term "its range" refers to the DPS's range; therefore, the Service was reasonable in so interpreting the statute and evaluating the entire WGL DPS for threats over the course of its listing decision. Further, *Defenders (lizard)* and its progeny do not undercut the Service's interpretation because they were simply concerned that FWS made listing decisions affecting areas that the service did not evaluate for threats. The Service, however, did all that was required by *Defenders (lizard)* and its successors; it thoroughly analyzed threats to

- 10 -

the gray wolf over the entire range of the area affected by the delisting decision: the area occupied

by the WGL DPS.  Lastly, the legislative history of the Act makes clear that the ESA was intended

to give the Service exactly the type of flexibility it used in this case.  For all of these reasons, FWS's

decision to delist the WGL gray wolf DPS should be upheld in this case.

      DATED:  January 15, 2008.

                    Respectfully submitted,

                    THOMAS G. ECHIKSON
                    Sidley Austin LLP

                    M. REED HOPPER
                    GRAHAM OWEN
                    Pacific Legal Foundation

                    By  _____
                       THOMAS G. ECHIKSON
                     DC Bar No. 425575

                    Attorneys for Proposed Amici Curiae
                    Pacific Legal Foundation and
                    Center for the Defense of Free Enterprise